IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION 4

JAMES ANDREW TANNER                                         PLAINTIFF

vs.                     No. 4:17-CV-00780-DPM

KURT ZIEGENHORN IN HIS INDIVIDUAL CAPACITY,
COLONEL BILL BRYANT IN HIS OFFICIAL                         DEFENDANTS
CAPACITY AS HEAD OF THE ARKANSAS
STATE POLICE, AN AGENCY OF THE
STATE OF ARKANSAS; WILLIAM "BILL"
SADLER IN HIS INDIVIDUAL CAPACITY; MIKE KENNEDY,
ELIZABETH CHAPMAN, JOHN AND JANE DOE 1-3,
INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITY.

PLAINTIFF'S BRIEF IN SUPPORT OF
PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

## Standard of Review

For the court to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the complaint must be successfully challenged either on its face or on the factual truthfulness of its averments. Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir.1993). In a facial challenge to jurisdiction, all of the factual allegations regarding jurisdiction would be presumed true and the motion could succeed only if the plaintiff had failed to allege an element necessary for subject matter jurisdiction. Gebhardt v. ConAgra Foods, Inc., 335 F.3d 824, 829 (8th Cir.2003).

The Court resolves 12(c) motions by taking the pleaded facts as true, examining whether this is an unusual case only where the complaint demonstrates "some insuperable bar to relief." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir.1995) (omitting quotation and

discussing identical standard for 12(b)(6) motion).  Hirsh v. Iecuona, No. 8:06CV13, 2006 WL 2873664, at 1 (D. Neb. Oct. 6, 2006), citing Schmedding, infra.

A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). See Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir.2009). In considering a motion to dismiss a complaint under Rule 12(b)(6), the court must assume all the facts alleged in the complaint are true, and must liberally construe the complaint in the light most favorable to the plaintiff. Schmedding v. Tnemec Co., 187 F.3d 862, 864 (8th Cir.1999). See also Ashley Cnty., Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir.2009) (quoting Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir.2006))(cited in Sagehorn v. Indep. Sch. Dist. No. 728, 122 F. Supp. 3d 842, 851 (D. Minn. 2015)). A Rule 12(b)(6) motion to dismiss a complaint should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief.  Schmedding, supra.

Although a complaint need not contain "detailed factual allegations," it must contain sufficient factual allegations "to raise a right to relief beyond the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In addition to the pleadings, the Court may properly consider materials that are necessarily embraced by the pleadings. Enervations, Inc. v. Minn. Mining & Mfg. Co., 380 F.3d 1066, 1069 (8th Cir.2004). "For example, materials are necessarily embraced by the complaint if they were mentioned or incorporated by reference in the complaint ." see Dylla v. Aetna Life Insurance Co., 2007 WL 4118929 at 2 (D.Minn.2007) [quoting Gibb v. Scott, 958 F.2d at 816].  In addition, the court may properly consider public records, including court records, on a motion to dismiss. Levy v. Ohl, 477 F.3d 988, 991 (8th Cir.2007).

## I. Defendants Cannot Avail Themselves to Eleventh Amendment Protections For Plaintiff's Official Capacity Claims

Defendants incorrectly state that the Eleventh Amendment "absolutely bars a suit by an individual brought against a state or its official and employees, regardless of the relief sought." Doc. 15, p. 4.  To the contrary, while states, state agencies, and state officials acting in their official capacities are not "persons" subject to claims for damages under § 1983 (McLean v. Gordon, 548 F.3d 613, 618 (8th Cir. 2008) (citations omitted), "[s]tate officials acting in their official capacities are § 1983 'persons' when sued for *prospective* relief, and the Eleventh Amendment does not bar such relief." Murphy v. State of Ark., 127 F.3d 750, 754 (8th Cir. 1997)(citations omitted).  Further, the Eleventh Amendment does not bar damage claims against state officials acting in their personal capacities.  Id.  See also Hafer v. Melo, 502 U.S. 21, 22, 112 S. Ct. 358, 360, 116 L. Ed. 2d 301 (1991), Hirsh v. Iecuona, No. 8:06CV13, 2006 WL 2873664, at 2–4 (D. Neb. Oct. 6, 2006).

