IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JAMES ANDREW TANNER                                          PLAINTIFF

v.                          Case No. 4:17-CV-00780-DPM

KURT ZIEGENHORN, ET AL.                                      DEFENDANTS

## ASP DEFENDANTS' CONSOLIDATED RESPONSE

Comes now the Arkansas State Police ("ASP") Defendants Colonel Bill Bryant, in his official capacity, William Sadler, in his individual capacity, and Kurt Ziegenhorn, in his individual capacity, by and through their attorneys, Attorney General Leslie Rutledge and Assistant Attorney General Reid P. Adkins, and for their consolidated response to Plaintiff's Response to ASP Defendant's Motion for Judgment on the Pleadings (DE 18, 19) and his Motion for Leave to Amend his Complaint (DE 21), state the following:

## PROCEDURAL HISTORY

On August 24, 2018, ASP Defendant's filed a Motion for Judgment on the Pleadings and Brief in Support (collectively, "MJP") on all claims.  Plaintiff failed to file a response or request an extension in a timely manner.  However, on September 9, 2018, the Court issued an Order which provided an extension for Plaintiff to respond until September 21, 2018.  (DE 17).  On September 20, 2018, Plaintiff filed a response to ASP Defendant's MJP.  Additionally, on September 20, 2018, Plaintiff filed his first Motion for Leave to Amend his Complaint as well as a proposed Amended Complaint.  (DE 20).  Subsequently, on September 21, 2018, Plaintiff filed a Second Motion for Leave to Amend his Complaint as well as a proposed Amended Complaint ("Proposed Amended Complaint").  (DE 21).  Per the Court's Order (DE 32), Plaintiff's First

Motion for Leave is denied without prejudice because the Second Motion moots it. At this time, Plaintiff's Motion for Leave to Amend his Complaint has not been granted.

For the reasons stated below, ASP Defendants continue to be entitled to the dismissal of Plaintiff's Complaint and his Proposed Amended Complaint in its entirety with prejudice.

## **DISCUSSION**

ASP Defendants incorporate word for word the standard of review put forth in their MJP. (DE 15, pp. 2-4). Additionally, in adjudicating Rule 12(b) motions, courts are not strictly limited to the four corners of complaints. *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1120 (8th Cir. 2011). "While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally, consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matter of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned,' without converting the motion into one for summary judgment." *Miller v. Redwood Toxicology Lab.*, 688 F.3d 928, 931, n.3 (8th Cir. 2012).

Furthermore, "the decision to allow a plaintiff to leave to amend a complaint is within the district court's discretion." *Cornelia I Crowell GST Trust v. Possis Medical, Inc.*, 519 F.3d 778 (2008). The court may deny leave on the basis of futility if it "has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss for failure to state a claim[.]" *Id.*

I.    **PLAINTIFF'S OFFICIAL CAPACITY CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT.**

Even including the allegations against Colonel Bryant in the Proposed Amended Complaint, the Court should dismiss the official capacity claims asserted against Colonel Bryant for failure to state sufficient facts to overcome his sovereign immunity from suit.  In short, Plaintiff's Complaint and Proposed Amended Complaint contain allegations against Colonel Bryant that are "[a] gallimaufry of labels, conclusions, formulaic recitations, naked assertions and the like [that] will not pass muster."  *Christiansen v. West Branch Community Sch. Dist.*, 674 F.3d 927, 934 (8th Cir. 2012) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)).  Plaintiff offers no specific facts to support any deliberate indifference, failure to investigate, or failure to take corrective action by Colonel Bryant.  *See Brown v. Mo. Dept. of Corrections*, 353 F.3d 1038, 1040 (8th Cir. 2004).  Accordingly, Plaintiff's official capacity claims in both the Complaint and Proposed Amended Complaint against Colonel Bryant are barred by sovereign immunity and should be dismissed from this lawsuit.

