ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2015-Sep-17 15:06:15
60CV-15-3197
C06D05 : 90 Pages

# BEFORE THE DEPARTMENT OF THE ARKANSAS STATE POLICE

IN RE:                                              James Andrew Tanner
                                                   **APPELLANT**
                                                   CHCL No. 2015-16

## NOTICE OF HEARING

TO:    James Andrew Tanner
       815 W. Cherry Ave.
       Searcy, Arkansas 72143

Pursuant to Ark. Code Ann. § 5-73-317 and the Arkansas State Police Rules and Regulations promulgated in accordance therewith, notice is hereby given that a hearing will be held at **10:00 a.m. on May 12, 2015**, at the Arkansas State Police Headquarters, 1 State Police Plaza Drive, Little Rock, Arkansas 72209, for the purpose determining if the revocation of the appellant's concealed handgun license application was in accordance with the provisions of Ark. Code Ann. § 5-73-309 and Arkansas State Police Rules.

ASP General Counsel Greg Downs is appointed as Hearing Officer for this matter.

Date: April 14, 2015.

_Willim J. Bryt_
Colonel William J. Bryant
Director, Arkansas State Police

Distribution:   Greg Downs
                Mary Claire McLaurin
                Lt. Cora Gentry
                CHCL No. 2015-16

000001

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. James A. Tanner
815 W. Cherry Avenue
Searcy, AR 72143

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X *Karen Tanner*
☑ Agent
☐ Addressee

B. Received by (Printed Name)

*Karen Tanner*

C. Date of Delivery

4/17

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☑ No

3. Service Type
☐ Certified Mail®     ☐ Priority Mail Express™
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number
(Transfer from service label)

7014 2870 0001 2956 7719

PS Form 3811, July 2013          Domestic Return Receipt

000002

## BEFORE THE DEPARTMENT OF THE ARKANSAS STATE POLICE

IN THE MATTER OF:  JAMES A. TANNER, APPELLANT

RE:  REVOCATION OF CONCEALED HANDGUN LICENSE
    CHCL NO. 2015-16

---

       BE IT REMEMBERED that on the 12th day of May, 2015, before the Department of the Arkansas State Police, Arkansas State Police Headquarters, #1 State Police Plaza Drive, Little Rock, Arkansas, commencing at 10:00 p.m., came on for Appeal Hearing in the above styled cause and testimony was introduced as follows:

---

### APPEARANCES:

HEARING OFFICER:  MR. GREG DOWNS, ASP General Counsel

REPRESENTING ARKANSAS STATE POLICE:

MS. MARY CLAIRE McLAURIN, Attorney Specialist
ARKANSAS STATE POLICE
#1 Arkansas State Police Plaza Drive
Little Rock, Arkansas  72209

ON BEHALF OF THE APPELLANT:

Mr. Shane Ethridge, Attorney at Law
ETHRIDGE LAW FIRM
214 Hobson Avenue
Hot Springs National Park, Arkansas  71913

---

### BUSHMAN COURT REPORTING
620 WEST THIRD
SUITE 302
LITTLE ROCK, ARKANSAS 72201
**(501) 372-5115**

*bushmanreporting@aol.com*

000003

I N D E X

STYLE AND APPEARANCES .................................. 1

PROCEEDINGS BEGIN....................................... 3

WITNESSES FOR THE APPELLEE
    TROOPER KURT ZIEGENHORN
        Direct Examination by Ms. McLaurin ........... 4
        Cross Examination by Mr. Ethridge ............ 9

    LT. CORA GENTRY
        Direct Examination by Ms. McLaurin ........... 13
        Cross Examination by Mr. Ethridge ............ 17
        Redirect Examination by Ms. McLaurin ......... 24

WITNESSES FOR THE APPELLANT
    JAMES A. TANNER
        Direct Examination By Mr. Ethridge ........... 26
        Cross Examination by Ms. McLaurin ............ 29

CLOSING ARGUMENTS FOR THE STATE ....................... 31

CLOSING ARGUMENTS FOR THE APPELLANT ................... 32

HEARING CONCLUDED ..................................... 36

COURT REPORTER'S CERTIFICATE .......................... 37

EXHIBITS:
                                        IDENTIFIED
STATE's

A.  34-page copy of Brief in support of Revocation ...... 4
B.  2-page copy of Memorandum .......................... 7
C.  1-page copy of Affidavit ........................... 8
D.  1-page copy of Arrest Warrant ...................... 8
E.  3-page copy of Revocation letter ................... 14
F.  2-page copy of Hearing Request ..................... 16

APPELLANT'S

A.  1-page copy of Searcy PD Report .................... 35

000004

**PROCEEDINGS**

HEARING OFFICER: All right. We're on the record for a concealed handgun license appeal number 2015-16. Today is May 12, 2015. This is the appeal of James Andrew Tanner. I am Greg Downs, the State Police General Counsel at the hearing officer today. We'll go around the room counterclockwise and introduce ourselves for the records.

MR. TANNER: James Tanner.

MR. ETHRIDGE: Shane Ethridge.

TROOPER ZIEGENHORN: Kurt Ziegenhorn.

MS. McLAURIN: Mary Claire McLaurin. I'm counsel for the State Police.

HEARING OFFICER: Okay. And Mr. Tanner, you're going to testify. You've got -- Kurt Ziegenhorn is going to testify, and Cora Gentry is going to testify.

MS. McLAURIN: Yes.

HEARING OFFICER: Okay. All of you who are going to testify raise your right hands.

(WITNESSES SWORN)

(AFFIRMATIVE RESPONSE)

HEARING OFFICER: All right. Let's proceed. We'll start with Ms. McLaurin. She's going to present the case for the Concealed Handgun License Section.

MS. McLAURIN: Okay. As a preliminary matter, I

| | |
|---|---|
| 1 | would like to introduce is my first exhibit: the brief |
| 2 | that was filed on the record in this case that has |
| 3 | previously been provided to Mr. Tanner for |
| 4 | consideration.  I'll mark that as Exhibit A. |
| 5 |     HEARING OFFICER:  Any objections to the brief? |
| 6 |     MR. ETHRIDGE:  No objection. |
| 7 |     HEARING OFFICER:  Okay.  So admitted. |
| 8 |     (EXHIBIT A WAS MARKED AND IDENTIFIED) |
| 9 |     HEARING OFFICER:  There's none that work in these |
| 10 | administrative hearings anyway. |
| 11 |     UNIDENTIFIED SPEAKER:  No, it's a -- |
| 12 |     HEARING OFFICER:  It's a different world, isn't |
| 13 | it? |
| 14 |     UNIDENTIFIED SPEAKER:  Yeah. |
| 15 |     MR. ETHRIDGE:  Okay.  My first witness is going |
| 16 | to be Trooper Ziegenhorn. |
| 17 | WITNESSES FOR THE APPELLEE: |
| 18 | **WHEREUPON, KURT ZIEGENHORN**, having been previously |
| 19 | sworn gave the following testimony to wit: |
| 20 | **DIRECT EXAMINATION** |
| 21 | BY MS. McLAURIN: |
| 22 | Q    Mr. Ziegenhorn, can you -- or Trooper Ziegenhorn, can you |
| 23 | state your name and occupation, please. |
| 24 | A    I'm a trooper with the Arkansas State Police. |
| 25 | Q    Okay.  What are your duties with the State Police? |

000006

```
1    A    I'm a Highway Patrol Division in Troop D.
2    Q    Okay.  Have you ever encountered the appellant, James
3    Andrew Tanner?
4    A    Yes, I have.
5    Q    Okay.  Can you describe that encounter, please.
6    A    It was November 29.  It was approximately 10:50 p.m.  I was
7    off duty, shopping at Wal-Mart with my family.
8    Q    Can I ask how you were dressed at that time?
9    A    I was wearing -- in a pair of jeans, a shirt, had a pistol
10   on my side and had my badge located in the lower part pocket.
11   It was below my shirt.  I -- we were back in the back right
12   corner of the store in the toy section.  My wife and kids were
13   over there in the toy section headed out toward the aisle, and I
14   noticed Mr. Tanner come walking up the aisle, and it caught me
15   by surprise because it was a tactical holster, a double banded
16   holster between the knee and the thigh.  The first consideration
17   was some off-duty officer from the local PD or something, so I
18   moved out from the toy out to the center isle, and when he
19   approached the area I kind of asked him, I said, "Hey, what
20   department you with?"  And in his first initial response was
21   more of the alert like, "I ain't with nobody."  And I said,
22   "Okay."  I identified myself, "I'm Kurt Ziegenhorn with the
23   Arkansas State Police."  And he says -- asked him for his ID.
24   He said again in a more condescending sense, in alert of style,
25   he copped back, said, "I don't have to show you nothing."  I
```

1  then Identified myself.  At the same time, his right hand had
2  dropped down.  That was the side that his handgun was on.  So I
3  didn't know this guy, didn't know how he'd react.  I immediately
4  grabbed his -- grabbed him by the wrist and elbow, moved his
5  hand away from the weapon, and again informed him who I was.
6  And he was like let go of me or whatever.  At this time, -- at
7  that point, I was kind of feeling him out, seeing how he was
8  going to react.  So at that point, I eased him arm down, let him
9  go, explained to him -- give him -- carrying the store, and he
10  needed to leave.  And he, at that point, he said he would leave
11  the store, and "I'll call the police."  Well, I didn't have any
12  restraints with me at the time, so I said that was fine, he
13  could walk out ahead of me.  So he got on the telephone at that
14  time.  I presumed he called 911, and he proceeded toward the
15  front of the store at that point, in front of me, about 10, 15
16  yards.
17  Q     Okay.  And when you described his tactical holster, I just
18  want to clarify.  Was he carrying a weapon in that holster?
19  A     He was carrying a pistol in the holster.
20  Q     Okay.  And was that clearly observable to you?
21  A     Yes, it was.
22  Q     Okay.  Did he make any effort to conceal that weapon?
23  A     No, he did not.
24  Q     Okay.  And did Mr. Tanner, at any time, inform you that he
25  had a concealed handgun carry license?

1  A    It wasn't until -- it was outside when we met with Searcy

2  PD that he pulled out his conceal carry.

3  Q    Okay.  And so when you initially asked him for ID, he did

4  not --

5  A    He didn't want -- he didn't have to show me anything.

6  Q    Okay.  But he did not advise you that he was a concealed

7  carry --

8  A    No.

9  Q    -- license holder at that time?

10  A    No.

11  Q    Okay.  Did you prepare a memorandum for this office

12  following that event?

13  A    I did.

14  Q    Okay.  Can you identify their document.  Is that the

15  Memorandum that you prepared?

16  A    Yes, it is.

17  Q    I'd like to introduce Exhibit B, the Memorandum of Kurt

18  Ziegenhorn.

19              HEARING OFFICER:  Okay.  It's admitted.

20              (EXHIBIT B WAS MARKED AND IDENTIFIED)

21  (Examination continuing)

22  Q    Did you subsequently execute a probable cause affidavit in

23  White County leading to charges being filed against Mr. Tanner?

24  A    I did.  Since I was -- didn't have my patrol car or

25  anything, I made -- I then executed a probable cause affidavit

1   and the way the court works, you give them an affidavit, and the

2   court looks over it, and I think it may have took them awhile

3   for them to get it out.

4   Q    Okay.  And is that document I just handed you that

5   affidavit?

6   A    Yes.  This is the Affidavit with my signature.

7   Q    Okay.  I'd like to introduce that Affidavit as Exhibit C.

8                    (EXHIBIT C WAS MARKED AND IDENTIFIED)

9   (Examination continuing)

10  Q    And did they subsequent introduce -- or did they

11  subsequently issue a warrant of arrest for Mr. Tanner?

12  A    I'm assuming.  I have not been personally been made aware

13  of it by the Court yet.

14  Q    Do you recognize the document I just handed you?

15  A    I do.  This is a warrant of arrest, yes.

16  Q    Okay.  And I'd like to introduce that exhibit as Exhibit D,

17  the Warrant of Arrest.

18                    (EXHIBIT D WAS MARKED AND IDENTIFIED)

19  Q    And what was Mr. Tanner arrested for?

20  A    He was arrested for obstruction of government operations.

21  Q    Okay.

22                    MS. McLAURIN:  That's all I have for this

23            gentleman at this time.

24                    MR. ETHRIDGE: May I inquire?

25                    HEARING OFFICER:  Sure.

**CROSS EXAMINATION**

BY MR. ETHRIDGE:

Q    So you were off duty at the time.

A    Yes.

Q    All right.  And are you aware that in the report filed by Searcy Police Department, they claim that your badge was on your hip and not on your pocket.

A    It was on my pocket.  It was this, located down here.  I carry on the bottom part of my pocket.

Q    I understand.  I'm just asking if you're aware that the officers from the Searcy Police Department said that it was higher than that?

A    No, I'm not aware of that.

Q    All right.  And obviously, Mr. Tanner was under some confusion as to whether or not you were, in fact, an officer. Do you believe that?

A    No, I don't believe that.

Q    Well, why would he have called the police to verify what was going on if he believed that you were a trooper?

A    I have no idea.  You'd have to ask your client that.

Q    Okay.  So you have no idea what he was doing, but he called the police, and he didn't just try and get away from you, right/

A    He was -- I was identifying myself to him as, I believe, a concealed to carry must (Inaudible).

Q    Okay.

| | |
|---|---|
| 1 | A    My badge was visible. |
| 2 | Q    And you were certainly aware that he was carrying a weapon. |
| 3 | A    Yes. |
| 4 | Q    All right. And he was not charged with carrying a weapon, |
| 5 | was he? |
| 6 | A    To my knowledge, I don't believe they charged him with |
| 7 | carrying a weapon. |
| 8 | Q    All right. And did you ask those Searcy police officers |
| 9 | that did, in fact, show up to arrest him that night? |
| 10 | A    I asked them what they wanted to do. |
| 11 | Q    And they did not arrest him that night, did they? |
| 12 | A    They released him. |
| 13 | Q    And no warrant was issued until later. |
| 14 | A    It was filed the following Monday. |
| 15 | Q    And you've had an opportunity to review the warrant, and |
| 16 | that warrant was not for carrying a weapon, was it? |
| 17 | A    My original affidavit was for carrying a weapon and for |
| 18 | obstruction. |
| 19 | Q    I understand that, but that's not what the Court ended up |
| 20 | charging him with. |
| 21 | A    I can't -- whatever the judge -- that's individual. |
| 22 | Q    I understand that, but you've had an opportunity to review |
| 23 | the warrant; is that right? I mean she handed you the -- |
| 24 | A    I (Inaudible). Yes. |
| 25 | Q    And it did not include carrying a weapon, did it? |

```
1    A    No.

2    Q    And your reason for stopping Mr. Tanner was what?

3    A    One, he was carrying a weapon, and like I said, my first

4    response, I thought it may have been another officer.  And it

5    was his demeanor and his answer when he answered me.

6    Q    His answer would take place after you stopped him and

7    started talking to him, right?

8    A    When he walked up as I testified, he come up.  I said,

9    "What department are you with?"  Most people says, "No, sir, I'm

10   not with a department."  But when you hype up and your demeanor

11   changes, it high alerts and more of a -- I guess, a

12   condescending manner of, "I'm not with anybody."

13   Q    Is condescension a crime?

14            MS. McLAURIN:  I'm just going to object to the

15            relevance of this line of questioning.

16            MR. ETHRIDGE:  My response to that would be that

17            it states that you have to give your license if an

18            officer stops you in an official capacity.  If he had

19            no grounds to stop Mr. Tanner, then Mr. Tanner was

20            under no obligation to give any sort of identification

21            to this officer.

22            HEARING OFFICER:  Are you referring to, Mr.

23            Ethridge, the law or the concealed handgun

24            licensing --

25            MR. ETHRIDGE:  I'm referring to the laws of
```

```
1        Arkansas.
2                HEARING OFFICER:  Okay.
3                MR. ETHRIDGE:  Well, the 4th Amendment and 3.1.
4                HEARING OFFICER:  Okay.  I understand.  I don't
5           need that argument, but I just need to be clear,
6           because there are both rules that are promulgated by
7           statute, and under those statutes, that also the
8           effect of law.
9                MR. ETHRIDGE:  I understand.
10               HEARING OFFICER:  I think we've pretty much beat
11          this into the ground.  If you could move on to another
12          line of questioning.
13               MR. ETHRIDGE:  Absolutely.
14    (Examination continuing)
15    Q    Mr. Tanner did give his identification and conceal to carry
16    license to the officers that were in uniform that day, didn't
17    they?
18    A    After he was outside.
19    Q    Okay.
20               MR. ETHRIDGE:  I have no further questions for
21          this witness.
22               HEARING OFFICER:  Before you -- if you have any
23          kind of redirect, I remember that -- I read your
24          brief.  The letter of revocation is in there, correct?
25               MS. McLAURIN:  I --
```

1             HEARING OFFICER:  Incorporated inside the brief,

2       right?