Plaintiff acknowledges that a governmental entity cannot be sued based on a theory of *respondeat superior* for injury allegedly inflicted by its employees. *Andrews v. Fowler,* 98 F.3d 1069, 1074 (8th Cir.1996). However, the Plaintiff's claims survive if it Plaintiff alleges an unconstitutional 'custom or usage' with the force of law.  Wolfe v. Fayetteville, Arkansas Sch. Dist., 600 F. Supp. 2d 1011, 1020–21 (W.D. Ark. 2009).  Plaintiff's allegations must show:  (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation.  Id., quoting Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir.1999).

In Plaintiff's First Amended Complaint, Plaintiff alleges the existence of a continuing and widespread, persistent pattern of unconstitutional misconduct by the ASP employees; Defendant Bryant's deliberate indifference to or tacit authorization of such conduct after notice of that misconduct; and, Plaintiff offers proof that these customs are the moving force behind the constitutional violation. Defendants do not deny that Defendant Bryan had notice of these behaviors, nor do they deny that he was deliberately indifferent or tacitly authorizing them. Rather, they claim that these continuing actions are not an ongoing violation of any federal right (discussed below).

Plaintiff specifically offers in his First Amended Complaint that the ASP's continued Facebook blocks against Plaintiff's speech constitutes an ongoing First Amendment violation. Plaintiff argues that Defendant Bryant has sufficient knowledge relating to blocking comments, because of evidence that this is a widespread ASP policy, one that has been the subject of complaints. Plaintiff further holds out that because of this constant behavior and Defendant Bryant's awareness and complete lack of action, he either was deliberately indifferent or tacitly authorized these violations of the First Amendment. Further, Plaintiff asserts that this custom and policy is the moving force behind his ongoing constitutional violations. Because Plaintiff offers sufficient facts to meet these elements, he has pleaded enough factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. and has articulated a plausible claim. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Further, the court must construe Plaintiff's pleadings as true and consider all facts in a light most favorable to the Plaintiff. Frey, Schmedding, supra. The Plaintiff hereby incorporates his First Amended Complaint into this response. Given the above, Defendants' motion on this ground is improper and must be denied.

## II. The Individual Capacity Claims against Defendants
## Are Not Barred by Qualified Immunity

Qualified immunity can be raised in a motion for judgment of the pleadings. See, e.g., Prater v. Dahm, 89 F.3d 538, 540 (8th Cir.1996), cited in Winston v. Harmon, No. 2:12-CV-147-DPM-BD, 2013 WL 5657432, at 3 (E.D. Ark. Oct. 16, 2013).  As set out in Winston, this Court cannot decide disputed issues of material facts, and should not conclude that Defendants are entitled to qualified immunity; their Answer to the original complaint was little more than a blanket denial of the allegations.  Doc 7.  As everything at this stage is viewed in a light most favorable to the Plaintiff, the Defendants have offered no evidence in the pleadings or extrinsically to support their claims.  As in Winston, the Plaintiff has alleged facts that, when viewed most favorably to him, paint a different picture that would lead to different conclusions than those proposed by Defendants.  Frey, Schmedding, supra  As of yet, there is nothing in the pleadings indicating that Bryant was without notice of his employees' unconstitutional acts; that Defendants Mike Kennedy and Elizabeth Chapman did not and continue to violate Plaintiff's first amendment freedom of speech rights; that Ziegenhorn acted reasonably or with probable cause in any of his interactions with Plaintiff, or that Defendants did not act arbitrarily and egregiously in a way that would shock the conscious.  Nor is their motion the appropriate vehicle to do so.  Their Motion for Judgment on the Pleadings should be denied on this ground.

   A. **First Amendment Considerations Are Premature at this Time**

This Court should not decide on First Amendment issues at this stage when there are genuine issues of material fact to be resolved.  It is not disputed that the Arkansas State Police, and Plaintiffs allege in their Amended Complaint, that through Defendants Elizabeth Chapman and Mike Kennedy, under either the deliberate indifference or tacit authorization of Defendant

5

Bryant, deleted Plaintiff's Facebook comments and blocked him from the Arkansas State Police official Facebook page Doc. 7, p.3, ¶ 14.  The analysis for the Court to undertake is whether or not Facebook qualifies as a public forum, a limited public forum, or a non-public forum.  At this time, this is a disputed fact, and the Court does not have sufficient supporting facts to make a determination either way.  Even in a light most favorable to Plaintiffs, there is simply not enough information before the Court at this time for a determination that a Facebook site run by the Arkansas State Police is a non-public forum, and that the ASP social media policies are reasonable.  This analysis is premature and as such, Defendant's Motion for Judgment on the Pleadings on this point must be denied.