II.    **PLAINTIFF'S CLAIMS AGAINST ASP DEFENDANTS SADLER AND ZIEGENHORN ARE PARTIALLY BARRED BY RES JUDICATA AND COLLATERAL ESTOPPEL.**

Federal courts are required to respect the decisions of state courts.  Under 28 U.S.C. § 1738, "[t]he records and judicial proceedings of any court of any … State … shall have the same full faith and credit in every court within the United States … as they have by law or usage in the courts of such State."  The Eighth Circuit has explained that "federal courts are limited to the extent [they] cannot give review to claims that have already been fully adjudicated in state court."  *Sparkman Learning Center v. Ark. Dep't of Human Servs.*, 775 F.3d 993, 998 (8th Cir. 2014).  "If a state court would not hear the case because it was precluded by a previous holding in that state's courts, the federal courts must 'give the same preclusive effect to state court

judgments that those judgments would be given in the courts of the State from which the judgments emerged.'" *Id.* (quoting *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982)). "Federal courts do not provide a forum to relitigate claims previously decided adversely in state courts." *Id.* In *Knutson v. City of Fargo*, 600 F.3d 992 (8th Cir. 2012), the Eighth Circuit held that litigants could not bring claims before a federal court that were actually fully decided by state courts in what would amount to appellate review of the state-court ruling. *See Id.* at 995-96.

Federal courts apply state law to decide whether claims previously decided in that state's courts, which are then brought in federal court, are barred by the prior state-court judgment. *Sparkman learning Ctr.*, 775 F.3d at 998. Under Arkansas law, the doctrine of *res judicata* ends litigation by preventing a party from relitigating for a second time a matter in which it has already had an opportunity to be heard. *Powell v. Lane*, 375 Ark. 178, 185, 289 S.W.3d 440, 444 (2008). This is because a plaintiff is "required to join all acts which [he] could have brought against the [defendant] in the same lawsuit, if it is possible for [him] to do so in that lawsuit." *Lundquist v. Rice Mem. Hosp.*, 238 F.3d 975, 978 (8th Cir. 2001).

Arkansas law bars relitigation of a subsequent suit under claim preclusion when: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Jayel Corp. v. Cochran*, 366 Ark. 175, 178, 234 S.W.3d 278, 281 (2006). *Res judicata* bars relitigation of claims that were actually litigated in the first suit as well as claims that could have been litigated. *Id.* When a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* applies even if the subsequent lawsuit raises new legal issues and seeks additional

remedies. *Id*. Moreover, strict privity in the application of *res judicata* is not required. *Parker v. Perry*, 355 Ark. 97, 104 (2003). In *Cochran*, the court held that the relationship to clients was analogous to that of a principal and an agent, and the attorney-client relationship satisfied the privity requirement of *res judicata*. *Cochran*, 366 Ark. at 178.

Collateral estoppel is similar to the doctrine of *res judicata* in that it "servers both judicial and private interests in the termination of litigation," but it can apply even if a second suit is brought on a different cause of action than a prior suit. *Oldham v. Pritchett*, 599 F.2d 274, 276-78 (8th Cir. 1979). Collateral estoppel is a legal doctrine that "bar[s] the relitigation of factual or legal issues that were determined in a prior … court action" and "applies to bar relitigation in federal court of issues previously determined in state court." *In re Scarborough*, 171 F.3d 638 (8th Cir. 1999). Federal courts look at the substantive law of the forum state in applying the doctrine of collateral estoppel and give a state-court judgment preclusive effect if a court in that state would do so. *See Baker Elec. Coop., Inc. v. Chaske*, 28 F.3d 1466, 1475 (8th Cir. 1994).