3             MS. McLAURIN:  Yeah.  And it would be introduced

4       with my second witness.

5             HEARING OFFICER:  Okay.  Okay.  All right.  Do

6       you have any --

7             MS. McLAURIN:  I have nothing further for Trooper

8       Ziegenhorn.

9             HEARING OFFICER:  Okay.  Can he be dismissed or

10      does anybody want to keep him here for anything?

11            MR. ETHRIDGE:  I don't need to keep him.

12            MS. McLAURIN:  Yeah, I think he can.

13            HEARING OFFICER:  Okay.  All right.  Kurt, you're

14      dismissed.

15            MS. McLAURIN:  Debating subject to recall.  My

16      second witness is Lt. Cora Gentry.

17        **WHEREUPON, LT. CORA GENTRY,** having been previously

18 sworn gave the following testimony to wit:

19                **DIRECT EXAMINATION**

20 BY MS. McLAURIN:

21 Q    Lt. Gentry, can you please state your name and occupation.

22 A    My name is Cora Gentry.  I'm a lieutenant with the Arkansas

23 State Police, and I supervise the Concealed Carry Section.

24 Q    Okay.  And what -- what are your responsibilities in

25 supervising the Concealed Carry Section?

1   A    I oversee revocation suspensions, anybody that has a
2   criminal history, and the issuance of the conceal carry
3   licenses.
4   Q    Okay.  Do you have a file on Mr. Tanner?
5   A    Yes, ma'am, I do.
6   Q    Okay.  And what is the current status of the file?
7   A    Mr. Tanner is revoked.
8   Q    Okay.  And did State Police send notice of that decision to
9   Mr. Tanner?
10  A    Yes, ma'am, we did.
11  Q    Okay.  And I'm handing you -- what number are we?
12            HEARING OFFICER:  This will be Exhibit E.
13            MS. McLAURIN:  Okay.
14  (Examination continuing)
15  Q    I'm handing you what I've marked as Exhibit E.  Can you
16  identify that document for me?
17  A    Yes.  This is my revocation letter that I sent to Mr.
18  Tanner.
19  Q    Okay.  How do you send that?
20  A    I send that certified mail, return receipt requested.
21  Q    Okay.  And what were the reasons for denial, suspension or
22  revocation -- for revocation in this case?
23  A    There were several.  That he violated the rules and the
24  concealed carry law, which says to cover from observation so as
25  to prevent public view.  Then also, for failure to comply with

1   restrictions of -- didn't cover from view.  Also, rules for
2   contact with law enforcement while in possession of a concealed
3   handgun, the licensee shall present the original license
4   (Inaudible) section along with the official form of photo ID
5   upon request of identification by any law enforcement officer.
6   And at that point, we didn't know the status of the warrant or
7   the affidavit, so I had included that.
8   Q    Okay.  So you included several different reasons in the
9   letter initially.
10  A    Yes, ma'am.  That may or may not have come to fruition
11  depending on the prosecutor.
12  Q    Okay.  And can you state -- how did this -- how did you
13  receive notice of this encounter with Mr. Tanner?
14  A    I got a telephone call from Trooper Ziegenhorn.
15  Q    Okay.  So did you base your revocation on the memorandum
16  that he provided to State Police?
17  A    Yes, ma'am.
18  Q    Okay.  And ultimately, Mr. Tanner was revoked for violating
19  Rule 7.0; is that correct?
20  A    Yes, ma'am, among others.
21  Q    Okay.  And is that because he exceeded the authority
22  granted to him by his conceal to carry license?
23  A    He -- he did not comply with the rules and the law as
24  required by concealed carry licensees.
25  Q    Okay.  Did you determine that he was carrying -- not

1  carrying his weapon concealed?

2  A    That's correct.

3  Q    Okay.  And then did you also revoke him on a secondary

4  basis or a second independent basis under 3.2?

5  A    Yes, ma'am.

6  Q    Okay.  And that was because of his failure to identify

7  himself to Trooper Ziegenhorn?

8  A    Yes, ma'am.

9  Q    And also for his failure to produce his conceal carry

10  license --

11  A    Yes, ma'am.

12  Q    -- to Trooper Ziegenhorn.  Okay.  Is there anything else --

13  did you subsequently receive a request for hearing for Mr.

14  Tanner?

15  A    Yes, ma'am.

16  Q    I'm handing you what I've marked as Exhibit F.  Is that his

17  hearing request?

18  A    Yes, ma'am.

19  Q    In his request, did he admit to carrying a weapon?

20  A    "I was carrying my weapon in a perfectly legal manner

21  pursuant to Arkansas law," is what he states in his letter.

22  Q    Okay.  And did he acknowledge that he was stopped by

23  Trooper Ziegenhorn?

24  A    He acknowledges his contact with him, yes.

25  Q    Okay.  And then does he acknowledge, at any point, his

1  understanding that the rules require him to identify himself to
2  law enforcement and produce his control -- his conceal carry
3  license?
4  A    Well, he states that, "A person in civilian clothes
5  attempted to stop me and ask for identification.  I requested to
6  see his badge, and he declined while physically grabbing me by
7  the arm."  So --
8  Q    And then later does he state that he understands the
9  requirement to produce identification and his conceal carry
10  license according to the regulations?
11  A    Well, he says he was not carrying at the time -- "not
12  carrying at the time and not breaking any law, so I was not
13  required to produce my identification nor my conceal carry as
14  per regulations," so yes, by that indication that he understands
15  that that is the current rule.
16  Q    Okay.  I'd like to introduce or have Exhibits E and F
17  admitted.
18          HEARING OFFICER:  And no objections?
19          MR. ETHRIDGE:  No objection.
20          HEARING OFFICER:  Okay.
21      (EXHIBITS E AND F WERE MARKED AND IDENTIFIED)
22          MS. McLAURIN:  Okay.  That's all I have for Lt.
23      Gentry at this time.
24          HEARING OFFICER:  Okay.  Mr. Ethridge.
25                  **CROSS EXAMINATION**

BY MR. ETHRIDGE:

Q    All right.  This -- the first thing is, if you'll look at
that second part there where he talks about, "I was not
carrying," that's because there was a second incident between he
and Trooper Ziegenhorn; is that right?

A    That's correct.

Q    Okay.  So he's not saying that on that date he was carrying
and not producing identification.

A    First encounter or second encounter?

Q    Right, the second -- the first -- the second encounter.

A    Second encounter he said he wasn't carrying.

Q    And when you -- when you aren't carrying, you're not
required to produce identification.

A    That's correct.

Q    Okay.  And you don't have to show your conceal carry
license.

A    That's correct.

Q    So that rule, 3.2, is in several different subsections; is
that right, when you have to produce your identification and
when you don't have to produce your identification.

A    3.2, yeah, outlines when you do and don't

Q    Okay.  And so the first part is, if you're carrying, you
have to show your identification if you have a concealed gun
with you

A    That's correct.

1   Q    And if you don't, you don't have to tell the officer you
2   have a conceal to carry license.
3   A    That's correct.
4   Q    So would you agree with me that the clear purpose of that
5   rule is to make sure that the officer is aware that you have a
6   gun with you?
7              MS. McLAURIN:  I'm going to object to the extent
8              that Lt. Gentry is not the authority on the attempt
9              behind these rules.
10             MR. ETHRIDGE:  I think that she's the person
11             that's in charge of this section, and I think she can
12             give her opinion to the -- for lack of a better term,
13             about what that rule would be in place for.
14             HEARING OFFICER:  I'm going to sustain the
15             objection, because she does not have the authority to
16             have a final agency position on that and, therefore,
17             something that would be an agency --
18             MR. ETHRIDGE:  I was asking her opinion of what
19             she believed that would mean.
20             HEARING OFFICER:  Restate your question again.
21             MR. ETHRIDGE:  All right.
22  (Examination continuing)
23  Q    All right.  In your opinion, would you agree with me that
24  that rule is in place to make the officer aware that a person is
25  carrying a gun at that time?

```
1    A    Yes, sir.
2    Q    Okay.  And if Mr. Tanner is wearing that gun on his hip,
3    it's very obvious to the officer that he has a gun.
4    A    It is to make the officer is aware that the person has a
5    conceal carry license, and at the time is carrying a firearm or
6    not.
7    Q    Well, if you get stopped by an officer and you don't have a
8    gun, you don't have to tell them, "I have a conceal to carry
9    license."
10   A    That's correct.
11   Q    So the clear -- in your opinion, that would mean it's just
12   so the officer knows you have a gun, not that you have a
13   license.
14   A    I would disagree.
15   Q    Okay.  And can you look through the rules and show me or
16   the statue, and show me where it says, "You shall carry
17   concealed" because it's my understanding that it says, "may
18   carry a concealed weapon."
19   A    It is a conceal carry license that that is what is being
20   licensed and concealed is defined, and that's what's authorized
21   is --
22   Q    But there's nowhere in there that says, "You shall carry
23   concealed."
24             MS. McLAURIN:  I'm going to object just for
25        clarification.
```

1          MR. ETHRIDGE:  I'm asking if there's somewhere in
2     the rules that say that.
3          MS. McLAURIN:  And the rules or the law or --
4          MR. ETHRIDGE:  The rules or the law.
5          MS. McLAURIN:  I just asked for some --
6          WITNESS:  I don't have either one of them --
7          MS. McLAURIN:  (Inaudible) authority on all
8     criminal law in the state of Arkansas.
9          MR. ETHRIDGE:  I'm mainly asking about the
10     conceal to carry rules and then the statutes in
11     relation to that.
12     (Examination continuing)
13     A     Well, and I've answered it to my understanding, that, yes,
14     it does have to be concealed.
15     Q     Let me cut through on this.  Does -- is -- is concealed
16     carry defined in law and in rule?
17     A     Concealed, yes.
18     Q     Okay.  That's what I mean, concealed is --
19     A     Yes.
20     Q     -- concealed -- carrying a --
21     A     Yes.
22     Q     Concealing a weapon.
23     A     Yes.
24     Q     In both rule and law, correct?
25     A     Yes.  Yes, sir.

000023

1    Q    Okay.  All right.

2    A    But there is no requirement that you have to carry a

3    concealed is my point.  It says, "You may carry concealed

4    pursuant to this."  Obviously, we'll get to argument, but --

5               HEARING OFFICER:  I understand your argument.

6               MR. ETHRIDGE:  Okay.

7               HEARING OFFICER:  I understand it.

8    (Examination continuing)

9    Q    And Mr. Tanner was not charged with carrying a weapon.

10    A    Not to my knowledge.

11    Q    And obstruction of governmental operations would not be a

12    charge that would prevent him from receiving a conceal to carry

13    license.

14    A    Not in this situation.

15    Q    And otherwise, to your knowledge, Mr. Tanner is perfectly

16    eligible to have a conceal carry license.

17    A    I have nothing to suggest that he wouldn't other than this

18    incident.

19               HEARING OFFICER:  Incident, you're referring to

20         the November 29 or the later December?  We're talking

21         about November 29th.

22               WITNESS:  Yes, November 29th.

23    (Examination continuing)

24    Q    And at that time that Mr. Tanner sent his request for a

25    hearing, the warrant for his arrest on obstruction was not

1   issued, was it?  That was issued later.

2   A    I don't know.  It was pending, that I think the affidavit

3   had been filed.

4   Q    The affidavit had been filed, but the warrant had not been

5   issued.

6   A    That's correct.

7   Q    All right.  So when he says, "I haven't been charged with

8   anything in his letter, at that time he had not been.

9   A    That could have been true.  I don't have the time line as

10   far as the affidavit.  All I had was the affidavit that they

11   were seeking an arrest warrant.

12           MR. ETHRIDGE:  Possibly see the -- see the

13           exhibits so we can confirm the dates unless you just

14           want --

15           MS. McLAURIN:  You have a -- you have a set.

16           MR. ETHRIDGE:  Okay.

17           MS. McLAURIN:  (Inaudible).

18           MR. ETHRIDGE:  I couldn't find the warrant.

19       There it is.

20   (Examination continuing)

21   Q    Would you review that.  I know that has already been

22   introduced as an exhibit.  What's the date it was issued.

23   A    Assumingly, the date that it was signed, which was 1/16 of

24   '15.

25   Q    Okay.  And Mr. Tanner's letter was sent on December 22nd of

1   2014; is that right?

2   A    Mr. Tanner's request for a hearing was dated December 22nd,

3   yes.

4   Q    Okay.

5   A    With an email being received that same day.

6   Q    So he was not being untruthful to you in his letter saying

7   he had not been charged at that time.

8   A    No, he was not.

9   Q    Okay.

10            MR. ETHRIDGE:  I have no further questions for

11        this witness.

12            HEARING OFFICER:  Okay.  Do you want to redirect.

13            MS. McLAURIN:  Just a little bit.

14                    **REDIRECT EXAMINATION**

15  BY MS. McLAURIN:

16  Q    Lt. Gentry, as far as Rule 3.2, counsel asked you about one

17  of the reasons for that rule might be to inform law inform law

18  enforcement that someone is possession of a firearm, but can you

19  -- is it possible that there are other purposes for that rule?

20  A    Yes, ma'am.

21  Q    Perhaps to inform law enforcement whether the individual is

22  a lawful gun holder, concealed weapon holder at that point?

23            MR. ETHRIDGE:  I would object and the same

24        objection she used, that she's not an expert on what

25        the reason for these rules is.

1               HEARING OFFICER:  She did opine, so I'm going to

2               let her opine a little bit.

3               MR. ETHRIDGE:  Okay.

4    (Examination continuing)

5    A    And I was there when the '09 rules were promulgated, and

6    this specifically came up, that it was going to be solid --

7    everybody, whether you're carrying or not is going to produce

8    your conceal carry license when you ask for identification.

9    There was an objection that said, wait a minute.  If I'm not

10   carrying, I shouldn't have to produce, so that's when the

11   exception was written in there, but as a general rule, it was

12   going to be everybody that has a conceal carry license produces

13   it at the time they are asked for identification.

14   Q    Okay.  And could it perhaps be for the reason an officer

15   may want to determine whether or not the person carrying the

16   weapon is a danger to the public or --

17   A    Well, it informs the officer that this person has -- has

18   the potential to have a firearm on them.  It's for officer's

19   safety if they have the conceal carry license, they know they

20   have been vetted through our system.

21   Q    So it's not just to tell the officer that they're carrying

22   a weapon.

23   A    No.

24   Q    Okay. That's all.  As far as the obstruction charge, are

25   you -- do you understand that the basis for that charge is

1     because Mr. Tanner failed to identify himself to Trooper

2     Ziegenhorn?

3     A    I have no idea of the proceedings in --

4     Q    Okay.

5     A    -- the criminal proceedings other than the affidavit.

6     Q    Okay.

7                 MS. McLAURIN: That's all I have.

8                 HEARING OFFICER: Okay.

9                 MR. ETHRIDGE: No recross.

10                HEARING OFFICER: Okay. You want to hang out

11        here Lt. Gentry or -- just in case?

12                WITNESS: I will.

13                HEARING OFFICER: All right. Any further

14        witnesses?

15                MS. McLAURIN: I have nothing further at this

16        time. Objection rebuttal.

17                HEARING OFFICER: Okay. Mr. Ethridge.

18     WITNESSES FOR THE APPELLANT:

19                MR. ETHRIDGE: I call Mr. Tanner.

20                HEARING OFFICER: All right.

21         **WHEREUPON, JAMES A. TANNER**, having been previously

22     sworn gave the following testimony to wit:

23                      **DIRECT EXAMINATION**

24     BY MR. ETHRIDGE:

25     Q    State your full name for the record.

1  A    James Andrew Tanner.

2  Q    All right.  And you have a conceal to carry license that's

3  currently in revoked status.

4  A    Correct.

5  Q    All right.  Tell Mr. Downs about what happened on November

6  29th.

7  A    I was shopping in Wal-Mart, and as I was walking down the

8  isle, I looked at my phone to text someone, and then a man

9  approached me.  He said -- he asked me if I was a law

10 enforcement officer.

11 Q    The man that approached you, what was he wearing?

12 A    He was wearing blue jeans and a T-shirt.

13 Q    All right.  Did you notice a badge at that time?

14 A    No, I did not.

15 Q    All right.  So then what happened next?

16 A    He asked me if I was an officer of the law.  I said I was

17 not, and he grabbed me by the arm, and repeated again, "State

18 Police.  Identify yourself."  And after he grabbed me by the arm

19 I said, "I don't care who you are.  You don't have the right to

20 grab me by the arm."  And he asked me again to identify myself,

21 and I would not.  He loosened my grip, loosened the grip on my

22 arm, and I got free and walked away really quickly and called

23 911.