Further, even if the Court were to conclude that the Arkansas State Police official Facebook page is not a public forum, as Defendants contend, the Court's analysis would not end there.  The standard of review for a non-public forum is that the government's regulation on expressive activity must be "reasonable in light of the purpose of the forum and all the surrounding circumstances." Cornelius v. NAACP Legal Defense and Educ. Fund, Inc., 473 U.S. 788, 809, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). Thus, as the Supreme Court stated in Krishna Int'l Soc'y for Krishna Consciousness, Inc., v. Lee, the determination that a venue is a non-public forum only begins the inquiry. Int'l Soc'y for Krishna Consciousness, Inc., 505 U.S. at 687, 112 S.Ct. 2701.  If a court determines that a facility is a non-public forum, it must determine the reasonableness of a policy based on several factors. Krishna, 505 U.S. at 690, 112 S.Ct. 2701 (O'Connor, J., concurring). Thus, the court must weigh all of the factors that point in favor of allowing speech against those that support the need for restrictions. Id.

In the present case, this Court must analyze the constitutional benefits and detriments of Plaintiff being unable to participate with a government controlled Facebook page that allows

6

open commenting and engages with the public. Detailed factual inquiry is necessary to determine this issue, and now is not the proper time for the Court to dismiss the Freedom of Information counts. Defendants' motion must fail on this ground.

    i.        Plaintiff's Clearly-Established First Amendment Rights were Violated

Defendants have the burden of proving that Plaintiff did not have a clearly-established First Amendment right at the time of the events in question. Burnham v. Ianni, 119 F.3d 668, 674 (8th Cir. 1997), citing Siegert v. Gilley, 500 U.S. 226, 231, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991); Watertown Equip. Co. v. Norwest Bank Watertown, 830 F.2d 1487, 1490 (8th Cir.1987). Contrary to Defendants' insinuation, there need not be such a painfully specific case on point for Plaintiff to prevail. "In the absence of binding precedent, a court should look to all available decisional law including decisions of state courts, other circuits and district courts...." Burnham, supra, at 677.

Indeed, this Court should consider the case of Burnham v. Ianni. Burnham revolved around a display case in a university, where several staff members displayed photographs of themselves holding weapons. Id. at 671. The school chancellor had the photographs removed from the display, though he left the other photographs that did not display weapons. Id. at 672. In determining that the chancellor was not entitled to qualified immunity, the court stated that the nature of the forum did not really matter, but, rather, the issue was that the protected speech was a clearly established right. "The display case was designated for precisely the type of activity for which the Kohns and Professors Burnham and Marchese were using it. It was intended to inform students, faculty and community members of events in and interests of the history department. The University was not obligated to create the display case, nor did it have to open the case for use by history department faculty and students. However, once it chose to open the case, it was

prevented from unreasonably distinguishing among the types of speech it would allow within the forum." Id. at 676.  In rejecting the chancellor's claim to qualified immunity, the Burnham court stated, "Here, ...we have long established, binding precedent totally supportive of plaintiffs' claims. The Supreme Court and this court have both clearly and directly spoken on the subject on numerous occasions and in years long prior to the 1992 censorship by Ianni." Id. at 677.

Just as the Burnham court, this Court should not allow Defendant to erect a barrier to Plaintiff's claim based on lack of an eerily similar Facebook case.  Rather, this Court must recognize the large body of case law concerning freedom of speech, regardless of forum, and deny Defendants' motion on this ground.

**B. Defendant Ziegenhorn Violated Plaintiffs Fourth Amendment Rights**

Much of Defendant Ziegenhorn's argument on this front revolves around what his actions were, either in actuality or belief, reasonable.  As stated above, and without belaboring the point, such analysis is improper where the Court must not consider the evidence outside of a light most favorable to the Plaintiff and consider pleaded facts as true.  Frey, Schmedding, supra.  Because Ziegenhorn has offered no contrary evidence in the pleadings, and because, on the contrary, the Amended Complaint provides further evidence of his stalking and aggressive behavior in relation to Plaintiff's Fourth Amendment rights, Defendants' motion must be denied on this point.