In Arkansas, collateral estoppel runs to issues as opposed to the full case and does not require mutual identity of parties. *State Office of Child Support Enforcement v. Willis*, 347 Ark. 6, 15, 59 S.W.3d 438, 444 (2001). If the following four elements are satisfied, a court's determination on an issue is conclusive in a subsequent proceeding: (1) the issue sought to be precluded must be the same that involved in the prior litigation; (2) that issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *Id*. For an issue to be "actually litigated," it must be raised in the pleadings or otherwise, the defendant must have had a full and fair opportunity to be heard, and a decision must have been rendered on the issue. *See Powell v. Lane*, 375 Ark. 178, 186, 289 S.W.3d 440, 445 (2008).

A.  <u>ASP Defendant Sadler</u>.

Plaintiff's FOIA claims against ASP Defendant Sadler are partially barred by *res judicata*. In both the Complaint and the Amended Complaint, Plaintiff alleges ASP Defendant Sadler violated his rights under the FOIA on seven different counts.  However, at least a portion of four of the FOIA requests by Plaintiff have been adjudicated on the merits.  In relevant part, the Plaintiff made the following request on January 20, 2017:

> I, James A. Tanner, request any and all information including but not limited to reports filed, dispatch logs, radio chatter, dashcam footage, motor vehicle records, emails, texts, and all other records regarding incidents involving your department and myself (James Tanner) on Saturday, November 29, 2014 and Wednesday December 3, 2014. [sic] at a Walmart in Searcy, Ar, and all other records the Arkansas State Police has involving me. (DE 1, p. 20).

Plaintiff made three similar requests on November 21, December 5, and December 7 of 2016. According to the FOIA requests made on November 21 and December 5 of 2016, the request were for records regarding an incident on Wednesday December 4, 2014; however, in the December 7, 2016, request, Plaintiff clarifies he made an error in the date of the incident and it should have been "Wednesday December 3, 2014."  (DE 1, pp. 23-28).

On February 6, 2017, counsel for the Plaintiff sent a request under the Arkansas Freedom of Information Act, as amended, Ark. Code Ann. § 25-19-101 *et seq*. (the "FOIA") to ASP Defendant Sadler.  The FOIA request stated:

> I, William Whitfield Hyman, ***attorney for James Andrew Tanner***, request any and all information including but not limited to reports filed, dispatch logs, radio chatter, dashcam footage, motor vehicle recordings, emails, texts, and all other records regarding incidents involving your department and James Tanner on Saturday, November 29, 2014 and Wednesday December 3, 2014, at a Walmart in Searcy, Arkansas, and all other records the Arkansas State Police has involving him. I would also like any and all audio recordings and other records from Mr. Tanner's concealed Handgun License revocation hearing. (Ex. A, p. 44) (emphasis added).

On February 10, 2017, counsel for the Plaintiff filed an action in the Sebastian County Circuit Court pursuant to the FOIA containing six counts against ASP Defendant Sadler; Count V regarded the February 6, 2017, request, which was attached to the complaint as Exhibit M.  (Ex. A); *see Hyman v. Sadler for Ark. State Police*, CV-2017-147 (2017).  On April 10, 2017, the Circuit Court issued an Order stating ASP Defendant Sadler properly applied the law in response to the February 6, 2017, request based on the evidence presented and dismissed the claim.  (Ex. B, p. 4).  Plaintiff's counsel appealed the dismissal of Count V to the Arkansas Court of Appeals. On February 7, 2018, the Arkansas Court of Appeals issued an opinion that affirmed the circuit court's decision.  (Ex. C); *see Hyman v. Sadler for Ark. State Police*, 539 S.W.3d 642 (Ark. App. 2018), reh'g denied (Feb. 28, 2018).

There can be no dispute that the Sebastian County Circuit Court and the Arkansas Court of Appeals had jurisdiction to consider the FOIA claim made by Plaintiff's counsel. Additionally, as summarized above, Plaintiff's counsel fully contested in good faith the February 6, 2017, FOIA request under the same cause of action that is before this Court.  Lastly, the privity requirement is satisfied because Plaintiff's counsel made the records request pursuant to the FOIA on February 6, 2017, in his capacity as Plaintiff's attorney.  Accordingly, Plaintiff's claims under the FOIA relating to the above request are barred by *res judicata* and collateral estoppel and should be precluded from being relitigated.