24 Q    Did you know that he was an officer at the time he grabbed

25 your arm?

| | | |
|---|---|---|
| 1 | A | No, I did not. |
| 2 | Q | Did you later see a badge? |
| 3 | A | Yes, I did. |
| 4 | Q | Where was the badge located? |
| 5 | A | It was located on his waist, on his belt next to his gun. |
| 6 | Q | Okay. Did you notice the gun during the first encounter? |
| 7 | A | No, I did not. |
| 8 | Q | Had you ever seen him before in a trooper uniform? |
| 9 | A | No. |
| 10 | Q | Did you have any idea who this person was? |
| 11 | A | No. |
| 12 | Q | All right. And after your encounter with the trooper, |
| 13 | | what's the first thing you did? |
| 14 | A | Called 911. |
| 15 | Q | All right. Did you attempt to leave the property? |
| 16 | A | Yes, I did. |
| 17 | Q | No, I mean, you went outside of Wal-Mart, but did you wait |
| 18 | | for the police officers from Searcy Police Department? |
| 19 | A | The 911 dispatcher told me to stay in the building. |
| 20 | Q | Stay in the building. |
| 21 | A | Yes. |
| 22 | Q | Okay. So did you wait for the officers for the Searcy |
| 23 | | Police Department? |
| 24 | A | Yes. |
| 25 | Q | Okay. And did you have contact with them? |

```
1   A    Yes.

2   Q    Did you produce identification with the Searcy Police

3   Department?

4   A    Yes, I did.

5   Q    Did you show them your conceal carry license?

6   A    They asked me if I had one, and I said yes.

7   Q    Was your intent to avoid the trooper from asking you

8   questions?

9   A    No.

10  Q    All right.  Did you know that he was an officer of the law?

11  A    Not until I saw a badge, and even then I wasn't sure.

12  Q    He did not appear to be dressed in a way that an officer

13  would be dressed.

14  A    No.

15                MR. ETHRIDGE:  I have no further questions.

16                HEARING OFFICER:  Okay.

17                    CROSS EXAMINATION

18  BY MS. McLAURIN:

19  Q    Mr. Tanner, were you carrying a handgun at the time?

20  A    Yes.

21  Q    Was it loaded?

22  A    Yes.

23  Q    Okay.  And was -- did you make any attempt to conceal that

24  handgun?

25  A    No.
```

1   Q   Okay.  So it was openly displayed for the public -- in the
2   public view.
3   A   Yes.
4   Q   Okay.  And you were approached by Trooper Ziegenhorn at
5   some point, correct?
6   A   Correct.
7   Q   And you state that -- you just stated that he identified
8   himself as state police.
9   A   He said, "State Police.  Identify yourself."  Correct.
10  Q   Okay.  So at that point, you knew this person was telling
11  you that they were a member of law enforcement.
12  A   He was telling me that, correct.
13  Q   Okay.  And did he ask you to identify yourself?
14  A   Yes, he did.
15  Q   Did you comply?
16  A   No, I did not.
17  Q   Okay.  And did you attempt to leave the area?
18  A   Yes, I did.
19  Q   Did you tell him at that time that you had a conceal to
20  carry license?
21  A   No, I did not.
22  Q   And did you produce that license for him?
23  A   No, I did not.
24  Q   And were you -- are you aware that conceal to carry
25  licensing regulations require you to identify yourself and

1    produce your license when in contact with law enforcement.

2    A    When in official contact with law enforcement is what the

3    rule said, yes.

4    Q    Okay.  Were you subsequently arrested pursuant to this

5    encounter?

6    A    Yes.

7    Q    What were you arrested for?

8    A    Obstruction of governmental operations.

9    Q    And to your knowledge, is that because you failed to

10   identify yourself to Trooper Ziegenhorn?

11   A    To my knowledge, I guess (Inaudible).

12              MS. McLAURIN:  That's all I have.

13              HEARING OFFICER:  Okay, Mr. Ethridge?

14              MR. ETHRIDGE:  No additional questions.

15              HEARING OFFICER:  Okay.  All right.  I suppose

16          you want to a little closing argument.  Is that -- you

17          want --

18              MR. ETHRIDGE:  Yes.

19              HEARING OFFICER:  All right.  We'll go ahead and

20          do that.    You can waive, of course, if you want to.

21   **CLOSING ARGUMENTS ON BEHALF OF THE APPELLEE:**

22              MS. McLAURIN:  Honestly, let me look at my -- I

23          mean, I think that the evidence is clear that Mr.

24          Tanner was openly carrying a weapon, a loaded weapon

25          in a public place.  He's not brought himself within

1    any of the exceptions that would allow him to open
2    carry -- or to carry a weapon under criminal law.
3    According to our conceal carry rules and regulations,
4    he is required to carry that weapon concealed, defined
5    as -- "To cover from observation so as to prevent
6    public view."  Mr. Tanner admits he was not attempting
7    to do that.  We argue that he exceeds the authority
8    granted to him by his conceal carry license and that
9    he should be revoked for that, on that basis.
10   Further, we're arguing that he should be revoked
11   pursuant to Rule 7.0 of the conceal carry license
12   Rules and Regulations, failure to comply with the
13   rules is grounds for suspension and/or revocation.
14   He's admitted that he did not identify himself to
15   Trooper Ziegenhorn after Trooper Ziegenhorn had
16   identified himself as law enforcement and that he
17   didn't produce his license and inform Trooper
18   Ziegenhorn that he was a conceal to carry license
19   holder.  And on both of those basis, we think there's
20   sufficiently independent of each other to keep the
21   revocation standing.
22        HEARING OFFICER:  Okay.  All right. Mr. Ethridge.
23   **CLOSING ARGUMENTS ON BEHALF OF THE APPELLANT:**
24        MR. ETHRIDGE:  I think it's very important to
25   note that the Judge did not sign a warrant for

000034

carrying a weapon, which is a clear indication that
Mr. Tanner was not violating any laws of the State of
Arkansas by carrying his weapon in the way that he was
carrying it. I think that the trooper had no
authority to stop him and detain him in the store to
find out what he was doing. I think that's very clear
that he just did this wearing jeans and a T-shirt, and
Mr. Tanner had no idea who he was. He was grabbed by
a strange man. He's a very large man in comparison to
Mr. Tanner, and the first thing he did was call the
police. I don't think there was any attempt to avoid
or deny that he had a conceal to carry license, and he
certainly wasn't carrying it pursuant to the conceal
to carry license, which the rules state once it's
issued, "you may carry a concealed weapon". It does
not say that you have to carry it concealed. I think
that's very important, that he was carrying the weapon
in a legal manner in the state of Arkansas. And when
officers arrived wearing a uniform, he showed them his
identification and he made it clear that he had the
conceal carry license, which is what the rule
requires. He was not attempting to commit any crime.
He was not attempting to avoid any of these rules. He
was accosted by a person in plain clothes in a store,
and reacted in a way that I believe a lot of us would

1    if we didn't know it was an officer grabbing our arm
2    and ordering us around.  I think that a decision to
3    revoke his license would certainly be arbitrary and
4    capricious based on the facts that we have here today.
5    Mr. Tanner was legally carrying a gun.  As soon as he
6    was aware that a officer in a uniform was talking to
7    him, he produced his identification.  He was not
8    charged with carrying a weapon, which certainly would
9    or is grounds to deny a conceal to carry license, but
10   in this case, certainly in Searcy, the interpret the
11   change to the carrying a weapon statute to allow open
12   carry.

13        HEARING OFFICER:  I wouldn't go that far, but I
14   understand your argument.  Do you have anything else
15   that you want to add other than closing statements,
16   any kind of --

17        MR. ETHRIDGE:  I don't know if it helps you, but
18   I've got the report for Searcy PD, which says that it
19   was -- so I would introduce that.

20        HEARING OFFICER:  And this is what you were
21   asking Trooper Ziegenhorn about earlier?

22        MR. ETHRIDGE:  Yes.

23        HEARING OFFICER:  About the specifics and -- you
24   want to read that?

25        MS. McLAURIN:  We -- we have it.

000036

```
1          HEARING OFFICER:  Okay.  Do you have any
2      objection?
3          MS. McLAURIN:  No, I don't have any objection.
4          HEARING OFFICER:  Okay.  I'm going to call this
5      -- where we at, F is the last?  I'm just going to call
6      this Appellant's A.
7  (APPELLANT'S EXHIBIT A WAS MARKED AND IDENTIFIED)
8          HEARING OFFICER:  Okay.
9          MR. ETHRIDGE:  You know, I made the argument
10     clear about what I believe the purpose of the rule of
11     identification is, which I think even in Lt. Gentry's
12     answer toward the last portion there about they had a
13     rule and they wanted everybody to do it and somebody
14     said, "Well, if I'm not carrying, I shouldn't".  You
15     know, it's very clear that the purpose of that rule
16     was to apprise an officer that there's a weapon on
17     that person and for no other reason.
18         HEARING OFFICER:  Well, Mr. Ethridge, I'm not
19     sure.  I look at the plain language just like I would
20     a statute, and the plain language says one thing, and
21     the purpose and intent is --
22         MR. ETHRIDGE:  I understand.
23         HEARING OFFICER:  -- debatable by you.  So,
24     anyway, I'll take that into consideration.  I'll
25     consider all these arguments.  This is a little more
```

1    in depth than some of these appeals, which typically

2    involve misdemeanor crimes, domestic violence and

3    those kind of things.  So once I make my decision or I

4    make my recommendation, you'll receive a certified

5    copy, of course, from the Colonel.  And then you can

6    take it any further.  I appreciate you guys coming in

7    today.  I appreciate your arguments, and if you have

8    any questions, Mr. Ethridge, in the meantime, just

9    give me a call.

10            MR. ETHRIDGE:  All right.  Thank you.

11            HEARING OFFICER:  Thank you.  Go off the record.

12    **THEREUPON**, the hearing was concluded.

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

STATE OF ARKANSAS    )
                     )ss
COUNTY OF PULASKI    )

I, DAWN CRAWFORD, Certified Court Reporter, do hereby certify that the foregoing 36 pages were transcribed by me to the best of my ability from an audio recording provided to me. I therefore, cannot attest to the authenticity of the recording nor the identity of the parties, only to the contents of the recording.

I FURTHER CERTIFY that I am neither counsel for, related to, nor employed by any of the parties; and further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially interested, or otherwise, in the outcome of this action.

WITNESS MY HAND AND SEAL this 16th day of September, 2015.


DAWN CRAWFORD
Certified Court Reporter #536

**BEFORE THE DEPARTMENT OF THE ARKANSAS STATE POLICE**

IN RE:                                                    **James Andrew Tanner**
                                                          **APPELLANT**
                                                          **CHCL No. 2015-16**

**BRIEF IN SUPPORT OF THE REVOCATION OF**
**JAMES ANDREW TANNER'S CONCEALED HANDGUN CARRY LICENSE**

This matter is set for hearing before the Department of Arkansas State Police (ASP) on

May 12, 2015 at 10:00 a.m. Appellant, James Andrew Tanner, has requested an administrative

appeal hearing regarding the revocation of his Arkansas Concealed Handgun Carry License

(CHCL). See attached Exhibit 1. In his written request for an administrative hearing, Tanner

states that he "did not break any rules or laws" and "was not arrested and not issued a citation for

any crime." A complete review of the facts and applicable law, however, demonstrates that the

revocation of Tanner's CHCL was appropriate due to violations of Ark. Code Ann. §§ 5-73-301,

*et. seq.* and the Department of Arkansas State Police Arkansas Concealed Handgun Carry

License Rules (Rules). As such, the decision to revoke Tanner's CHCL was not arbitrary,

capricious, or characterized by an abuse of discretion. See <u>Parkman v. Sex Offender Risk and</u>

<u>Screening Comm.</u>, 2009 Ark. 205, 307 S.W.3d 6 (2009).

**I.      Statement of Facts**

On November 29, 2014, Trooper Kurt Ziegenhorn encountered Appellant, James Tanner,

in a public place, specifically a Wal-Mart in Searcy, Arkansas. Tanner was carrying a handgun

in such a manner that it was openly visible, with no attempt at concealment. Trooper Ziegenhorn

identified himself as law enforcement and asked Tanner for his name and ID. Tanner refused the

request and attempted to leave the area. The details of this incident are more fully developed in

the Memorandum of TFC Kurt Ziegenhorn. See attached Exhibit 2. In connection with this


EXHIBIT
A

incident, Trooper Ziegenhorn also executed a probable cause affidavit in the District Court of White County citing Tanner's violations of Ark. Code Ann. § 5-54-102 (Obstructing Governmental Operations) and Ark. Code Ann. § 5-73-120 (Carrying a Weapon). See attached Exhibit 3. Trooper Ziegenhorn forwarded these documents to ASP, and on December 10, 2014, ASP mailed Tanner notification of the revocation of his CHCL based on the facts set forth in Exhibit 2 and Exhibit 3. See attached Exhibit 4.

On December 22, 2014, Tanner requested an administrative hearing in writing. See attached Exhibit 1. In the letter, Tanner acknowledges both that he was carrying a weapon and that Trooper Ziegenhorn asked him for his ID. He further acknowledges his initial refusal to comply and that, when carrying a weapon, ASP CHCL regulations require him to produce his identification and CHCL permit.

On January 16, 2015, the Searcy District Court issued a warrant for Tanner's arrest for Obstructing Governmental Operations stemming from the November 29, 2014 encounter with Trooper Ziegenhorn. See attached Exhibit 5. That charge is currently pending. On April 16, 2015, ASP mailed a Notice of Hearing to Appellant, setting this matter for hearing on May 12, 2015 at 10:00 a.m. See attached Exhibit 6.

## II.  Argument

Ark. Code Ann. § 5-73-302(a) authorizes "[t]he Director of the Department of Arkansas State Police [to] issue a license to carry a *concealed* handgun to a person qualified as provided in this subchapter." [Emphasis added]. Carrying "concealed" is defined by the statute as "to cover from observation so as to prevent public view," Ark. Code Ann. § 5-73-301(2). Pursuant to Ark. Code Ann. § 5-73-312, the Director has the ability to revoke a CHCL if the licensee fails to maintain eligibility "under the criteria set forth in § 5-73-308(a) or 5-73-309." The Rules were

2

000041

promulgated pursuant to the Director's authority under Ark. Code Ann. § 5-73-317, §§ 12-8-104, *et. seq.*, and §§ 25-15-201, *et. seq.*, and "provide guidelines in conformity with Arkansas laws as to issuance and governance of applicants for new, renewal, or transfer licenses to carry a concealed handgun in the State of Arkansas." See Rule 1.1(a) in attached Exhibit 7. Rule 1.2(h) also defines "concealed" as covering "from observation so as to prevent public view." Rule 7.0 authorizes the revocation of an Arkansas CHCL for failure to comply with the Rules. Based upon the preceding Rules and regulations, an Arkansas CHCL only authorizes the holder to carry a concealed handgun. Nothing in Ark. Code Ann. §§ 5-73-301, *et. seq.* or the Rules allows a licensee to openly carry a handgun. Appellant exceeded the authority afforded to him by his CHCL by openly carrying his weapon in a public place. Accordingly, Tanner's CHCL should be revoked for a violation of the Rules and regulations and due to his failure to maintain eligibility under same.

There is sufficient justification for revocation based solely on the reasons stated above. However, there is a second, independent basis for revocation of Tanner's CHCL. As mentioned above, Rule 7.0 states that "[f]ailure to comply with these Rules is ground(s) for suspension and/or revocation of the Arkansas concealed handgun carry license." Rule 3.2 governs "Contact with law enforcement" and says:

> "(a) While in possession of a concealed handgun, the licensee shall present the original license for inspection, along with an official form of photo identification, upon request for identification by any law enforcement officer.

> (b) In any official contact with law enforcement, if the licensee *is* in possession of a handgun, when the officer asks the licensee for identification (driver's license, or personal information, such as name and date of birth), the licensee shall notify the officer that he or she holds a concealed handgun carry license and that he or she has a handgun in his or her possession."

3

000042

Trooper Ziegenhorn alleges that he identified himself as law enforcement to Tanner and that his badge was clearly visible. The facts are undisputed that he asked Tanner for ID and Tanner refused to comply. Moreover, section (b) of Rule 3.2 places an affirmative duty on the licensee to notify an officer that he holds a CHCL and has a handgun in his possession. Instead of producing his ID and CHCL, Tanner disregarded the Trooper's request and attempted to leave the area. Appellant was later arrested for his refusal to identify himself to Trooper Ziegenhorn. Due to his failure to produce ID and his CHCL to law enforcement as required by the ASP Arkansas CHCL Rules, the revocation of Tanner's CHCL should be affirmed.

**III.  Conclusion**

Because Appellant was openly carrying a weapon, exceeding the authority granted to him by the CHCL Rules and regulations, and because he refused to identify himself to law enforcement and produce his CHCL, the ASP was justified in its revocation of Tanner's CHCL. As such, this administrative decision was not arbitrary, capricious, or characterized by an abuse of discretion, and it should be affirmed.