**C. Defendants Violated Plaintiffs Fourteenth Amendment Rights**

The Defendants misunderstand most of the 14th amendment rights violations asserted by Plaintiff is using the 14th amendment to incorporate the 1st, 2nd, and 4th amendment to apply to state actors, all except for the class of one and due process claims against Separate Defendant Sadler for his denial of FOIA requests.

      a. Sadler's Denied FOIA Requests

Sadler improperly implemented the statute in an effort to further keep this information unobtainable by Plaintiff absent great financial burden. This is tantamount to Defendant Sadler holding the information hostage, although Plaintiff was entitled to it, and a violation of Plaintiff's due process rights. At this juncture, Plaintiff's only choices were to abandon pursuit of the information; pay an exorbitant, unnecessary, and unmandated fee; or, sue.

This is more fully explored in subsection D below.

**D. <u>Conspiracy to Interfere with Civil Rights Under U.S. § 1985 (3)</u>**

Plaintiff agrees with the rule set forth in Defendants' Motion for Judgment on the Pleadings. Doc 15, pp. 17-18. However, as the standard for review on their motion is that Plaintiff's allegations are to be construed as the truth and the facts viewed in a light most favorable to him, Plaintiff argues that he has met the burden of this rule. He has asserted with specificity in his Amended Complaint that Ziegenhorn and Sadler did conspire for the purpose of depriving, whether directly or indirectly, Plaintiff of equal privileges under the law when Sadler put an exorbitant price tag on the information regarding Ziegenhorn, to which Plaintiff was entitled by his FOIA request. Sadler's holding the documents hostage was absolutely an act in furtherance of the object of the conspiracy, served no legitimate police function, and Plaintiff was deprived of his statutory right to this information.

Defendants contend that Plaintiff cannot bring conspiracy claims because they are barred by the intracorporate conspiracy doctrine. See <u>Larson by Larson v. Miller,</u> 76 F. 3d 1446, 1456 n. 6 (8th Cir. 1996). However, there is an exception to this rule: "When the interests of principal and agents diverge, and the agents at the time of the conspiracy are acting beyond the scope of their authority or for their own benefit rather than that of the principal" the agent is legally

9

capable of conspiring with the corporate principal. Colonia Ins. Co. v. City Nat. Bank, 13 F. Supp. 2d 891, 899 (W.D. Ark. 1998), citing Pink Supply Corp. v. Hiebert, Inc., 788 F.2d 1313, 1317 (8th Cir.1986) and Ripplemeyer v. Nat'l Grape Co-op. Ass'n, Inc., 807 F.Supp. 1439 (W.D.Ark.1992).

Further, though not a controlling case, the Eighth Circuit has acknowledged that the intracorporate conspiracy doctrine may not protect certain actors in certain situations, where their actions were more than just routine, collaborative business decisions that could later be viewed in an unflattering light. Golden v. Moutray, No. 4:17 CV 284 DDN, 2018 WL 1784395, at 4 (E.D. Mo. Apr. 13, 2018).  In Golden, the court notes that police misconduct is not the product of routine decision making, and that it is not proper to apply the intracorporate conspiracy doctrine at the dismissal stage in § 1983 cases.  Id.

In the present case, Zeigenhorn's interests in preventing Plaintiff from receiving the requested documents was for his benefit and not for any legitimate benefit of the ASP, demonstrated by Sadler's complete lack of authority to implement a lofty price tag in contravention of the actual statute.  Their actions are far from proper or routine police conduct. When, at Zeigenhorn's request, Sadler made the information as unobtainable as possible in violation of Arkansas FOIA statutes, they fell into this exception.  Further, in construing the pleaded facts as truth and considering the Amended Complaint in a light most favorable to the Plaintiff, the Court should deny Defendants' Motion for Judgment on the Pleadings on this ground.  Frey, Schmedding, supra

### E.  Defendant Ziegenhorn Violated Plaintiff's Second Amendment Rights

10

Defendants attempt to undermine and underplay the Second Amendment its treatment in seminal cases such as McDonald and Heller. 561 U.S. 742 (2010), 554 U.S. 570 (2008). However, these holdings are not as narrow as Defendants purport.

"In numerous instances, 'bear arms' was unambiguously used to refer to the carrying of weapons outside of an organized militia." Heller at 584. "It is clear rom those formulations that 'bear arms' did not refer only to carrying a weapon in an organized military unit." Id. at 586. "In any event, the meaning of 'bear arms' .... is *not even* the (sometimes) idiomatic meaning..." Id. "We therefore believe that the most likely reading...is that they secured an individual right to bear arms for defensive purposes." Id. at 602. "We conclude that nothing in our precedents forecloses our adoption of the original understanding of the Second Amendment." Id. at 625.