B.  <u>ASP Defendant Ziegenhorn.</u>

Plaintiff's claims relating to the November 29, 2014, incident are precluded under the doctrine of *res judicata* and collateral estoppel.  Plaintiff has already had an opportunity to be heard regarding these claims.  The incident between Plaintiff and ASP Defendant Ziegenhorn that occurred on November 29, 2014, led to the revocation of Plaintiff's Concealed Carry

Handgun License ("CHCL"). (Ex. D); *see James A. Tanner v. Ark. State Police*, No. 60CV-15-3197 (2016).   Plaintiff appealed ASP's revocation of his CHCL and on May 12, 2015, an administrative hearing was held to determine whether to uphold the revocation.  (Ex. D, p. 2). ASP's revocation was upheld and Plaintiff subsequently appealed ASP's Order to the Pulaski County Circuit Court.  (Ex. D, p. 1).  The Circuit Court affirmed ASP's determination to revoke Plaintiff's CHCL.  (Ex. D).

The Circuit Court specifically addressed whether ASP Defendant Ziegenhorn violated Plaintiff's Fourth Amendment rights under the United States Constitution and Article 2, Section 15 of the Arkansas Constitution.  (Ex. D, pp. 7-8).  The Court found that Plaintiff's rights were not violated because ASP Defendant Ziegenhorn had reasonable suspicion to stop and detain Plaintiff on November 29, 2014.  (Ex. D, p. 7).  Thus, these claims and issues are precluded under the doctrines of *res judicata* and collateral estoppel because the claims and issues have previously been litigated in a state court that had competent jurisdiction.

Furthermore, Plaintiff's Second Amendment claim and Fourth Amendment claim related to the incident on December 3, 2014, as well as the corresponding state law constitutional claims are precluded under *res judicata*.  As stated above, *res judicata* bars relitigation of claims that were actually litigated as well as claims that could have been litigated.  *See Cochran*, 366 Ark. at 178.  Plaintiff claims ASP Defendant Ziegenhorn's actions on November 29, 2014, were the proximate cause for the loss of Plaintiff's CHCL and therefore violated his Second Amendment right.  Additionally, Plaintiff claims that ASP Defendant Ziegenhorn's actions on December 3, 2014, violated his Fourth Amendment rights when Ziegenhorn unreasonably detained, searched, and confiscated his CHCL.

Under Arkansas law, Plaintiff had an opportunity to raise these claims at the CHCL administrative hearing. *See McQuay v. Ark. State Bd. of Architects*, 337 Ark. 339, 989 S.W.2d 499 (1999) (the court concluded that even constitutional arguments would not be considered on appeal if not raised at the agency level). "A party may challenge an administrative decision in state circuit court by contending that the decision prejudiced his substantive rights or that 'the administrative findings, inferences, conclusions or decisions are: (1) In violation of constitutional or statutory provisions…'" *Prince v. Ark. Bd. of Examiners in Psychology*, 380 F.3d 337, 340 (2004) (quoting Ark. Code Ann. § 25-15-212(h)). The Arkansas Supreme Court has held that it is well settled that to preserve arguments for appeal, even constitutional ones, an individual must obtain a ruling below. *Ark. Contractors Licensing Bd. v. Pegasus Renov. Co.*, 347 Ark. 320, 64 S.W.3d 241 (2001). Therefore, those claims are now precluded from relitigation under *res judicata* since Plaintiff had an opportunity to raise them at his CHCL administrative hearing and subsequently reviewed through the appeals process provided in Ark. Code Ann. § 25-15-212.