Respectfully submitted,
ARKANSAS STATE POLICE

By: Mary Claire McLaurin
Bar No. 2008281
Arkansas State Police
Staff Attorney
1 State Police Plaza Drive
Little Rock, AR 72209
(501) 618-8630
Mary.mclaurin@asp.arkansas.gov

000043

<u>CERTIFICATE OF SERVICE</u>

I, Mary Claire McLaurin, do hereby certify that I have served the foregoing Trial Brief

and Exhibits by mailing a copy of same via U.S. Mail this the 28th day of April, 2015, to:

> Mr. James Andrew Tanner
> 815 W. Cherry Ave.
> Searcy, Arkansas 72143

Mary Claire McLaurin

000044

December 22, 2014

Lieutenant Cora Gentry
Concealed Handgun Carry Licensing
1 State Police Plaza Drive
Little Rock, AR 72209

Dear Lt. Gentry,

    I, James A. Tanner, request an administrative hearing for review of whether the department's revocation of my Concealed Handgun Carry License is in compliance with the rules and law on the grounds that I did not break any rules or laws, and the trooper who confiscated my license acted in a manner unbecoming of the Arkansas State Police.

    On the original date (Nov. 29), I was carrying my weapon in a perfectly legal manner pursuant to Arkansas law when a person in civilian clothes attempted to stop me and ask for identification. I requested to see his badge and he declined while physically grabbing me by the arm. I called 911, and minutes later when the person did show me his badge, I identified myself to him as requested by 911 dispatch. I also showed identification to the Searcy Police officers who arrived on scene because of the 911 call. I was not arrested and not issued a citation for any crime.

    Several days later (Dec. 3), I returned to Wal-Mart and this same trooper accosted me shortly after entering the store. I was not carrying my weapon at this time. The trooper recognized me and called me by my name and demanded that I give him my identification. I was not carrying at the time and not breaking any laws, so I was not required to produce my identification nor my CHCL as per the regulations. The trooper then placed me in handcuffs and took my wallet out of my pants and then took my CHCL out of my wallet. Again, I was not arrested and not issued a citation for any crime.

Sincerely,

James A. Tanner



000045



# MEMORANDUM

TO:      GREG DOWNS
             CORA GENTRY

FROM:    TFC  KURT ZIEGENHORN #501

RE:       JAMES TANNER

DATE:    DECEMBER 3,  2014


    On November 29, 2014, approximately 10:50 P.M., while off duty shopping at Wal-Mart in Searcy, AR, with my family, with my pistol covered and my badge visible(clipped on the lower part of my pants pocket below my weapon.  I came into contact with a subject later identified as James Tanner. The subject was wearing a tactical holster with a firearm strapped to his right thigh (between waist and knee) in an open carry position.  I first assumed he was law enforcement but did not notice a badge or any identification.  As he approached the area I was standing.  I curiously asked the subject what law enforcement department he was with, and the subject stated in a condescending manor that he was with no one.  I then identified myself as Trooper Ziegenhorn with the Arkansas State Police and asked him for his name and ID. He moved his right hand downward in the area of his pistol.  I then reached and grabbed his right wrist and elbow and again identified myself.  He became very defensive and agitated and stated he did not have to tell me anything.  I informed him that he could not open carry and suggested that he needed to leave.  He stated he was leaving and I allowed him to walk out in front of me to the front of the store.

    Before I could call for assistance, he said he was calling the police, which was fine, as it left my hands free.   As we approached the front, he found a Manager, which I presented ny State ID and the manager stated that he did not want Mr. Tanner in the store. Mr. Tanner's demeanor was very nervous and confrontational.

000046

EXHIBIT

2

Once outside we encountered Officers with Searcy Police Department (Searcy PD report #2) attached. They performed an ID check and found that Mr. Tanner did not have any current warrants and had a valid CHCL permit. The Searcy officers told Mr. Tanner to leave and to not come back wearing a weapon.

The Searcy officers informed me that this was not the first encounter with Mr. Tanner (Searcy PD report #1).

An affidavit for arrest has been signed by Searcy Prosecutor Buck Gibson for 5-73-120 and 5-54-102 and sent to White County Judge for Warrant.

I strongly believe that Mr. Tanner's neglect of CHCL rules and the Laws of the state of Arkansas are just cause to Suspend or Revoke his CHCL License.


Included 5 attachments

# THE DISTRICT COURT OF WHITE COUNTY, ARKANSAS

*SUAgov*
*McGlawn*
*Wells*
*Sky*

## AFFIDAVIT OF ARREST FOR THE FOLLOWING PERSON

| JAMES A. TANNER | W/M | 2/12 1987 |
|---|---|---|
| Defendant's Name | Race/Sex | Defendant's Birthdate |

| 815 WEST CHERRY | SEARCY, AR |
|---|---|
| Defendant's Address | City, State |

Pursuant to Rule 7.1 of the Arkansas Rules of Criminal procedure, the undersigned affiant being duly sworn, deposes and says that there is reason to believe that the above-named person has committed the offense of 5-73-120, 5-54-102, against the peace and dignity of the State of Arkansas.

① obstruction-
② carrying a prohibited weapon

## FACTS CONSTITUTING PROBABLE CAUSE

On November 21, 2014, approximately 10:50 P.M., inside the Wal-Mart at 3509 E Race in Searcy, AR, I came into contact with a subject later identified as James Tanner. Subject was wearing a tactical holster with a firearm strapped to his right thigh in an open carry position. I asked the subject what law enforcement department he was with, and the subject stated that he was with no one. I identified myself as Trooper Ziegenhorn with the Arkansas State Police and asked him for his name and ID. He refused and said that he didn't have to. In a 9-1-1 recording, Mr. Tanner confirmed that I identified myself as a State Trooper. Subject was followed to the front door where we then met with the Searcy P.D. Officers Jason McGlawn and Todd Wells.

I swear that the allegations contained are the truth, the whole truth and nothing but the truth.

| (870) 633-1454 | Kurt Ziegenhorn *[signatures]* |
|---|---|
| Affiant's Phone | Affiant |

| 256 Woodruff 252, McCrory, AR 72101 |
|---|
| Affiant's Address |

STATE OF ARKANSAS
COUNTY OF _WOODRUFF_

Subscribed and sworn to before me this _3rd_ day of _December_, 2014.

_Leah Scott_
Notary Public

*[notary seal: LEAH SCOTT, NO. 12344678, NOTARY PUBLIC, EXPIRES 07.07.2018, WHITE COUNTY - ARKANSAS]*

Agency Case Number: ....

_Just Arrest_
① 250-
② 500-

000048

*july 7, 20__*

EXHIBIT 3



# State of Arkansas





## ARKANSAS STATE POLICE

1 State Police Plaza Drive    Little Rock, Arkansas 72209-4822    www.asp.arkansas.gov

*"SERVING WITH PRIDE AND DISTINCTION SINCE 1935"*

**Mike Beebe**
*Governor*

**Stan Witt**
*Director*

**ARKANSAS
STATE POLICE
COMMISSION**

Daniel "Woody" Futrell
Chairman
*Nashville*

Wallace Fowler
Vice-Chairman
*Jonesboro*

Frank Guinn, Jr
Secretary
*Paragould*

Dr. Lewis Shepherd
*Arkadelphia*

John Allison
*Conway*

Bob Burns
*Little Rock*

ne Dunlap Christenson
*Harrison*

CERTIFIED MAIL RETURN RECEIPT REQUESTED

December 10, 2014

Mr. James A. Tanner
815 West Cherry Avenue
Searcy, AR 72143

Dear Mr. Tanner,

This is to notify you that your Arkansas concealed handgun carry license (CHCL) is REVOKED for the following reason(s):

*Arkansas Code § 5-73-302.  Authority to issue license.*
*(a) The Director of the Department of Arkansas State Police may issue a license to carry a concealed handgun to a person qualified as provided in this subchapter….*

*Arkansas Code § 5-73-301.  Definitions.*
*As used in this subchapter: … (2) "Concealed" means to cover from observation so as to prevent public view;…*

*Arkansas Code § 5-73-308.  License – Issuance or denial.*
*(a) (1) (A) The Director of the Department of Arkansas State Police may deny a license if within the preceding five (5) years the applicant has been found guilty of one (1) or more crimes of violence constituting a misdemeanor or for the offense of carrying a weapon….*

*Arkansas Code § 5-73-312.  Revocation.  (a) (1) A license to carry a concealed handgun issued under this subchapter shall be revoked if the licensee becomes ineligible under the criteria set forth in § 5-73-308(a) or § 5-73-309.  (2) (A) Any law enforcement officer making an arrest of a licensee for a violation of this subchapter or any other statutory violation that requires revocation of a license to carry a concealed handgun shall confiscate the license and forward it to the Director of the Department of Arkansas State Police.  (B) The license shall be held until a determination of the charge is finalized, with the appropriate disposition of the license after the determinati...*
*(b) When the Department of Arkansas State Police receives notification from any law enforcement agency or court that ...licensee has been found guilty or has pleaded guilty or nolo...*

000049

EXHIBIT
4

*contendere to any crime involving the use of a weapon, the license issued under
this subchapter is immediately revoked....*

*ASP CHCL Rule 7.0  Failure to comply with concealed handgun carry license
restrictions*
*Failure to comply with these Rules is a ground(s) for suspension and/or revocation
of the Arkansas concealed handgun carry license.*

*ASP CHCL Rule 3.2  Contact with law enforcement  (a)  While in possession of a
concealed handgun, the licensee shall present the original license for inspection,
along with an official form of photo identification, upon request for identification by
any law enforcement officer. (b)  In any official contact with law enforcement, if the
licensee IS in possession of a handgun, when the officer asks the licensee for
identification (driver's license, or personal information,*
*such as name and date of birth), the licensee shall notify the officer that he or she
holds a concealed handgun carry license and that he or she has a handgun in his
or her possession....*

On November 29, 2014, you came in contact with Trooper Kurt Ziegenhorn in
Wal-Mart on East Race Street in Searcy.  Trooper Ziegenhorn observed that
your handgun was not concealed as required by Arkansas CHCL laws and
rules.  Trooper Ziegenhorn identified himself as a State Trooper and asked you
for identification.  At that time, you are required by CHCL rules and law to
provide your concealed handgun carry license to the Trooper, which you
refused to do.  These are violations of Arkansas CHCL rules and law and your
license is revoked.

We have received your CHCL and have placed it in our file.

Pursuant to ASP CHCL Rules, you may request an administrative hearing for
review of whether the department's revocation of the license is in compliance
with the rules and law.  Such request and your reason(s) must be made in
writing to this office within thirty (30) days of receipt of this letter.

Sincerely,


Cora Gentry, Lieutenant
Concealed Handgun Carry Licensing
Cora.gentry@asp.arkansas.gov
1 State Police Plaza Drive
Little Rock, AR 72209

000050

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

# OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total P | |

Postmark
Here

7014 1200 0002 0901 9459

Sent To
Mr. James A. Tanner
Street, A
or PO B
815 West Cherry Avenue
City, Sta
Searcy, AR 72143

PS Form 3800, August 2006          See Reverse for Instructions

000051

# Warrant of Arrest

## Affidavit

Issued #: 15-0000040

The State of Arkansas, to any Sheriff, Constable, Coroner, or Policeman in the state or any other Law Enforcement
Officer in the United States:

City of Searcy
VS.
Tanner, James A.

Tanner, James A
815 W Cherry
Searcy, AR 72143

SSN:
DL#: 921676373
Height: 5'11"
Race: White
Sex: Male
Eyes: Hazel

DOB: 02/12/1987

Weight: 140 lbs
Hair: Blond

Bond: $250.00
Bond Type: Professional Via Agency

It APPEARING, based on my personal examination and evaluation of sworn affidavit(s) that there is reasonable
ground for believing that:

has committed the offense(s) listed below in the County of White State of Arkansas, and you are therefore
commanded forthwith to arrest him/her and deliver him/her to the proper office to bring, or to be brought before me to
be dealt with according to law.

| # | Statute Code | Description | | |
|---|---|---|---|---|
| 1 | 5-54-102(4) | OBSTRUCTING GOVERNMENTAL OPS; CLASS "C" MISD | | |

| Warrant # | | |
|---|---|---|
| Agency | | |
| Affidavit # | | |

Witness my hand as District Court Judge, Searcy District Court on   1-16-15

District Court Judge, Searcy District Court

STATE OF ARKANSAS
COUNTY OF WHITE

I have this _____ day of _____ 2015, duly served
the within by _____

Officer Name

Court Date Given _____ day of _____ 2015.

Time: 10:00 A.M.

Signature

Date Printed: Thursday, January 15, 20

**Notes:**
Affidavit warrant, Obstruction.
Total $250 paper bond.

EXHIBIT
5

000052

# BEFORE THE DEPARTMENT OF THE ARKANSAS STATE POLICE

IN RE:                                              James Andrew Tanner
                                                    APPELLANT
                                                    CHCL No. 2015-16

## <u>NOTICE OF HEARING</u>

TO:    James Andrew Tanner
       815 W. Cherry Ave.
       Searcy, Arkansas 72143

Pursuant to Ark. Code Ann. § 5-73-317 and the Arkansas State Police Rules and Regulations promulgated in accordance therewith, notice is hereby given that a hearing will be held at **10:00 a.m. on May 12, 2015**, at the Arkansas State Police Headquarters, 1 State Police Plaza Drive, Little Rock, Arkansas 72209, for the purpose determining if the revocation of the appellant's concealed handgun license application was in accordance with the provisions of Ark. Code Ann. § 5-73-309 and Arkansas State Police Rules.

ASP General Counsel Greg Downs is appointed as Hearing Officer for this matter.

Date: April 14, 2015.

                                    _____
                                    Colonel William J. Bryant
                                    Director, Arkansas State Police

Distribution:   Greg Downs
                Mary Claire McLaurin
                Lt. Cora Gentry
                CHCL No. 2015-16



000053

TABLE OF CONTENTS

**CHAPTER 1.  Title; Authority**
    Rule 1.0  Title
    Rule 1.1  Authority; Purpose
    Rule 1.2  Definitions
    Rule 1.3  Authority to issue license
    Rule 1.4  Term of the license
    Rule 1.5  Exemptions – Authorized under other laws
    Rule 1.6  Penalty for false response or document
    Rule 1.7  Exemptions – Military and spouse

**CHAPTER 2.  Application**
    Rule 2.0  Application design
    Rule 2.1  Application availability
    Rule 2.2  Proper Application Packet
    Rule 2.3  Fees

**CHAPTER 3.  License Possession Requirements**
    Rule 3.0  License Usage
    Rule 3.1  Possession of license
    Rule 3.2  Contact with law enforcement
    Rule 3.3  Current license validity

**CHAPTER 4.  Requirements for licensure**
    Rule 4.0  License – Requirements
    Rule 4.1  Application form
    Rule 4.2  Application packet and procedure
    Rule 4.3  Application packet processing by the Department
    Rule 4.4  Fingerprinting for initial application
    Rule 4.5  Unresolved arrests
    Rule 4.6  License – Issuance
    Rule 4.7  License denial – Initial application

**CHAPTER 5.  Renewal of license**
    Rule 5.0  Process for renewal of license
    Rule 5.1  Renewal application - late fee
    Rule 5.2  License expired over six (6) months
    Rule 5.3  Renewal application denial

**CHAPTER 6.  Other changes to license**
    Rule 6.0  Lost or destroyed license
    Rule 6.1  Change of address of the licensee
    Rule 6.2  Change of name of the licensee
    Rule 6.3  Death of licensee
    Rule 6.4  Voluntary surrender of a license

**CHAPTER 7.  License Restrictions**
    Rule 7.0  Failure to comply with concealed handgun carry restrictions
    Rule 7.1  Restrictions as to type of handgun



**CHAPTER 8.  Suspension of License**
    Rule 8.0  License suspension
    Rule 8.1  Arrest of licensee
    Rule 8.2  Order of Suspension

**CHAPTER 9.  Revocation of License**
    Rule 9.0  Revocation
    Rule 9.1  Notice

**CHAPTER 10.  Administrative Hearings**
    Rule 10.0  Appeal hearings
    Rule 10.1  Possession of license pending appeal

**CHAPTER 11.  Re-application after License Revocation**
    Rule 11.0  Re-application procedures

**CHAPTER 12.  Honoring of other states/ license to carry a concealed handgun**
    Rule 12.0  *Repealed*
    Rule 12.1  Effect
    Rule 12.2  Procedure for transfer of a license issued by another state to Arkansas

**CHAPTER 13.  Training Requirement for Concealed Handgun Carry License**
    Rule 13.0  Training requirements upon initial application
    Rule 13.1  Training requirements upon renewal of license
    Rule 13.2  Substitution of live-fire training - Active Duty Military
    Rule 13.3  Substitution of live-fire training - National Guard or a reserve component
        of the Armed Forces of the United States

**CHAPTER 14.  Firearms Safety Training Instructor**
    Rule 14.0  Purpose
    Rule 14.1  Maintenance of Records
    Rule 14.2  Application for approval of registration

**CHAPTER 15.  Training course requirements to obtain and maintain registration as a Firearms Safety Training Instructor**
    Rule 15.0  Instructor Training of Applicants
    Rule 15.1  Requirements for administration of firearms safety training instruction
    Rule 15.2  Instructor Change of Address
    Rule 15.3  Instructor – Other requirements
    Rule 15.4  Death of a registered instructor
    Rule 15.5  Voluntary surrender of a registration

**CHAPTER 16.  Denial, suspension or revocation of a Firearms Safety Training Instructor registration**
    Rule 16.0  Grounds for denial, suspension, or revocation of a Firearms Safety
        Training Instructor    registration
    Rule 16.1  Appeal of the suspension or revocation of a Firearms Safety Training
        Instructor registration

**CHAPTER 17.  Effective Date of these Rules**
    Rule 17.0  Effective date

## CHAPTER 1. TITLE; AUTHORITY

### Rule 1.0 Title
These Rules shall be known as the Arkansas Concealed Handgun Carry License Rules ("Rules").

### Rule 1.1 Authority; Purpose
**(a)** These Rules are issued under the Director's authority under ACA §§5-73-317, and §§12-8-104, *et seq.*, and the Arkansas Administrative Procedure Act at ACA §§25-15-201, *et seq.*, among others. The purpose of these Rules is to provide guidelines in conformity with Arkansas laws as to issuance and governance of applicants for new, renewal, or transfer licenses to carry a concealed handgun in the State of Arkansas as issued by the Department of Arkansas State Police; and to provide standards and guidelines to instructors who train concealed handgun carry license applicants.
**(b)** These Rules do not address federal law concerning active and retired law enforcement concealed handgun carry authorization under 18 United States Code § 921 and § 922.
**(c)** These Rules do not address certified law enforcement officers or retired law enforcement officers concealed handgun carry authorization under the provisions of ACA §§12-15-201 and §12-15-202.