Defendants' statements regarding limitations on individual rights to carry a weapon is not transparent. Doc. 15, p. 19. While he United States Supreme Court does recognize that there are limitations upon carrying a weapon, it describes "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id at 626-27. That list also pertains to "dangerous and unusual weapons." Id. at 627.

The Eighth Circuit recognizes that it is a possible cause of action "that some plaintiff could show that a state actor violated the Second Amendment by depriving an individual of a specific firearm that he or she otherwise lawfully possessed for self-defense." Walters v. Wolf, 660 F.3d 307, 318 (8th Cir. 2011). This is such a case.

Defendants argue that Plaintiff has failed to plead sufficient facts to assert a plausible Second Amendment claim. In Plaintiff's First Amended Complaint, Plaintiff outlines

11

Zeigenhorn's unconstitutional contact based on the fact that Plaintiff was carrying a gun. The Court must take the pleaded facts as true, and must liberally construe the complaint in the light most favorable to the plaintiff. Frey, Schmedding, supra. Given this standard, the Court cannot consider whether Zeigenhorn's confrontation, sparked by Plaintiff's possession of a weapon, was reasonable. The facts pleaded demonstrate that Plaintiff's weapon instigated Zeigenhorn's constant harassment of Plaintiff.

Defendant Zeigenhorn's using the gun as basis for his confrontations with Plaintiff is in and of itself a violation of Plaintiff's Second Amendment right to carry a weapon. Further, as a result of Zeigenhorn's unlawful actions, Plaintiff underwent a lengthy and expensive criminal court process and eventually suffered loss of his concealed carry handgun license. As alleged in Plaintiff's First Amended Complaint, Zeigenhorn's unlawful actions are the proximate cause for the loss of Plaintiff's concealed carry license, a Second Amendment violation directly attributable to Zeigenhorn has occurred. Defendants' motion should be denied on this ground for the above stated reasons.

### III. State-Law Claims Are Not Barred By Statutory Immunity

"Officers and employees of the State of Arkansas are immune from liability and from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment." Ark. Code Ann. § 19-10-305 (a) (West)

In Plaintiff's Amended Complaint, he overcomes this bar by alleging that the defendants acted maliciously in order to harass Plaintiff, and deprive him of his freedom of speech, due process, and second amendment rights.

Plaintiff has substantiated these claims by describing how Defendants Chapman and Kennedy maliciously blocked him from interacting with the ASP Facebook page without any right to appeal his interaction in a public forum the State created. Plaintiff also describes Ziegenhorn's malicious treatment of him on two occasions at the Searcy Walmart, and the malicious prosecution of a baseless case against Plaintiff, as well as an instance where he has done this to another person  Next, Plaintiff outlines the malfeasance of Defendant Sadler unlawfully imposing a high dollar value on the information Plaintiff sought about Ziegenhorn in a FOIA request, as well as evidence of Sadler's other malicious acts.

Plaintiff alleges that these state actors meant to do him harm by depriving him of his rights, compelling him to endure a lengthy and expensive trial process, among other harms, which illustrates their malice. Plaintiff urges that this is indicative of Defendants' "...intent and disposition to do a wrongful act [that is] greatly injurious to [Mr. Tanner]" to justify malice. *See* Fuqua v. Flowers, 20 S.W.3d 388, 391 (Ark. 2000), quoted in Liang v. Rahn, No. 4:17-CV-00135 BSM, 2017 WL 3205543, at *5 (E.D. Ark. July 27, 2017)

For the foregoing reasons, and the standard of review for such motions, Defendants' must fail on this count of their motion.

## Conclusion

Plaintiff has surpassed the bar of sovereign, qualified, and statutory immunity given the veracity of the pleadings before the Court. The Court must deny Defendants' Motion for Judgment on the Pleadings in its entirety pursuant to the above-cited case law and Federal Rules of Civil Procedure 12(c), 12(b)(1), and 12(b)(6).

    Respectfully submitted,

    JAMES ANDREW TANNER

Plaintiff

By: /s/ *William Whitfield Hyman*_____

W. Whitfield Hyman
King Law Group PLLC
300 N. Sixth Street
Fort Smith, AR 72901
479-782-1125
479-785-1657 Fax
ABA # 2013081
email@arkansaslawking.com
ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I, William Whitfield Hyman, Attorney for Plaintiff, do hereby certify that on this 20th day of September, 2018, I electronically filed the forgoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

By: /s/ *William Whitfield Hyman*