## III.    THE INDIVIDUAL CAPACITY CLAIMS AGAINST ASP DEFENDANTS SADLER AND ZIEGENHORN ARE BARRED BY QUALIFIED IMMUNITY.

### A.    The Complaint does Not State a Violation of Plaintiff's First Amendment Rights.

Plaintiff's Complaint and Proposed Amended Complaint fail to allege sufficient facts to show that ASP Defendants violated a clearly established First Amendment right in regard to ASP's Facebook page. Plaintiff alleges his First Amendment right was violated when his comments were deleted and he was subsequently banned from ASP's Facebook page in 2016. (DE 2, pp. 4-5); *see also* (DE 21-1, pp. 8-9). To overcome qualified immunity, Plaintiff asserts that "there need not be such a painfully specific case on point for Plaintiff to prevail." (DE 19, p. 7). However, the Supreme Court has repeatedly cautioned lower courts that clearly established

law should not be defined at a high level of generality and existing precedent must have placed the constitutional question beyond debate. *See White v. Pauly*, 137 S.Ct. 548 (2017). Furthermore, the right must be established at the time of the conduct at issue. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001).

In Plaintiff's response to ASP Defendants' MJP, Plaintiff heavily relied on *Brunham v. Ianni*, 119 F.3d 668 (8th Cir. 1997) to establish Plaintiff had a clearly established First Amendment right to ASP's Facebook page at the time of the conduct at issue.  (DE 19, pp. 7-8).  In *Brunham*, professors and students at a state university brought a § 1983 action against the chancellor alleging a violation of their First Amendment right when the chancellor ordered removal of photographs from a department display case.   *Id*.   As stated by Plaintiff in his response, it is true that the Court in *Brunham* found a long established, binding precedent totally supportive of the plaintiff's claims.  *Brunham*, 119 F.3d at 677.

This matter can be distinguished from *Brunham* because there is not a long established, binding precedent totally supportive of Plaintiff's claims.  In 2017, the Supreme Court held that a North Carolina statute prohibiting sex offenders from accessing social networking websites altogether violated their First Amendment.  *Packingham v. North Carolina*, 137 S.Ct. 1730, 1737 (2017).  However, in *Packingham*, the Court stated "[t]he forces and directions of the Internet are so new, so protean, and so far reaching that courts must be conscious that what they say today might be obsolete tomorrow." *Id*. at 1736.  The Court further stated "[t]his case is one of the first this Court has taken to address the relationship between the First Amendment and the modern Internet. As a result, the Court must exercise extreme caution before suggesting that the First Amendment provides scant protection for access to vast networks in that medium." *Id*.  Justice Alito concurred and stated "[t]he Court is correct that we should be cautious in applying our free

speech precedents to the internet…Cyberspace is different from the physical world…we should proceed circumspectly, taking one step at a time." *Id*. at 1744.  The matter before this Court is much narrower than in *Packingham* because ASP Defendants have not prevented Plaintiff from accessing social networking websites altogether.  Thus, Plaintiff's First Amendment claims against ASP Defendants should be dismissed because it is not clearly established that Plaintiff has a First Amendment right to post on ASP's Facebook page.

**B.  Plaintiff Failed to State a Conspiracy to Interfere with his Civil Rights Under 42 U.S. § 1985.**

Plaintiff failed to plead sufficient facts to state a claim of conspiracy to interfere with his civil rights under 42 U.S.C. § 1985.  In the Complaint, Plaintiff claims ASP Defendants Sadler and Ziegenhorn conspired against Plaintiff in violation of his civil rights under 42 U.S. § 1985.  However, in Proposed Amended Complaint, Plaintiff claims ASP Defendant Sadler conspired John and Jane Does, but not with Ziegenhorn.  Therefore, it appears Plaintiff is dismissing this claim against ASP Defendant Ziegenhorn.

Nonetheless, in both the Complaint and Proposed Amended Complaint, Plaintiff continues to fail to prove a class-based invidiously discriminatory animus, which is required to prove a conspiracy claim under 42 U.S.C. § 1985(3).  Under a § 1985(3) conspiracy claim, "[t]he 'purpose' element of the conspiracy requires that the plaintiff prove a class-based 'invidiously discriminatory animus.'"  *Larson by Larson v. Miller*, 76 F.3d 1446, 1454 (1996) (quoting *City of Omaha Employees Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th. Cir. 1989).  Thus, Plaintiff's Complaint and Proposed Amended Complaint fail to plead sufficient facts to prove the existence of a civil rights conspiracy under § 1985(3).