### Rule 1.2 Definitions
Definitions used in these Rules, unless the context otherwise requires, are adopted:

**(a) "Active Duty Military"** means an individual serving full time in the active military service of the United States of America, and includes members of the reserve components of the various branches of military service, while serving under published orders for active duty or full-time training. The term does not include:
    (1) members of the reserve component who are performing active duty under military calls or orders specifying periods of less than thirty-one (31) calendar days; or
    (2) active duty training under military calls or orders specifying periods of less than thirty-one (31) calendar days;

**(b) "Administrator"** means the designee of the Director of the Department of Arkansas State Police under these Rules;

**(c) "Applicant"** means any person who has submitted to the Department a properly-completed application for a concealed handgun carry license;

**(d) "Application"** means a form of such size and design that contains the required information and documentation enabling a person to apply for a license to carry a concealed handgun, renewal of a concealed handgun carry license, or transfer of a concealed handgun carry license;

**(e) "Application packet"** means the documentation as outlined in Rule 4.2 herein;

**(f) "Chronically and habitually uses alcoholic beverages"** means:
    (1) That a person's normal faculties are impaired. This is presumed if the applicant has been voluntarily or involuntarily committed to a treatment facility for treatment of alcoholism within the three (3) year period immediately preceding the date on which the application, renewal, or transfer is submitted; or

(2)  That a person has been convicted of two (2) or more offenses related to the use of alcohol under the laws of this state or similar laws of any other state or of the United States within the three (3) year period immediately preceding the date on which the application, renewal, or transfer is submitted;  or

(3)  That a person has been convicted of an alcohol-related offense while a handgun was in his or her possession within the last three (3) years;

**(g)  "Chronically and habitually abuses controlled substances"** means :

(1)  That a person's normal faculties are impaired.   This is presumed if the applicant has been voluntarily or involuntarily committed to a treatment facility for the abuse of a controlled substance within the three-year (3) period immediately preceding the date on which the application, renewal or transfer is submitted; or

(2)  has been convicted of a crime under the provisions of the Uniform Controlled Substances Act, ACA §§ 5-64-101 *et seq.,* or similar laws of Arkansas or any other state or the United States relating to controlled substances within the three-year (3) period immediately preceding the date on which the application, renewal, or transfer is submitted;

**(h)  "Concealed"** means to cover from observation so as to prevent public view;

**(i)  "Convicted"** means that a person pleaded guilty or *nolo contendere* to or was found guilty of an offense;

**(j)  "Crime of Violence"** includes but is not limited to murder, rape and sexual assault, robbery, and assault;

**(k)  "Department"** means the Department of Arkansas State Police;

**(l)  "Director"** means the Director of the Department of Arkansas State Police;

**(m)  "Documentation"** means information as may be required to determine the applicant's qualifications.   Documentation includes written materials that are able to be independently verified as true and correct by the Department.  The most reliable documentation of a disposition from a court is a copy certified by the court clerk or the keeper of the record.

A seal or expungement order for a felony conviction in Arkansas where the crime occurred prior to April 7, 1971, will be considered void by the Department.

A valid seal or expungement order for an Arkansas felony conviction when the crime was committed after March 13, 1995, shall be reviewed by the Department, but will not restore firearms rights unless a gubernatorial or presidential pardon is received specifically restoring firearms possession rights.

A valid seal or expungement order for an Arkansas felony conviction when the crime was committed prior to March 13, 1995, shall be reviewed and, unless void or causes a prohibition under federal law, shall be honored by the Department;

**(n)  "Duplicate License"** means a license to carry a concealed handgun which has been issued to a licensee to replace the previously-issued license;

**(o)  "Firearms Safety Training Instructor"** or **"Instructor"** means any person who has been registered by the Director to instruct the training requirements for a licensee to carry a concealed handgun under the provisions of Arkansas law and these Rules;

**(p)** "**Handgun**" means any firearm, other than a fully automatic firearm, with a barrel length of less than twelve inches (12") that is designed, made, or adapted to be fired with one (1) hand;

**(q)** "**Hearing Officer**" means the Director of Arkansas State Police or his/her designated representative acting in issues of adjudication as outlined in the Arkansas Administrative Procedure Act, as amended;

**(r)** "**Licensee**" means a person who has been issued a concealed handgun carry license under the provisions of ACA §§5-73-301, *et seq.,* and these Rules;

(1) Restricted - allows the person to carry any legal handgun other than a semiautomatic handgun. The licensee must establish proficiency in the use of a handgun other than a semiautomatic handgun; or

(2) Unrestricted – allows the person to carry any legal handgun. The licensee must establish proficiency in the use of a semiautomatic handgun;

**(s)** "**Possession**" means, for the purposes of these Rules, any actual or constructive possession, to include but not be limited to areas within the passenger compartment of any vehicle, including glove boxes, containers, or on the person, unless excluded below.

(1) "Possession" does not include:

(A) For a passenger car, where the handgun is unloaded and locked in the trunk;

(B) For any vehicle, where the handgun is unloaded and located in a space outside the passenger compartment;

(C) For a vehicle where a space outside the passenger compartment or a trunk does not exist, then the handgun shall be unloaded and in a locked container and the ammunition physically separated from the handgun, so that both are not readily accessible to any occupant of the vehicle while the vehicle is in motion;

(2) "Carrying a handgun", as stated in ACA §5-73-312 (c), is included in the term "possession";

**(t)** "**Registration**" means a certificate granted to an instructor permitting him/her to instruct the firearms safety training provisions outlined in these Rules;

**(u)** "**Resident**" means an individual who possesses a valid Arkansas driver's license with an Arkansas address listed thereon and who has established domicile as evidenced by the intent to make Arkansas his or her fixed and permanent home;

**(v)** "**Training**" means the training requirements set forth in these Rules for licensure to carry a concealed handgun.

## Rule 1.3  Authority to issue license

The Director may issue a license to carry a concealed handgun to a person qualified as provided in these Rules and other applicable laws.

## Rule 1.4  Term of the license

The term of the license to carry a concealed handgun is valid throughout the state for a period of five (5) years from the date of issuance, unless suspended, cancelled or revoked under these Rules.

## Rule 1.5  Exemptions – Authorized under other laws

Any person legally authorized to carry a firearm under any Arkansas or federal law other than ACA §5-73-301 et seq is not bound by the Arkansas Concealed Handgun Carry License law or rules.

### Rule 1.6  Penalty for false response or document
Submitting false answers or false documentation shall subject the applicant to the following:
**(a)**  Criminal penalty
Any person who knowingly submits a false answer to any question on a concealed handgun carry license application, or knowingly submits a false document when applying for a concealed handgun, upon conviction is guilty of a Class B misdemeanor; or
**(b)**  Non-criminal penalty
Any person who knowingly submits a false answer to any question on a concealed handgun carry license application, or knowingly submits a false document when applying for a concealed handgun, is precluded from any license being issued to the applicant; and is subject to immediate revocation if the license has already been issued.

### Rule 1.7  Exemptions – Military and spouse

#### Active Duty Member
**(a)**  An active duty member of the United States military is not required to be a resident of Arkansas to obtain an Arkansas concealed handgun carry license if the active duty member is able to document that at the time of their application that they are stationed in Arkansas.
**(b)**  The active duty member must complete the classroom portion of the concealed handgun carry training that relates to Arkansas laws and concealed handgun carry rules.
**(c)**  The active duty member may substitute the letter from their commanding officer as outlined in Rule 13.2 and 13.3 for their live-fire requirement or they may complete the entire concealed handgun carry training course and complete live fire under the ASP registered CHCL instructor.
**(d)**  The active duty member shall submit with their initial application and any renewal, a recent passport style photograph in appropriate electronic format.

#### Spouse of Active Duty Member
**(e)**  Any spouse of active duty military personnel, as recognized by the branch of the United States military in which their spouse is a member, is not required to be a resident of Arkansas to obtain an Arkansas concealed handgun carry license if the spouse of the active duty member is able to document at the time of their application that their spouse is on active duty stationed in Arkansas.
**(f)**  Any spouse of active duty military personnel must meet the same training requirements as a regular CHCL applicant.
**(g)**  Any spouse of active duty military personnel shall submit with their initial application and any renewal, a recent passport style photograph in appropriate electronic format.


### CHAPTER 2.  Application

### Rule 2.0  Application design
The initial application form shall be of such size and design that will include relevant information required by current Arkansas laws.  The Director shall have the authority to

design and, if necessary, amend the renewal, transfer, or replacement application form as he or she deems necessary.

## Rule 2.1  Application availability
The application form for license to carry a concealed handgun may be obtained at the Department's Highway Patrol Troop Headquarters and Arkansas State Police Headquarters in Little Rock during normal business hours.

## Rule 2.2  Proper Application Packet
**(a)** The documentation received from an applicant shall be deemed proper when it contains all the requirements under Arkansas law and these Rules.
**(b)** In addition to the application form, the following is required:
  (1) Non-refundable license fee described in Arkansas laws and these Rules;
  (2) A properly completed, legible, signed waiver authorizing the Department access to the applicant's records as outlined in Arkansas law and these Rules;
  (3) At least one (1) full set of classifiable fingerprints;
  (4) Proof of the applicant's successful completion of an approved firearm safety training program;
  (5) A signed, agreed statement of allegiance to the United States Constitution and to the Arkansas Constitution; and
  (6) Any other information the Director may require from the applicant to determine the applicant's qualifications to hold a license under the provisions of Arkansas laws, federal laws, and these Rules.

## Rule 2.3  Fees
Certain fees will be necessary for the proper processing of concealed handgun carry licensing paperwork.  Those fees are set by Arkansas law, or state and federal rules.  An instruction sheet may be issued by the Department, which outlines proper application procedures and current fees.

## CHAPTER 3.  License Possession Requirements

## Rule 3.0  License Usage
The concealed handgun carry license issued under these Rules shall be used solely by the licensee to whom it was issued.

## Rule 3.1  Possession of license
The licensee shall carry the concealed handgun carry license at all times while in possession of a concealed handgun.

## Rule 3.2  Contact with law enforcement
**(a)** While in possession of a concealed handgun, the licensee shall present the original license for inspection, along with an official form of photo identification, upon request for identification by any law enforcement officer.
**(b)** In any official contact with law enforcement, if the licensee **IS** in possession of a handgun, when the officer asks the licensee for identification (driver's license, or personal information, such as name and date of birth), the licensee shall notify the officer that he or she holds a concealed handgun carry license and that he or she has a handgun in his or her possession.
**(c)** In any official contact with law enforcement, if the licensee **IS NOT** in possession of a handgun, when the officer asks the licensee for identification (driver's license, or personal information, such as name and date of birth), the licensee shall not be

required to notify the officer that he or she holds a concealed handgun carry license and does not have a handgun in his or her possession.

**(d)** An official form of photo identification shall be, but is not limited to, any of the following:

    (1) Current and valid Arkansas driver's license;

    (2) Current and valid military identification card; or

    (3) Current and valid United States passport.

**(e)** Reproduced copies of the official form of photo identification or copies of the original concealed handgun carry license shall not be accepted.

## Rule 3.3  Current license validity

Any law enforcement officer with access to the Arkansas Crime Information Center database may query the Arkansas driver's license of the licensee for the currently validity status of the concealed handgun carry license.

## CHAPTER 4.  Requirements for licensure

### Rule 4.0  License – Requirements

The Director of the Department shall issue a license to carry a concealed handgun if the applicant:

**(a)** Is a citizen of the United States of America;

**(b)** Is a resident of the state and has been a resident continuously for ninety days (90) days or longer immediately preceding the filing of the application;

**(c)** Is twenty-one (21) years of age or older;

**(d)** Does not suffer from a mental or physical infirmity, which prevents the safe handling of a handgun;

**(e)** Has not threatened or attempted suicide;

**(f)** Has not been convicted of a felony in a court of this state, of any other state, or of the United States without having been pardoned for same and had firearms possession rights restored;

**(g)** Is not subject to any federal or state law, which makes it unlawful to receive, possess, or transport any firearm;

**(h)** Has had his or her background check successfully completed through the Arkansas State Police and the Federal Bureau of Investigation's National Instant Check System (NICS);

**(i)** Does not chronically or habitually abuse a controlled substance;

**(j)** Does not chronically or habitually use an alcoholic beverage;

**(k)** Desires a legal means to carry a concealed handgun to defend himself or herself;

**(l)** Has not been adjudicated mentally incompetent;

**(m)** Has not been voluntarily or involuntarily committed to a mental institution or mental health treatment facility;

**(n)** Is not a fugitive from justice, or does not have an active warrant for his or her arrest;

**(o)** Has satisfactorily completed a training course prescribed and approved by the Director;

**(p)** Signs a statement of allegiance to the United States Constitution and the Arkansas Constitution; and

**(q)** Is not currently under a charge, by indictment or information, for any offense classified as a felony.

### Rule 4.1  Application form

The application form for a license to carry a concealed handgun shall be promulgated by the Director and shall include:

(a) The name, address, place and date of birth, race, and sex of the applicant;

(b) The driver's license number and social security number of the applicant;

(c) Any previous address of the applicant for the two (2) years preceding the date of the application;

(d) Questions related to the applicant's fitness for issuance of a concealed handgun carry license;

(e) A statement that the applicant has not been convicted of one (1) or more crimes of violence constituting a misdemeanor within the last five (5) years;

(f) A statement that the applicant has not been convicted of the offense of carrying a weapon within the last five (5) years;

(g) A statement whether or not the applicant has been found guilty of a crime of violence or domestic abuse;

(h) A statement that the applicant has been furnished a copy of Arkansas law relevant to concealed handgun carry licensing and is acquainted with the truth and understanding of the law;

(i) A warning that a knowingly false answer to any question, or the knowing submission of any false document, by the applicant subjects him or her to criminal prosecution and precludes any future license from being issued to the applicant; and subjects the applicant to immediate revocation if the license has already been issued;

(j) A statement that the applicant desires a legal means to carry a concealed handgun to defend himself or herself; and

(k) A statement as to whether the applicant is applying for:
     (1) A restricted license, which allows the person to carry any handgun, other than a semiautomatic handgun; or
     (2) An unrestricted license, which allows the person to carry any handgun.

## Rule 4.2 Application packet and procedure

The applicant for a license to carry a concealed handgun shall submit the following items as an application packet to the Department:

(a) A properly completed application form, as described herein;

(b) A nonrefundable license fee as prescribed by law;

(c) The applicable fee(s) for state and national background checks, as prescribed by law;

(d) A full set of classifiable fingerprints of the applicant;

(e) A properly completed certification of training; and

(f) A signed waiver authorizing the Department access to any medical, criminal, military, or other records concerning the applicant.