### C. Plaintiff Failed to State a Violation of His Second Amendment Rights.

Assuming this Court determines Plaintiff's Second Amendment claim against ASP Defendant Ziegenhorn is not precluded under *res judicata*, Plaintiff continues to fail to plead sufficient facts, even incorporating the facts plead in Plaintiff's Proposed Amended Complaint, to assert a plausible claim under the Second Amendment of the United States Constitution. Plaintiff argues that it is possible to show a state actor violated an individual's Second Amendment rights by depriving an individual of a specific firearm that he otherwise lawfully possessed for self-defense. *See Walters v. Wolf*, 660 F.3d 307, 318 (8th Cir. 2011). However, Plaintiff has failed to state facts showing ASP Defendant Ziegenhorn deprived him of a specific firearm. Plaintiff, however, does claim that the allegations in the Proposed Amended Complaint show ASP Defendant Ziegenhorn's actions are the proximate cause for the loss of Plaintiff's CHCL, which is a Second Amendment violation. (DE 19, p. 12). As discussed, *supra* II.B., this claim is barred by *res judicata* because Plaintiff had an opportunity to raise a Second Amendment violation claim at the CHCL administrative hearing.

## IV. THE STATE-LAW CLAIMS REFERENCED IN THE COMPLAINT AND PROPOSED AMENDED COMPLAINT ARE BARRED BY STATUTORY IMMUNITY.

ASP Defendants maintain that any state-law claims alleged against them in either the Complaint or Proposed Amended Complaint are barred by statutory immunity under Ark. Code Ann. § 19-10-305(a) and should be dismissed with prejudice. For a Plaintiff to overcome an assertion of statutory immunity by a state employee, she must allege sufficient facts in her complaint to support a claim of malicious conduct. *E.g., Fuqua v. Flowers*, 341 Ark. 901, 905, 20 S.W.3d 388, 391 (2000). The Arkansas Supreme Court has defined malice as "an intent and disposition to do a wrongful act greatly injurious to another[,]" and "the intentional doing of a

wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent… A conscious violation of the law…which operates to the prejudice of another person. A condition of the mind showing a heart…fatally bent on mischief." *Id*. at 905-06, 20 S.W.3d at 391 (citations and internal quotation marks omitted); *see also Simons*, 369 Ark. 447, 452-53 (2007). "[A] bare allegation of willful and wanton conduct will not suffice to prove malice." *Simons*, 369 Ark. at 453 (citation omitted). Separate from the bare and conclusive claim of malicious conduct by ASP Defendants, Plaintiff's allegations do not support a claim of malicious conduct to overcome statutory immunity and therefore should be dismissed from this lawsuit.

## CONCLUSION

Plaintiff's claims against ASP Defendants Colonel Bryant, William Sadler, and Kurt Ziegenhorn are barred by sovereign, qualified, and statutory immunity.  The Court should dismiss the Complaint and deny Plaintiff's motion for leave to amend his complaint.


Respectfully Submitted,

LESLIE RUTLEDGE
Attorney General

By: */s/  Reid P. Adkins*
Reid P. Adkins (2015216)
Assistant Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas  72201
Tel:  (501) 682-1080
Fax: (501) 682-2591
reid.adkins@ArkansasAG.gov

William C. Bird III (2005149)
Assistant Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Tel: (501) 682-1317
Fax: (501) 682-2591
william.bird@ArkansasAG.gov

*Attorneys for ASP Defendants*

## CERTIFICATE OF SERVICE

I, Reid P. Adkins, hereby certify that on October 11, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of the filing to any participants.

*/s/ Reid P. Adkins*
Reid P. Adkins