## Rule 4.3 Application packet processing by the Department

Upon receipt of the properly completed application packet as described herein, the Department shall:

(a) Forward the full set of classifiable fingerprints of the applicant to the appropriate agencies for state and national processing; and

(b) Forward notice of the individual's application to the sheriff of the applicant's county of residence, and, if applicable, to the police chief of the applicant's municipality of residence, who may participate, at his or her discretion, in the process by submitting a voluntary report to the Department containing any information that he or she feels may be pertinent to the licensing of any applicant. The reporting shall be made within thirty (30) days after the date the notice was sent.

## Rule 4.4 Fingerprinting for initial application

(a) In the event a legible and classifiable set of fingerprints, as determined by the Department or the Federal Bureau of Investigation, cannot be obtained, the applicant shall be contacted and shall be required to be fingerprinted again. This determination

may be made prior to the submission of a fingerprint card to the FBI or after one (1) rejection of the fingerprint card.

**(b)** After two (2) unsuccessful fingerprint card submissions (rejections) are completed, the applicant may again pay the FBI fingerprint background check fee and submit two (2) newly-completed fingerprint cards.

**(c)** The Director shall determine the applicant's eligibility for licensing after successful completion of the FBI fingerprint-based check.

**(d)** Electronic capture of the fingerprints of the applicant on a device and in a manner approved by the Director is allowed.

### Rule 4.5  Unresolved arrests

**(a)** If a check of the applicant's criminal records uncovers any unresolved felony arrest over ten (10) years old, then the applicant shall obtain a letter of reference, from the county sheriff, prosecuting attorney, or circuit judge of the county where the applicant resides, which states that, to the best of his or her knowledge, the applicant is of good character and free of any felony convictions.

**(b)** If a check of the applicant's criminal records uncovers any unresolved arrest that may lead to the disqualification of the applicant, the applicant shall obtain a disposition of the open charge. The application will not be processed to completion without the Department having received the disposition information.

### Rule 4.6  License – Issuance

**(a)** The license shall be issued within one hundred twenty (120) days after the date of receipt of a properly-completed application packet, as described herein. That period shall be tolled pending the receipt of disposition and level of certain outstanding criminal charges or the lack of classifiable fingerprints for the state and national background check.

**(b)** The Director shall issue the license or deny the application based solely on the ground that the applicant fails to qualify under the criteria established in law and these Rules. Notice of denial shall be sent according to these Rules.

### Rule 4.7  License denial – Initial application

**(a)** If the Director denies the application, he or she shall notify the applicant in writing, stating the grounds for denial.

**(b)** If the Director denies the application, he shall notify the applicant in writing, stating the grounds for denial and appeal procedures under the Arkansas Administrative Procedure Act, ACA §§25-15-201 *et seq.* The letter shall be sent certified mail, return receipt requested.

### CHAPTER 5.  Renewal of license

### Rule 5.0  Process for renewal of license

**(a)** The licensee may renew his or her license no more than ninety (90) days prior to the expiration date by submitting the following renewal packet to the Department:

(1) A completed renewal form prescribed by the Department, including a verified statement that the licensee remains qualified pursuant to the criteria specified in ACA § 5-73-308(a) and § 5-73-309;

(2) A renewal fee in the amount prescribed by law;

(3) A certification of training form properly completed by the licensee's Firearms Safety Training Instructor and reflecting that the licensee has successfully completed the Training Course as required by the Department; and

(4) A digital photograph of the licensee (if an Arkansas driver's license photo is not available) within Department standardized requirements; or a release authorization to

allow the Department to obtain a qualifying digital photograph of the licensee from another source.

**(b)** The license shall be renewed upon timely receipt of the items listed herein, subject to a background investigation conducted pursuant to law that did not reveal any disqualifying offense or unresolved arrest which would disqualify a licensee under state or federal law.

### Rule 5.1  Renewal application - late fee

**(a)** A licensee who fails to file properly a renewal application packet on or before its expiration date, but before six (6) months after the license has expired, may renew his or her license by paying a late fee as prescribed by law.  Receipt of the renewal packet is determined by the receipt date of the Department.

**(b)** Exemption from late fee – for active duty members of the armed forces of the United States, a member of the National Guard, or a member of a reserve component of the armed forces of the United States who is on active duty outside Arkansas  - may renew his or her license within thirty (30) days after the person returns to Arkansas by submitting the following properly-completed renewal packet to the Department:

(1)  A completed renewal form prescribed by the Department;

(2)  A verified statement that the licensee remains qualified pursuant to the criteria specified in ACA § 5-73-308(a) and § 5-73-309;

(3)  A renewal fee as prescribed by Arkansas law;

(4)  A certification or training form properly completed by the licensee's Firearms Safety Training Instructor, reflecting that the licensee's training was properly and successfully conducted;

(5)  A digital photograph of the licensee; or a release authorization to allow the Department to obtain a digital photograph of the licensee from another source; and

(6)  Proof of military assignment outside Arkansas on the expiration date of the license.

### Rule 5.2  License expired over six (6) months

**(a)** Licenses that have been expired six (6) months or more shall be deemed inactive.  A licensee whose license has become inactive may re-apply for licensure as an initial applicant. The fees and requirements shall be the same as for an initial application.

**(b)** Exemption from inactive status – for active duty members of the armed forces of the United States, or a member of the National Guard, or a member of a reserve component of the armed forces of the United States who is on active duty outside Arkansas may renew his or her license within thirty (30) days after the person returns to Arkansas by submitting the following renewal packet to the Department:

(1)  A completed renewal form prescribed by the Department;

(2)  A verified statement that the licensee remains qualified pursuant to the criteria specified in ACA § 5-73-308(a) and ACA §5-73-309;

(3)  A renewal fee as prescribed by Arkansas law;

(4)  A certification or training form properly completed by the licensee's Firearms Safety Training Instructor reflecting that the licensee's training was properly and successfully conducted;

(5)  A digital photograph of the licensee or a release authorization to allow the Department to obtain a digital photograph of the licensee from another source; and

(6)  Proof of military assignment outside Arkansas on the expiration date of the license.

### Rule 5.3 Renewal application denial

**(a)** The Director of Arkansas State Police may deny a renewal of a license upon the same grounds as for denial of an initial application for license.

**(b)** If the Director denies the renewal application, he shall notify the applicant in writing, stating the grounds for denial and appeal procedures under the Arkansas Administrative Procedure Act, ACA §§25-15-201 *et seq.* The letter shall be sent certified mail, return receipt requested.

## CHAPTER 6.  Other changes to license

### Rule 6.0  Lost or destroyed license
**(a)** Within thirty (30) days after having a license lost or destroyed, the licensee shall notify the Director in writing, by notarized statement, of the loss or destruction. A Department form shall be provided for that purpose.
**(b)** If a licensee complies with the provisions of subsection (a) of this section, he or she may obtain a replacement license with up-to-date information upon the payment to the Department of a fee as established by law.

### Rule 6.1  Change of address of the licensee
**(a)** Within thirty (30) days after the changing of a permanent address, the licensee shall notify the Director in writing of the change. Both the old and new address shall be furnished. A Department form shall be provided for that purpose.
**(b)** If the licensee would like a new license printed with the updated information, he or she may destroy the old license and apply for a replacement license under Rule 6.0.

### Rule 6.2  Change of name of the licensee
**(a)** Within thirty (30) days after the changing of a legal name, the licensee shall notify the Director in writing of the change and provide court documentation that officially created the change. A Department form shall be provided for that purpose.
**(b)** If the licensee would like a new license printed with updated information, he or she may destroy the old license and apply for a replacement license under Rule 6.0.

### Rule 6.3  Death of licensee
Upon death of a licensee, the license shall be cancelled from the date of death. Written notice of the death of a licensee should be filed as soon as possible after the death on a form prescribed by the Department.

### Rule 6.4  Voluntary surrender of a license
If a licensee voluntarily surrenders his or her license to the Department in the absence of suspension or revocation proceedings, the Department will accept the license and cancel it.

## CHAPTER 7.  License Restrictions

### Rule 7.0  Failure to comply with concealed handgun carry license restrictions
Failure to comply with these Rules is a ground(s) for suspension and/or revocation of the Arkansas concealed handgun carry license.

### Rule 7.1  Restrictions as to type of handgun
**(a)** A restricted license allows the licensee to carry concealed any legal handgun, other than a semiautomatic handgun.
**(b)** An unrestricted license shall allow the licensee to carry any legal handgun.

**CHAPTER 8. Suspension of License**

### Rule 8.0 License suspension
**(a)** If the licensee is arrested or formally charged with a crime that would disqualify the licensee from having a license, the licensee shall immediately notify the Department to the attention of the Concealed Handgun Carry Licensing Section, and the Director shall suspend a license until final disposition of the case.
**(b)** If the licensee is arrested or formally charged with a crime that would disqualify the licensee from having a license, upon notification by any law enforcement agency or a court and subsequent written verification, the Director shall suspend a license until final disposition of the case.
**(c)** Notice of license suspension shall be sent to the licensee by certified mail, return receipt requested.
**(d)** The licensee shall be required to send the license to the Department as soon as possible after the arrest, unless the officers confiscated the license at the time of arrest.
**(e)** If the charges are dismissed or "nol prossed", or the licensee is found "not guilty", then the license will be returned to the licensee, if it has not expired. If the license has expired, then the licensee may apply for renewal of the license under these Rules.
**(f)** Suspension of a license is subject to the Arkansas Administrative Procedure Act, ACA §§25-15-201, *et seq*. The suspended license holder, upon his or her timely request in writing, shall be afforded an administrative hearing.
**(g)** The Department is required by Arkansas law to suspend the license of any licensee if so ordered by the Office of Child Support Enforcement. The licensee will be sent notice of the suspension. The license may be reinstated (if it is still within its valid issuance period) after full payment of amount due through the Office of Child Support Enforcement and that office officially notifies the Department to release the suspension.

### Rule 8.1 Arrest of licensee
**(a)** Any law enforcement officer making an arrest of a licensee for a violation of Arkansas law and/or these Rules, or any other statutory violation which requires revocation of a license to carry a concealed handgun, shall confiscate the license and forward it immediately to the Director.
**(b)** The license shall be held by the Department until a determination of the charge is finalized, with the appropriate disposition of the license after the determination.
**(c)** If the licensee is not in possession of his or her concealed handgun carry license at the time of the arrest, the officer is not required to take possession of the license, but must forward the supporting paperwork to the Arkansas State Police, Concealed Handgun Carry Licensing Section, for further Department action on the license and retention in Department records.
**(d)** Any non-Arkansas concealed handgun carry license may be confiscated in a similar manner and be immediately forwarded to the Arkansas State Police, Concealed Handgun Carry Licensing Section, along with any supporting paperwork, for proper action and disposition by Department personnel.

### Rule 8.2 Order of Suspension
**(a)** The Director may issue a written order of summary suspension of a license if it is determined that the public health, safety, or welfare requires emergency action. The suspended license holder, upon timely request in writing, shall be afforded an administrative hearing.
**(b)** The Director shall issue an order of suspension if any concealed handgun carry licensee becomes ineligible under the criteria set forth in the provisions of Arkansas law,

federal law, or these Rules. Appeal procedures shall be given in writing to the licensee by the Department.

## CHAPTER 9. Revocation of License

### Rule 9.0 Revocation
**(a)** The Director shall revoke a concealed handgun carry license, if during the license period:

    (1) the licensee becomes ineligible under the criteria set forth in state or federal law or these Rules; or

    (2) the Department receives notification from any law enforcement agency, court or the licensee that a licensee has been found guilty or has pleaded guilty or "nolo contendere" to any crime involving the use of a weapon; or

    (3) the Department receives notification from any law enforcement agency or court that a licensee has been found guilty or has pleaded guilty or "nolo contendere" to an alcohol-related offense committed while carrying a handgun.

**(b)** The Director may issue instructions for possible reapplication for a license after the license has been revoked.

### Rule 9.1 Notice
**(a)** Notice of concealed handgun carry license revocation shall be sent to the licensee by certified mail, return receipt requested, to the last address as indicated by the licensee in the file.

**(b)** Appeals from the decision of revocation of a concealed handgun carry license shall be made in accordance with the appeal procedure established by the Department and the Arkansas Administrative Procedure Act, ACA §§25-15-201, *et seq.*

## CHAPTER 10. Administrative Hearings

### Rule 10.0 Appeal hearings
**(a)** The Director or the hearing officer appointed by the Director is authorized to administer an oath or affirmation in conjunction with the administrative hearing.

**(b)** In any hearing held for the purpose of affording any licensee the opportunity to demonstrate his/her qualifications after the initial denial of a license, the burden of proof shall be on the applicant.

**(c)** In any hearing held for the purpose of affording any licensee the opportunity to demonstrate his/her qualifications after a suspension or revocation of a license, the burden of proof shall be on the Department.

**(d)** The hearing shall be conducted in accordance with the Arkansas Administrative Procedure Act, ACA §§25-15-201, *et seq*.

### Rule 10.1 Possession of license pending appeal
Upon notification of suspension or revocation, the concealed handgun carry licensee shall return the concealed handgun carry license to the Director. Any concealed handgun carry license under suspension or revocation is subject to seizure at any time by any law enforcement officer.

## CHAPTER 11. Re-application after License Revocation

### Rule 11.0 Re-application procedures

**(a)** If a license, which has been issued in accordance with Arkansas law and these Rules, is revoked by the Director, the former licensee shall not be eligible to apply for a concealed handgun carry license for a period of twenty-four (24) months from the date of revocation or other exclusion period stated in the law. After that time period expires, the applicant may reapply. At that time, applicant must meet all qualifications and comply with the application process as it applies to a new applicant.

**(b)** The re-application shall be treated as an initial application by the Department.

## CHAPTER 12. Honoring of other states' license to carry a concealed handgun

### Rule 12.1  Effect

**(a)** Any person in possession of a valid license to carry a concealed handgun issued by another state shall be entitled to the privileges and subject to the restrictions prescribed by Arkansas concealed handgun carry laws, federal laws, and these Rules in order to carry a concealed handgun in the State of Arkansas.

**(b)** Any Arkansas licensee who is present in a another state has the responsibility to determine if the Arkansas Concealed Handgun Carry License is honored in that state and any requirements that may be imposed by that state.

### Rule 12.2  Procedure for transfer of a license issued by another state to Arkansas

**(a)** Any person who becomes a resident of Arkansas and who has a valid license to carry a concealed handgun issued by a reciprocal another state may apply to transfer his or her license to Arkansas by submitting the following packet to the Department:

    (1)  A properly completed Department transfer application form;

    (2)  The person's current original out of state license (if the concealed handgun carry license is contained on the driver's license of that state, then other suitable documentation as outlined by the Department will be required);

    (3)  Two (2) properly completed, classifiable and legible fingerprint cards;

    (4)  A nonrefundable license fee as set by law; and

    (5)  Any fee charged by a state or federal agency for a criminal history check.

**(b)** Any license is valid for a period of five (5) years from the date of issuance and binds the holder to comply with all Arkansas laws and Rules regarding the carrying of the concealed handgun.

**(c)** The minimum Arkansas residency requirement of ninety (90) days does not apply to applicants for a transfer of a license to carry a concealed handgun from another state.

## CHAPTER 13.  Training Requirement for Concealed Handgun Carry License

### Rule 13.0  Training requirements upon initial application

**(a)** A person shall, prior to submitting an initial application for a concealed handgun carry license, successfully complete an approved firearm safety training program. The training must be conducted and attested to by an approved registered Firearms Safety Training Instructor as defined in these Rules.

**(b)** The required training for an initial license may be completed at any time within six (6) months prior to the Department's receipt of a properly completed application packet.

**(c)** The applicant must successfully demonstrate proficiency with the use of a handgun on the firing range by "live fire".

**(d)** Instructors may not provide their own training certification for their own Arkansas concealed handgun carry license initial application.

**(e)** A valid, current firearm safety training instructor registration issued by the Department may be substituted as the training requirement for an initial concealed handgun carry license.

**Rule 13.1  Training requirements upon renewal of license**
**(a)** The required training as established by the Department for renewal shall be completed at any time within twelve (12) months prior to the expiration of the license. Timely renewal is determined by the Department's receipt date of the completed renewal application packet.
**(b)** Instructors may not provide their own training certification for their own Arkansas concealed handgun carry license renewal application.
**(c)** A valid, current firearms safety training instructor registration issued by the Department may be substituted as the training requirement for concealed handgun carry license renewal.

**Rule 13.2 Substitution of live-fire training - Active Duty Military**
Any active duty military personnel may substitute the following documentation, in a properly completed application packet, in place of the "live-fire" training requirement:
**(a)** A dated letter personally signed by a commanding officer or his or her designee stating that the service member:
    (1)  Is an active duty member of the armed forces of the United States;
    (2)  Is of good character and sound judgment;
    (3)  Is not disqualified by state or federal law from possessing a firearm;
    (4)  Has met the military qualification requirements for issuance and operation of a handgun within one (1) year of the application date; and
    (5)  Has been a resident of the State of Arkansas for the ninety (90) day period preceding the application date according to the military and pay records of the service member;
**(b)** A copy of the service member's military range qualification score card signed and dated within one (1) year of the application date by a range officer or non-commissioned officer in charge of the range;
**(c)** A copy of the face or photograph side of a current United States Uniformed Services military identification card for the service member as a member of the armed forces; and
**(d)** A copy of the active duty orders.

**Rule 13.3  Substitution of live-fire training - National Guard or a reserve component of the Armed Forces of the United States**
Any current member of the National Guard or a reserve component of the armed forces of the United States may substitute the following documentation in place of the "live fire" training requirement in the properly completed concealed handgun carry license application packet:
**(a)** A dated letter personally signed by a commanding officer or his or her designee stating that the service member:
    (1)  Is a current member of the National Guard or a reserve component of the armed forces of the United States;
    (2)  Is of good character and sound judgment;
    (3)  Is not disqualified by state or federal law from possessing a firearm;
    (4)  Has met the military qualification requirements for issuance and operation of a handgun within one (1) year of the application date; and
    (5)  Has been a resident of the State of Arkansas for the ninety (90) day period preceding the application date according to the military and pay records of the member;
**(b)** a copy of the face or photograph side of a United States Uniformed Services military identification card; and
**(c)** a copy of the service member's military range qualification scorecard signed and dated within one (1) year of the application date by a range officer or non-commissioned officer in charge of the range.

**CHAPTER 14. Firearms Safety Training Instructor**

**Rule 14.0  Purpose**
**(a)** One of the main purposes of the Firearms Safety Training Instructor is to train and evaluate the level of competence of a prospective applicant or licensee to ensure that the individual meets a basic level of knowledge, understanding, and practical operation for safe handling of a handgun**.**
**(b)** Instructors shall not certify the successful completion of the training requirements of a prospective applicant or licensee unless the individual successfully meets the required standards of proficiency.
**(c)** The instructor may, at the instructor's discretion, refuse to instruct or refuse to provide firearms course completion certification for any individual if, in the opinion of the instructor, that individual is incapable of successfully completing the required standards of training.

**Rule 14.1  Maintenance of Records**
**(a)** Instructors shall maintain all training records of every individual they have instructed for the purpose of obtaining an Arkansas concealed handgun carry license for a period of not less than five (5) years from the date of training.
**(b)** The Department shall have audit privileges of the training records of all Firearms Safety Training Instructors.
**(c)** A registered Firearm Safety Training Instructor shall be present in the instruction area during any guest instructor's period to verify that the subject matter was properly covered.

**Rule 14.2  Application for approval of registration**
**(a)** The burden shall be on the Firearms Safety Training Instructor applicant for registration to bring himself or herself within the Department requirements as set out below.  The applicant for registration is required to:
    (1) meet the qualification requirements set forth in Arkansas law for a person to be licensed to carry a concealed handgun; and
    (2) successfully complete the examination administered by the Department. The examination shall consist of the provisions of ACA §§5-73-301 *et seq.* and ACA §5-73-402, federal firearms laws, and these Rules; and
    (3) hold a firearms instructor training certificate from a department recognized instruction course; and
    (4) submit, a:
        (A) properly completed registration application,
        (B) the background check fees required for state and national background checks, and
        (C) one (1) set of legible, classifiable fingerprints, however the requirement for fingerprints is waived if the applicant holds a current and valid Arkansas Concealed Handgun Carry License.
**(b)** Department recognized firearms instructor training certificates include:
    (1) firearm instructor's certificate issued by the Arkansas Law Enforcement Standards and Training Commission; or
    (2) Completion of a Certified Pistol Instructor - Basic Pistol Shooting Course that is recognized by the Department; and completion of a Range Officer Safety Course as a Certified Chief Range Safety Officer Instructor that is recognized by the Department; or
    (3) firearm instructor's certification issued by a federal law enforcement agency; or
    (4) a valid instructor registration issued by the Department to an instructor that has taught, as the primary instructor, the concealed handgun carry license firearm safety training course at least three (3) times within the previous calendar year; with a

minimum teaching of one (1) new application class and one (1) renewal application class.

**(c)** The Director may require applicants for registration as instructors to demonstrate their qualifications by examination. The examinations are given in Little Rock at the Arkansas State Police Headquarters and only with prior approval.

**(d)** A person may apply to be an instructor on a form of such size and design as prescribed by the Director.

**(e)** The Director may, at his or her discretion, approve an application for registration for a person who fails to meet the qualifications as outlined in this Rule, if it is determined that applicant is qualified by experience, education, etc.

**(f)** Approved applicants for registration shall be assigned a Firearm Safety Training Instructor registration number by the Department.

**(g)** Instructors are not required to obtain an Arkansas concealed handgun carry license, although it is recommended.

**(h)** A valid, current registration as listed in subsection (b) above may be substituted as the training requirement for the concealed handgun carry licensing of the registered instructor.

**(i)** The Director shall make and issue a written decision within sixty (60) calendar days after the Department receipt date of all necessary requested information from the applicant for Firearms Safety Training Instructor registration.

**(j)** In the event the applicant is denied, the Director shall promptly notify the applicant of his or her decision in writing, by certified mail, return receipt requested, stating the reason for the denial.

## CHAPTER 15. Training course requirements to obtain and maintain registration as a Firearms Safety Training Instructor

### Rule 15.0 Instructor Training of Applicants

**(a)** The required minimum standards for the firearm safety training course for applicants for an initial concealed handgun carry license or renewal shall be a course of instruction developed, prescribed, and acceptable to the Director and shall include utilizing "LIVE" ammunition and firing; and

**(b)** The applicant must successfully demonstrate proficiency with the use of a handgun on the firing range; and

**(c)** The Director shall not accept the training certificate of an applicant if the instructor is not currently registered with the Department.

### Rule 15.1 Requirements for administration of firearms safety training instruction

**(a)** An instructor shall at all times legally operate in accordance with all Federal, State, County and City laws and ordinances.

**(b)** If the instructor ceases to be an instructor under these Rules for any reason whatsoever, the Director shall be notified, in writing, of the cessation within five (5) calendar days and, if requested, provide all records to the Director.

**(c)** An instructor, authorized to conduct a training course required by these Rules, shall check the application of a student for completeness, accuracy, and legibility. This requirement does not apply if the student has submitted an electronic application to the Department.

**(d)** As stated above, an instructor is not required to hold a valid concealed handgun carry license to be registered as a Firearms Safety Training Instructor; however, the instructor must continually be able to meet the requirements for a valid Arkansas concealed handgun carry license. The registration to train students under these Rules may be suspended or revoked for instructors who subsequently become ineligible to hold a valid Arkansas concealed handgun carry license.

## Rule 15.2  Instructor Change of Address
An instructor shall notify the Department in writing within thirty (30) calendar days of any change in his or her name or address, electronic mail address (if any), and telephone number shown on his or her application.

## Rule 15.3  Instructor – Other requirements
**(a)** Instructors must include the registration number assigned to them by the Director on all matters of advertising for services as a Firearms Safety Training Instructor registered with the Department.
**(b)** Instructors may not conduct any business under the provisions of Arkansas law and these Rules under a name other than what is shown on his or her current registration as an instructor on file with the Department.
**(c)** An instructor shall at all times maintain on file with the Department a current and valid certification as outlined in these Rules.  Failure to comply with this requirement shall result in the automatic suspension or revocation of the registration.

## Rule 15.4  Death of a registered instructor
Upon death of a registered instructor, the registration shall be cancelled from the date of death.  Written notice of the death of a registered instructor should be filed as soon as possible on a form prescribed by the Department.

## Rule 15.5  Voluntary surrender of a registration
If a registrant voluntarily surrenders his or her registration in writing to the Department in the absence of suspension or revocation proceedings, the Department will accept the registration and cancel it.

## CHAPTER 16.  Denial, suspension or revocation of a Firearms Safety Training Instructor registration

## Rule 16.0  Grounds for denial, suspension, or revocation of a Firearms Safety Training Instructor registration
The Director has the authority to:
**(a)** deny the application for registration under provisions of state or federal laws and these Rules; or
**(b)** suspend or revoke the firearms safety training instructor registration of any instructor who has qualified under the provisions of Arkansas law and these Rules, if it is determined that the applicant or instructor has:
    (1) Practiced fraud, deceit, or misrepresentation;
    (2) Made a material misstatement in the application for registration as a firearms safety training instructor under the provision of Arkansas law and these Rules;
    (3) Demonstrated incompetence or untrustworthiness in his/her actions;
    (4) Failed to comply with the provisions of Arkansas law and/or these Rules;
    (5) Committed any act which, if committed by a licensee, would subject the concealed handgun carry licensee to suspension or revocation;
    (6) Repeatedly failed to check the non-electronic application of trainees for completeness, accuracy, and legibility;
    (7) Not at all times legally operated in accordance with these Rules, and with all Federal, State, County, and City laws and ordinances;
    (8) Not at all times maintained a current and valid Firearms Safety Training Instructor registration on file with the Department as required in these Rules; or
    (9) Been the subject of a request on file with the Department from the Office of Child Support Enforcement to suspend the registration.

**Rule 16.1  Appeal of the suspension or revocation of a Firearms Safety Training Instructor registration**

**(a)**  Upon the suspension or revocation of registration of a Firearm Safety Training Instructor, the affected party shall be afforded the opportunity for an administrative hearing.  The affected party shall be sent notice, certified mail, return receipt requested, and be advised in writing of his or her appeal rights.

**(b)**  For suspension or revocation of an existing Firearms Safety Training Instructor registration, the burden of proof in administrative proceedings shall be on the Department.


## CHAPTER 17.  Effective Date of these Rules

### Rule 17.0  Effective date

These Rules shall be effective on and after Thursday, January 1, 2009.  *(Certain revisions were effective November 2013)*

*****************************************************************



# MEMORANDUM

**TO:**    GREG DOWNS
            CORA GENTRY

**FROM:**  TFC  KURT ZIEGENHORN #501

**RE:**    JAMES TANNER

**DATE:**  DECEMBER 3, 2014

On November 29, 2014, approximately 10:50 P.M., while off duty shopping at Wal-Mart in Searcy, AR, with my family, with my pistol covered and my badge visible(clipped on the lower part of my pants pocket below my weapon. I came into contact with a subject later identified as James Tanner. The subject was wearing a tactical holster with a firearm strapped to his right thigh (between waist and knee) in an open carry position. I first assumed he was law enforcement but did not notice a badge or any identification. As he approached the area I was standing. I curiously asked the subject what law enforcement department he was with, and the subject stated in a condescending manor that he was with no one. I then identified myself as Trooper Ziegenhorn with the Arkansas State Police and asked him for his name and ID. He moved his right hand downward in the area of his pistol. I then reached and grabbed his right wrist and elbow and again identified myself. He became very defensive and agitated and stated he did not have to tell me anything. I informed him that he could not open carry and suggested that he needed to leave. He stated he was leaving and I allowed him to walk out in front of me to the front of the store.

Before I could call for assistance, he said he was calling the police, which was fine, as it left my hands free. As we approached the front, he found a Manager, which I presented my State ID and the manager stated that he did not want Mr. Tanner in the store. Mr. Tanner's demeanor was very nervous and confrontational.

000074

EXHIBIT
B

Once outside we encountered Officers with Searcy Police Department (Searcy PD report #2) attached. They performed an ID check and found that Mr. Tanner did not have any current warrants and had a valid CHCL permit. The Searcy officers told Mr. Tanner to leave and to not come back wearing a weapon.

The Searcy officers informed me that this was not the first encounter with Mr. Tanner (Searcy PD report #1).

An affidavit for arrest has been signed by Searcy Prosecutor Buck Gibson for 5-73-120 and 5-54-102 and sent to White County Judge for Warrant.

I strongly believe that Mr. Tanner's neglect of CHCL rules and the Laws of the state of Arkansas are just cause to Suspend or Revoke his CHCL License.


Included 5 attachments

# THE DISTRICT COURT OF WHITE COUNTY, ARKANSAS

## AFFIDAVIT OF ARREST FOR THE FOLLOWING PERSON

| JAMES A. TANNER | W/M | 2/12 1987 |
|---|---|---|
| Defendant's Name | Race/Sex | Defendant's Birthdate |

| 815 WEST CHERRY | SEARCY, AR |
|---|---|
| Defendant's Address | City, State |

Pursuant to Rule 7.1 of the Arkansas Rules of Criminal procedure, the undersigned affiant being duly sworn, deposes and says that there is reason to believe that the above-named person has committed the offense of 5-73-120; 5-54-102, against the peace and dignity of the State of Arkansas.

① obstruction-
② carrying a prohibited weapon

## FACTS CONSTITUTING PROBABLE CAUSE

On November 2*, 2014, approximately 10:50 P.M., inside the Wal-Mart at 3509 E Race in Searcy, AR, I came into contact with a subject later identified as James Tanner. Subject was wearing a tactical holster with a firearm strapped to his right thigh in an open carry position. I asked the subject what law enforcement department he was with, and the subject stated that he was with no one. I identified myself as Trooper Ziegenhorn with the Arkansas State Police and asked him for his name and ID. He refused and said that he didn't have to. In a 9-1-1 recording, Mr. Tanner confirmed that I identified myself as a State Trooper. Subject was followed to the front door where we then met with the Searcy P.D. Officers Jason McGlawn and Todd Wells.

I swear that the allegations contained are the truth, the whole truth and nothing but the truth.

| (870) 633-1454 | Kurt Ziegenhorn |
|---|---|
| Affiant's Phone | Affiant |

256 Woodruff 252, McCrory, AR 72101
Affiant's Address

STATE OF ARKANSAS
COUNTY OF WOODRUFF

Subscribed and sworn to before me this 3rd day of December, 2014.

Leah Scott
Notary Public

july 7, 20

EXHIBIT
C

Agency Case Number

000076

Bush Aquest
① 250-
② 500-

# Warrant of Arrest

Issued #: 15-00...

## Affidavit

Tanner, James A

City of Searcy
VS.

Tanner, James A.
816 W Cherry
Searcy, AR 72143

SSN:
DL#: 921876373        DOB: 02/12/1987
Height: 5'11"      Weight: 140 lbs.
Race: White
Sex: Male        Hair: Blond
Eyes: Hazel
Bond: $250.00
Bond Type: Professional Via Agency

The State of Arkansas, to any Sheriff, Constable, Coroner, or Policeman in the state or any other Law Enforcement
Officer in the United States:

IT APPEARING, based on my personal examination and evaluation of sworn affidavit(s) that there is reasonable
ground for believing that

Tanner, James A

has committed the offense(s) listed below in the County of White State of Arkansas, and you are therefore
commanded forthwith to arrest him/her and deliver him/her to the proper office to bring, or to be brought before me to
be dealt with according to law.

| # | Statute/Code | Description |
|---|---|---|
| 1 | 5-54-102(4) | OBSTRUCTING GOVERNMENTAL OPS; CLASS "C" MISD |

Witness my hand as District Court Judge, Searcy District Court on ___1-16-15___

_____
District Court Judge, Searcy District Court

STATE OF ARKANSAS
COUNTY OF WHITE

I have this ____ day of
the within by _____, 2015, duly served

Officer Name _____
Court Date Given ____ day of
Time: 10:00 A.M. ____, 2015.

**Notes:**
Affidavit warrant. Obstruction.
Total $250 paper bond.

Agency
Affidavit #

Date:

Signature

Date Printed: Thursday, January 15, 2015

000077

EXHIBIT
Lasco







## State of Arkansas

# ARKANSAS STATE POLICE

1 State Police Plaza Drive    Little Rock, Arkansas 72209-4822    www.asp.arkansas.gov

*"SERVING WITH PRIDE AND DISTINCTION SINCE 1935"*

**Mike Beebe**
*Governor*

**Stan Witt**
*Director*

**ARKANSAS
STATE POLICE
COMMISSION**

Daniel "Woody" Futrell
Chairman
*Nashville*

Wallace Fowler
Vice-Chairman
*Jonesboro*

Frank Guinn, Jr
Secretary
*Paragould*

Dr. Lewis Shepherd
*Arkadelphia*

John Allison
*Conway*

Bob Burns
*Little Rock*

Jane Dunlap Christenson
*Harrison*

CERTIFIED MAIL RETURN RECEIPT REQUESTED

December 10, 2014

Mr. James A. Tanner
815 West Cherry Avenue
Searcy, AR 72143

Dear Mr. Tanner,

This is to notify you that your Arkansas concealed handgun
carry license (CHCL) is REVOKED for the following reason(s):

*Arkansas Code § 5-73-302.  Authority to issue license.*
*(a) The Director of the Department of Arkansas State Police may*
*issue a license to carry a concealed handgun to a person qualified*
*as provided in this subchapter....*

*Arkansas Code § 5-73-301.  Definitions.*
*As used in this subchapter: ... (2) "Concealed" means to cover from*
*observation so as to prevent public view;...*

*Arkansas Code § 5-73-308.  License – Issuance or denial.*
*(a) (1) (A) The Director of the Department of Arkansas State Police*
*may deny a license if within the preceding five (5) years the*
*applicant has been found guilty of one (1) or more crimes of*
*violence constituting a misdemeanor or for the offense of carrying*
*a weapon....*

*Arkansas Code § 5-73-312.  Revocation.  (a) (1) A license to carry*
*a concealed handgun issued under this subchapter shall be*
*revoked if the licensee becomes ineligible under the criteria set*
*forth in § 5-73-308(a) or § 5-73-309.  (2) (A) Any law enforcement*
*officer making an arrest of a licensee for a violation of this*
*subchapter or any other statutory violation that requires*
*revocation of a license to carry a concealed handgun shall*
*confiscate the license and forward it to the Director of the*
*Department of Arkansas State Police.  (B) The license shall be*
*held until a determination of the charge is finalized, with the*
*appropriate disposition of the license after the determination.*
*(b) When the Department of Arkansas State Police receives*
*notification from any law enforcement agency or court that a*
*licensee has been found guilty or has pleaded guilty or nolo*



EXHIBIT
E

000078

*12/10/2014*

*contendere to any crime involving the use of a weapon, the license issued under this subchapter is immediately revoked....*

*ASP CHCL Rule 7.0  Failure to comply with concealed handgun carry license restrictions*
*Failure to comply with these Rules is a ground(s) for suspension and/or revocation of the Arkansas concealed handgun carry license.*

*ASP CHCL Rule 3.2  Contact with law enforcement  (a)  While in possession of a concealed handgun, the licensee shall present the original license for inspection, along with an official form of photo identification, upon request for identification by any law enforcement officer. (b)  In any official contact with law enforcement, if the licensee IS in possession of a handgun, when the officer asks the licensee for identification (driver's license, or personal information,*
*such as name and date of birth), the licensee shall notify the officer that he or she holds a concealed handgun carry license and that he or she has a handgun in his or her possession....*

On November 29, 2014, you came in contact with Trooper Kurt Ziegenhorn in Wal-Mart on East Race Street in Searcy.  Trooper Ziegenhorn observed that your handgun was not concealed as required by Arkansas CHCL laws and rules.  Trooper Ziegenhorn identified himself as a State Trooper and asked you for identification.  At that time, you are required by CHCL rules and law to provide your concealed handgun carry license to the Trooper, which you refused to do.  These are violations of Arkansas CHCL rules and law and your license is revoked.

We have received your CHCL and have placed it in our file.

Pursuant to ASP CHCL Rules, you may request an administrative hearing for review of whether the department's revocation of the license is in compliance with the rules and law.  Such request and your reason(s) must be made in writing to this office within thirty (30) days of receipt of this letter.

Sincerely,


Cora Gentry, Lieutenant
Concealed Handgun Carry Licensing
Cora.gentry@asp.arkansas.gov
1 State Police Plaza Drive
Little Rock, AR 72209

000079

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

# OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total F | |

Postmark
Here

7014 1200 0002 0901 9459

Sent To    Mr. James A. Tanner
Street, A   815 West Cherry Avenue
or PO Bu
City, Sta   Searcy, AR 72143

PS Form 3800, August 2006                    See Reverse for Instructions

000080

**Cora Gentry**

**From:** Drew Tanner [mailto:drwtanner@gmail.com]
**Sent:** Monday, December 22, 2014 6:06 PM
**To:** Cora Gentry
**Subject:** CHCL Review

Here is my request in writing for an administrative hearing for review of whether the revocation of my CHCL is within rules and law.



December 22, 2014

Lieutenant Cora Gentry
Concealed Handgun Carry Licensing
1 State Police Plaza Drive
Little Rock, AR 72209

Dear Lt. Gentry,

    I, James A. Tanner, request an administrative hearing for review of whether the department's revocation of my Concealed Handgun Carry License is in compliance with the rules and law on the grounds that I did not break any rules or laws, and the trooper who confiscated my license acted in a manner unbecoming of the Arkansas State Police.

    On the original date (Nov. 29), I was carrying my weapon in a perfectly legal manner pursuant to Arkansas law when a person in civilian clothes attempted to stop me and ask for identification. I requested to see his badge and he declined while physically grabbing me by the arm. I called 911, and minutes later when the person did show me his badge, I identified myself to him as requested by 911 dispatch. I also showed identification to the Searcy Police officers who arrived on scene because of the 911 call. I was not arrested and not issued a citation for any crime.

    Several days later (Dec. 3), I returned to Wal-Mart and this same trooper accosted me shortly after entering the store. I was not carrying my weapon at this time. The trooper recognized me and called me by my name and demanded that I give him my identification. I was not carrying at the time and not breaking any laws, so I was not required to produce my identification nor my CHCL as per the regulations. The trooper then placed me in handcuffs and took my wallet out of my pants and then took my CHCL out of my wallet. Again, I was not arrested and not issued a citation for any crime.

Sincerely,

James A. Tanner

000082

**NARRATIVE**

226:11/30/2014 00:51 - On Saturday, November 29, 2014 around 10:55pm, I was dispatched to Wal-Mart Supercenter at 3509 East Race Street regarding a disturbance. Upon arrival I met with James Tanner and Kurt Ziegenhorn.

Ziegenhorn identified himself as an Arkansas State Trooper (which was confirmed). Ziegenhorn was wearing a badge on the right side of his hip near his weapon. Ziegenhorn told me he observed Tanner wearing a holstered handgun on his right side and confronted him by identifying himself as an Arkansas State Trooper and attempted to identify Tanner. Ziegenhorn stated Tanner refused to comply.

Tanner told me this is when he called us because he didn't know if Ziegenhorn was actually a State Trooper.

Ziegenhorn told us when management found out Tanner was carrying an open view firearm they no longer wanted him on their property. Tanner was told and complied to leave the property per Wal-Mart management. No further action taken.

| Reporting/Investigating Officer: |
|---|
| PTL JASON A MCGLAWN |
| ~~Su~~pervisor Approving: |
| ~~S~~GT SCOTT A THOMAS |
| Supervisor 2 Approving: |

Appellant's
A

## BEFORE THE DEPARTMENT OF THE ARKANSAS STATE POLICE

IN RE:                                                    JAMES ANDREW
TANNER

                                                         APPELLANT
                                                         CHCL No. 2015-16

## ORDER

On May 12, 2015, this matter came on for hearing before the undersigned hearing officer on James Andrew Tanner's appeal of the revocation of his Concealed Handgun Carry License (CHCL). The appeal hearing was conducted in accordance with Ark. Code Ann. §§ 25-15-201, *et seq.*, Ark. Code Ann. §§ 5-73-301, *et seq.*, and the Department of Arkansas State Police Arkansas Concealed Handgun Carry License Rules (Rules), promulgated under Ark. Code Ann. § 5-73-317. Tanner was represented by counsel, Mr. Shane Ethridge; the Department of Arkansas State Police was represented by Mary Claire McLaurin.

## FINDINGS OF FACT

1.      Trooper Kurt Ziegenhorn testified regarding his encounter with James Andrew Tanner on November 29, 2014. On that date, Trooper Ziegenhorn noticed Tanner carrying a handgun openly on his person in a Wal-Mart located in Searcy, Arkansas, making no attempt at concealment. Trooper Ziegenhorn stated that he identified himself to Tanner as an officer with the Arkansas State Police and asked him for his identification. Tanner refused and attempted to leave the area. Tanner did not identify himself as a CHCL holder or inform the trooper that he had a handgun in his possession. Tanner contacted local police and at their direction he subsequently produced his identification. Tanner was later cited for Obstruction of

Governmental Operations under Ark. Code Ann. § 5-54-102(4) (Class C Misdemeanor) for refusing to identify himself to Trooper Ziegenhorn. The Searcy District Court found him guilty of violating § 5-54-102(4) following a June 16, 2015 bench trial and assessed him $250 in fines and court costs. Exhibit A.

2.     Mr. Tanner did not dispute Trooper Ziegenhorn's testimony to the following: Tanner was openly carrying a handgun in a public place; the Trooper identified himself as an officer with the Arkansas State Police; the Trooper requested that Tanner produce identification; Tanner refused to comply with the Trooper's request and attempted to leave the area; and Tanner did not produce his CHCL or inform the Trooper that he was carrying a handgun.

3.     Lieutenant Cora Gentry, Supervisor of the ASP CHCL Section, testified to her actions upon learning of the incident between Tanner and Trooper Ziegenhorn. Upon receipt of a Memorandum from the Trooper regarding this incident, Lt. Gentry notified Tanner that his CHCL was revoked pursuant to Rule 7.0, which states that "[f]ailure to comply with these Rules is ground(s) for suspension and/or revocation of the Arkansas concealed handgun carry license." Specifically, that Tanner violated Ark. Code Ann. § 5-73-301(2) and Rule 1.2(h) by not carrying his handgun concealed. Further, he failed to comply with Rule 3.2, which requires a licensee to identify themselves upon request by law enforcement when carrying a handgun and establishes the affirmative duty of the licensee to notify the officer that he or she holds a CHCL and the handgun is in his or her possession. Tanner requested this administrative hearing to appeal his CHCL revocation, and in his written request included statements demonstrating his

familiarity with the Rule and statutory requirements applicable when a licensee encounters a law enforcement officer while carrying a weapon.

4.     Tanner's counsel presented various arguments against revocation. First, he referred to Ark. Code Ann. § 5-73-315(a), which states that "[a]ny licensee possessing a valid license issued pursuant to this subchapter *may* carry a concealed handgun," and asserted that "may" indicates a licensee is not required to carry their weapon concealed. [Emphasis added]. Second, because Tanner was not arrested for carrying a weapon, counsel argued that he must not have been breaking any laws that could subject him to revocation of his CHCL. Third, he argued that Tanner did not believe that Trooper Ziegenhorn was a law enforcement officer when he requested Tanner's identification. Lastly, counsel asserted Tanner did not have to produce his CHCL because it was already obvious to Trooper Ziegenhorn that Tanner was carrying a handgun.

## CONCLUSIONS OF LAW

1.     Ark. Code Ann. § 5-73-302(a) authorizes "[t]he Director of the Department of Arkansas State Police [to] issue a license to carry a *concealed* handgun to a person qualified as provided in this subchapter." [Emphasis added]. Carrying "concealed" is defined by the statute as "to cover from observation so as to prevent public view," Ark. Code Ann. § 5-73-301(2). The Rules were promulgated pursuant to the Director's authority under Ark. Code Ann. § 5-73-317, §§ 12-8-104, *et seq.*, and §§ 25-15-201, *et seq.*, and "provide guidelines in conformity with Arkansas laws as to issuance and governance of applicants for new, renewal, or transfer licenses to carry a concealed handgun in the State of Arkansas." Rule 1.2(h)

also defines "concealed" as covering "from observation so as to prevent public view." Rule 7.0 authorizes the revocation of an Arkansas CHCL for failure to comply with the Rules.

2.    Nothing in Ark. Code Ann. §§ 5-73-301, *et seq.* or the Rules allows a licensee to openly carry a handgun. The argument that the use of the word "may" in Ark. Code Ann. § 5-73-315(a) implies that a licensee "may" carry concealed but is not required to, and "may" carry openly if he so chooses is without merit. An Arkansas CHCL *only* authorizes the holder to carry a *concealed* handgun. Accordingly, Tanner violated the CHCL Rules by openly carrying his weapon in a public place. The fact that Tanner was not arrested for carrying a weapon is also irrelevant. The Director has the authority to administratively review a licensee's actions to ensure compliance with the Rules, regardless of whether an arrest or conviction has occurred.

3.    Rule 3.2 governs "Contact with law enforcement" and provides as follows:

> (a) While in possession of a concealed handgun, the licensee shall present the original license for inspection, along with an official form of photo identification, upon request for identification by any law enforcement officer.
>
> (b) In any official contact with law enforcement, if the licensee *is* in possession of a handgun, when the officer asks the licensee for identification (driver's license, or personal information, such as name and date of birth), the licensee shall notify the officer that he or she holds a concealed handgun carry license and that he or she has a handgun in his or her possession.

Again, Rule 7.0 plainly states that "[f]ailure to comply with these Rules is ground(s) for suspension and/or revocation of the Arkansas concealed handgun carry license."

4.     Trooper Ziegenhorn testified that he presented his ASP badge and identification to Tanner when identifying himself as a law enforcement officer. Rule 3.2 does not include a provision to exempt a licensee from compliance with the Rules based on his or her alleged belief as to whether the person requesting a licensee's identification is a law enforcement officer. Moreover, there is nothing in subsection (b) of Rule 3.2 to indicate that the Rule is limited to circumstances where law enforcement officers are not already aware that the licensee is carrying a weapon. Rule 3.2(b) is unambiguous and mandatory—"if the licensee IS in possession of a handgun," they "shall notify the officer that he or she holds a concealed handgun carry license." (Emphasis original). Here, Tanner was in possession of a handgun when Trooper Ziegenhorn identified himself as a law enforcement officer and refused to comply with Rule 3.2.

## RECOMMENDATION

Based on the testimony and undisputed evidence at the hearing that Tanner was (1) openly carrying a handgun in a public place and (2) failed to provide his identification to a law enforcement officer upon request, he violated the Rules and the revocation of his CHCL was well-founded and not arbitrary. I recommend that the revocation of James Andrew Tanner's Concealed Handgun Carry License be

affirmed for the reasons explained above. Under the Rules Tanner is eligible to re-apply for a CHCL twenty-four months after the date of revocation.

Gregory C. Downs
Hearing Officer

## FINAL ADMINISTRATIVE DECISION

Upon review of the file, I concur with and adopt the Hearing Officer's findings of fact and conclusions of law. Accordingly, I accept the Hearing Officer's recommendation and the revocation of James Andrew Tanner's Concealed Handgun Carry License is affirmed.

Date:  06/19/15

Colonel William J. Bryant
Director, Arkansas State Police

Distribution:

LT Cora Gentry
Mary Claire McLaurin
Mr. James Andrew Tanner
c/o Mr. Shane Ethridge
214 Hobson Ave
Hot Springs, Arkansas 71913

000089

## SEARCY DISTRICT COURT
3/5/2015 10:00:00 AM

**2015-C-674   Tanner, James A**

| Individual Information | Citation Information | | | | | Account Information |
|---|---|---|---|---|---|---|
| 02/12/1987 | Ticket #  15-094762 | | | | | Total  -No Payment Plan- |
| | 1/20/2015 9:21 AM | Costs $100.00 | Add. Fees | $0.00 | | Due- |
| 815 W Cherry ST | W# -NA- | Fines $150.00 | Seatbelt | $0.00 | | Due Date |
| Searcy, AR 72143 | Bond -NA- | Fees $0.00 | Rec to Date $250.00 | | | |
| Officer: Denison, Jason | | Total $250.00 | Balance | $0.00 | | |

Comments: Affidavit warrant
Cash bond, $250, posted by Karen Cherry, same address.
SPD ck#2320, SPD rent #46883 $250
Atty –Shane Ethridge – Trial 06/16/15

**Violations**

| 5-54-10Z(4) | OBSTRUCTING GOVERNMENTAL OPS; CLASS "C" MISD | | | |
|---|---|---|---|---|
| OBSTRUCTING GOVERNMENTAL OPS; CLASS "C" MISD | | Court Cost | $100.00 | City of Searcy |
| OBSTRUCTING GOVERNMENTAL OPS; CLASS "C" MISD | | Fines | $150.00 | City of Searcy |

**Receipts**

| 3/3/2015 5:16:31 PM | C-41091 | Searcy Police Dept. Check | $250.00 |
|---|---|---|---|

**Dispositions**

**Court Date History**

| Court Time | Reason | Details | Set By |
|---|---|---|---|
| 3/5/2015 10:00:00 AM | Other | Inital Court Date | Wyatt, Candace |

_____ No Appearance – Bond Forfeited
_____ Issue Warrant - Cash Bond / Paper Bond
_____ Warrant Withdrawn

Jail Waived _____   Jail requested _____ by prosecutor
Defendant advised of right to counsel pursuant to ARCP 8.2 & 24.4 _____
Interpreter provided by the Court _____
Defendant found TO BE AN INDIGENT and attorney appointed: Mr./Mrs. _____
Defendant found NOT TO BE AN INDIGENT _____
Waiver of attorney on all charges signed by defendant knowingly and freely _____

PLEA: Guilty _____   Plea Not Guilty, set _____   Attorney _____

G- 250 *fine* XP after
30 days at
700/m unless
Appeal

_____
District Judge, Searcy District Court

Time Payments Authorized _____

000090

Refund $_____ Authorized _____
Check # _____ Date _____

Copyright Relativity Inc.© - RPS(Relativity Public Safety)    Printed: 3/4/2015 8:14:26 AM

**EXHIBIT**
A

216 of 245