**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**JAMES ANDREW TANNER**                                                **PLAINTIFF**


**v.**                          **Case No. 4:17-CV-00780-DPM**


**KURT ZIEGENHORN, ET AL.**                                      **DEFENDANTS**

### BRIEF IN SUPPORT OF MOTION TO DISMISS

The Amended Complaint filed by James A. Tanner ("Plaintiff") against the Arkansas

State Police ("ASP") Defendants, Colonel Bill Bryant, in his official capacity, William Sadler, in

his individual capacity, and Kurt Ziegenhorn, in his individual capacity, should be dismissed

from this lawsuit based on sovereign, qualified, and statutory immunity. Plaintiff filed suit on

November 27, 2017, (DE 1) and on March 12, 2019, he filed an Amended Complaint seeking

relief in the form of declaratory, injunctive, and money damages against ASP Defendants (DE

46). Plaintiff alleges ASP Defendants violated his federal and state constitutional rights as well

as other state law claims. For the reasons stated below, this Court should dismiss the Amended

Complaint as asserted against ASP Defendants in its entirety with prejudice under Fed. R. Civ. P.

12(b)(1) and 12(b)(6).

### DISCUSSION

"To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual

allegations to 'state a claim to relief that is plausible on its face.'" *Smithrud v. City of St. Paul*,

746 F.3d 391, 397 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547

(2007)). Sovereign immunity is a jurisdictional, threshold matter that is properly addressed under

Rule 12(b)(1). *See Lors v. Dean*, 746 F.3d 857, 861 (8th Cir. 2014). "[A]lthough a complaint

need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. 678. Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *Raynor*, 690 F.3d at 955.

Lastly, in adjudicating Rule 12(b) motions, courts are not strictly limited to the four corners of complaints. *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1120 (8th Cir. 2011). "While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally, consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matter of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned,' without converting the motion into one for summary judgment." *Miller v. Redwood Toxicoolgy Lab.*, 688 F.3d 928, 931, n.3 (8th Cir. 2012).

## I.     PLAINTIFF'S OFFICIAL CAPACITY CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT.

The Court should dismiss the official capacity claims asserted against Colonel Bryant in the Amended Complaint for failure to state sufficient facts to overcome his sovereign immunity from suit. The Eleventh Amendment to the United States Constitution absolutely bars a suit by

an individual brought against a state or its official and employees, regardless of the relief sought. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984). When suit is brought against state employees in their official capacities, the suit "is the functional equivalent of a suit against the State" and is barred by the Eleventh Amendment. *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (per curiam). Section 1983 claims against state actors in their official capacities are barred by the Eleventh Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65-66, 71 (1989); *see also Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997). The State of Arkansas and its agencies and officials have not consented to suit in federal court, *see Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991), and Congress did not abrogate the states' sovereign immunity when it enacted 42 U.S.C. § 1983. *Will*, 491 U.S. at 66.

Plaintiff seeks injunctive relief "compelling Defendants…and all person in concert or participation…to restore Plaintiffs' deleted posts; to permit Plaintiffs to participate in the forum discussions; and restraining Defendants…from banning not only Plaintiffs but any person for political speech made on ASP Facebook page and/or from removing protected speech made on ASP Facebook page." (DE 46, p. 27). The relief sought is an apparent attempted to invoke the *Ex Parte Young* fiction, which allows a narrow range of actions for prospective injunctive relief sought against public officials. *See Ex Parte Young*, 209 U.S. 123 (1908). While Defendant Colonel Bryant in his official capacity is potentially subject to the *Ex Parte Young* doctrine, it only permits suit seeking prospective relief against an ongoing violation of a federal right. *281 Care Committee v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011). Thus, to the extent that Plaintiff seeks an order compelling Defendants to restore Plaintiff's deleted posts, his claim does not fall within the bounds of an *Ex Parte Young* exception. As set forth below, Plaintiff also fails to state

a valid claim for prospective relief pertaining to Plaintiff's desire to post comments to ASP's Facebook page.

Plaintiff has failed to plead sufficient facts to prove a plausible violation of his constitutional rights by Colonel Bryant. Other than being the head of the Arkansas State Police, Plaintiff has failed to state how Colonel Bryant is involved in any of the claims. The law is well settled that a supervisor cannot be held liable on a theory of *respondeat superior* for his or her employee's allegedly unconstitutional actions. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997); *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994). A supervisor can be held liable only when personally involved in the constitutional violation or when the corrective inaction constitutes deliberate indifference toward the violation. *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993).

Plaintiff conclusively claims Colonel Bryant has acted deliberately indifferent because Plaintiff informed ASP employees that their actions were against his constitutional rights and Bryant has failed to take action once he was served with the complaint. (DE 46, pp. 5-6). However, as discussed, see *infra* II.A.1., the Amended Complaint does not allege sufficient facts to establish an ongoing violation of Plaintiff's federal rights for which prospective relief is sought. Consequently, Plaintiff has failed to state a claim against Colonel Bryant and the Amended Complaint does not state a claim for prospective injunctive relief against him in his official capacity as an exception to sovereign immunity. Therefore, Plaintiff's official capacity claims should be dismissed for lack of jurisdiction under the Eleventh Amendment.

## II.   THE INDIVIDUAL CAPACITY CLAIMS AGAINST ASP DEFENDANTS ARE BARRED BY QUALIFIED IMMUNITY.

Plaintiff's individual capacity claims against ASP Defendants are barred by the doctrine of qualified immunity. Government officials, including police officers, have qualified immunity

from liability in their individual capacity unless the alleged conduct violates a clearly established constitutional or statutory right of which a reasonable official or officer in their position would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The applicability of qualified immunity is a question of law for the Court. *Nelson v. County of Wright*, 162 F.3d 986, 989 (8th Cir. 1998). "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

When qualified immunity is raised as a defense in a § 1983 action, the Court generally first considers whether the facts alleged, taken in the light most favorable to the plaintiff, show that the officials' conduct violated a constitutional right. *Id*. at 201. If a constitutional violation can be made out on the facts alleged, then the Court considers whether the right was clearly established at the time of the conduct at issue. *Id*. For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citation and internal quotations omitted). In other words, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id*.

The Supreme Court has repeatedly cautioned lower courts that "clearly established law" should not be defined at a high level of generality." *Id*. at 552 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case." *Id*. (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In order to reject an official's qualified-immunity defense, the Court must "identify a case where an officer acting under similar circumstances as [the Defendants were] held to have

violated" the Constitution. *Id*; se*e also Kisela v. Hughes*, 138 S. Ct. 1148 (2018); *District of Columbia v. Wesby*, 138 S. Ct. 577 (2018); and *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).

As discussed in the sections that follow, Plaintiff's Amended Complaint fails to state facts to overcome ASP Defendants' qualified immunity from suit. This Court should dismiss this case with prejudice.

**A. The Amended Complaint does Not State a Violation of Plaintiff's First Amendment Rights.**

    1. <u>Plaintiff failed to state sufficient facts to show ASP employees violated Plaintiff's clearly established First Amendment rights</u>.

According to the Amended Complaint, Plaintiff claims ASP employees violated his First Amendment right when they deleted Plaintiff's comments and banned him from ASP's official Facebook page. (DE 46). Based on the facts that Plaintiff's comments have been deleted and he has been banned from ASP's official Facebook page as claimed, Plaintiff has failed to plead sufficient facts that show a violation of a clearly established constitutional right under the First Amendment. "[A]s an initial matter a speaker must seek access to public property or to private property dedicated to public use to evoke First Amendment concerns." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 801 (1985). "[P]ublicly owned or operated property does not become a 'public forum' simply because members of the public are permitted to come and go at will." *Int'l Soc'y for Krishna consciousness, Inc., v. Lee*, 505 U.S. 672, 686 (1992) (quoting *U.S. v. Grace*, 461 U.S. 171, 177 (1983)). "[W]here the application of forum analysis would lead almost inexorably to closing of the forum, it is obvious that forum analysis is out of place." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 479-80 (2009).

The government speech doctrine establishes that the government may advance its own speech without requiring viewpoint neutrality when the government itself is the speaker. *Id*. at

467; *Morgan v. Bevin*, 298 F.Supp.3d 1003, 1010-11 (E.D. Kent. 2018). Thus, the Free Speech Clause restricts government regulation of private speech but it does not regulate government speech. *Summum*, 555 U.S. at 467. Further, government speech is one category of speech that falls outside the domain of forum analysis. *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 135 S.Ct. 2239, 2250 (2015). When the government is speaking on its own behalf, "the First Amendment strictures that attend the various types of government-established forums do not apply." *Id.* Additionally, private involvement in the formulation of the speech in question does not preclude the conclusion that it is government speech. *Summum*, 555 U.S. at 469. In assessing whether speech constitutes government speech as opposed to private speech, the Supreme Court has considered at least three factors: (1) whether government has historically used the speech in question to convey state messages; (2) whether that speech is "often closely identified in the public mind" with the government; (3) the extent to which government "maintains direct control over the messages conveyed." *Walker*, 135 S.Ct. at 2247-48.

There is "no constitutional right as members of the public to a government audience for their policy views." *Minn. State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 286 (1984). "Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." *Id.* at 285; *see also Smith v. Ark. State Highway Emp., Local 1315*, 441 U.S. 463, 466 (1979) (holding, in part, "the First Amendment does not impose any affirmative obligation on the government to listen [or] to respond.").

Applying the factors established in *Walker* to ASP's official Facebook page and its Facebook page policy, it is clear that ASP utilized and continues to utilize its Facebook page to convey its message to its constituents and it maintains direct control over that message.

Plaintiff's Exhibit A to his original complaint shows ASP intended to convey a certain message to its constituents through its official Facebook page, that Plaintiff's comments were not the message ASP sought to convey, and ASP maintained direct control over its message. Further, ASP's Facebook page policy specifically states:

> The purpose of the Arkansas State Police Facebook page is to permit authorized employees of the Department to provide the public with information concerning Arkansas State Police's mission, goals, programs, activities, events, news, stories, photographs, and videos and to disseminate other information and material intended to increase the awareness of and embrace respect for the Arkansas State Police and its members and employees. Please note that this a purposefully controlled online site established for this limited purpose, NOT A PUBLIC FORUM. (DE 1, p. 16).

ASP's Facebook page policy further states:

> ALL COMMENTS submitted/posted to this page are actively monitored and reviewed by the Arkansas State Police. The Arkansas State Police reserve[s] the right to restrict, remove, or delete any posting/comment that is contrary and/or inconsistent with the purpose of the page or in violation of the applicable terms and conditions. The Arkansas State Police Facebook page is not appropriate for and is not intended to accommodate comments unrelated to the purpose of the page or particular postings authorized by the Department. (DE 1, p. 16).

Through its Facebook page ASP engages in government speech, which is a category of speech that falls outside the domain of forum analysis. *See Walker*, 135 S.Ct. at 2250. Accordingly, Plaintiff's First Amendment rights have not been violated and there is no ongoing violation.

2. <u>Plaintiff failed to state sufficient facts to show Defendant Ziegenhorn violated Plaintiff's First Amendment rights</u>.

Plaintiff has not alleged facts establishing that ASP Defendant Ziegenhorn retaliated against Plaintiff in violation of his clearly established First Amendment rights. Plaintiff specifically claims that Ziegenhorn violated Plaintiff's First Amendment rights when he detained, searched, and caused Plaintiff to be arrested in retaliation for Plaintiff filing a complaint with ASP against Ziegenhorn. (DE 46, p. 11, ¶ 71). To establish a First Amendment

retaliation claim, "a plaintiff must show (1) that he engaged in a protected activity, (2) that the defendant's actions caused an injury to the plaintiff[] that would chill a person of ordinary firmness from continuing to engage in the activity, and (3) that a causal connection exists between the retaliatory animus and the injury." *Scott v. Tempelmeyer*, 867 F.3d 1067, 1070 (8th Cir. 2017) (citing *Bernini v. City of St. Paul*, 665 F.3d 997, 1007 (8th Cir. 2012)).

Plaintiff failed to plead sufficient facts that would permit this Court to infer that Plaintiff is entitled to relief above the speculative level. First, Plaintiff alleges that he mailed the complaint in the following days of the incident on November 29, 2014; however, he also states that the complaint was never received by ASP. (DE 46, p. 12). Secondly, Plaintiff fails to allege that Ziegenhorn knew of the complaint that Plaintiff claims to have lodged with ASP. Lastly, Plaintiff alleges Ziegenhorn retaliated when he filed a request for an arrest warrant on December 3, 2014, and a warrant was executed by the Searcy Police on January 17, 2015. *Id*.

To retaliate against Plaintiff, Ziegenhorn would need prior knowledge of the complaint allegedly lodged against him. Ziegenhorn denies having knowledge of such a complaint on or before December 3, 2014. Consequently, the alleged facts are not sufficient to state a First Amendment retaliation claim against Ziegenhorn and, therefore, that claim should be dismissed.

## B. Plaintiff Failed to State a Violation of His Fourth and Second Amendment Rights against ASP Defendant Ziegenhorn

### 1. Plaintiff's Fourth and Second Amendment Claims are barred by *res judicata* and collateral estoppel.

Federal courts look at the substantive law of the forum state in applying *res judicata* and collateral estoppel. *Sparkman Learning Center v. Ark. Dep't of Human Servs.*, 775 F.3d 993, 998 (8th Cir. 2014). Arkansas law bars relitigation of a subsequent suit under claim preclusion when: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper

jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Jayel Corp. v. Cochran*, 366 Ark. 175, 178, 234 S.W.3d 278, 281 (2006). *Res judicata* bars relitigation of claims that were actually litigated in the first suit as well as claims that could have been litigated. *Id.* When a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* applies even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Id.* Moreover, strict privity in the application of *res judicata* is not required. *Parker v. Perry*, 355 Ark. 97, 104 (2003). In *Cochran*, the court held that the relationship to clients was analogous to that of a principal and an agent, and the attorney-client relationship satisfied the privity requirement of *res judicata*. *Cochran*, 366 Ark. at 178.

In Arkansas, collateral estoppel runs to issues as opposed to the full case and does not require mutual identity of parties. *State Office of Child Support Enforcement v. Willis*, 347 Ark. 6, 15, 59 S.W.3d 438, 444 (2001). If the following four elements are satisfied, a court's determination on an issue is conclusive in a subsequent proceeding: (1) the issue sought to be precluded must be the same that involved in the prior litigation; (2) that issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *Id.*

Plaintiff's Fourth Amendment claims relating to the November 29, 2014, incident are precluded under the doctrine of *res judicata* and collateral estoppel. Plaintiff has already had an opportunity to be heard regarding these claims. The incident between Plaintiff and ASP Defendant Ziegenhorn that occurred on November 29, 2014, led to the revocation of Plaintiff's Concealed Carry Handgun License ("CHCL"). (DE 33-4); *see James A. Tanner v. Ark. State Police*, No. 60CV-15-3197 (2016). Plaintiff appealed ASP's revocation of his CHCL and on

May 12, 2015, an administrative hearing was held to determine whether to uphold the revocation. (DE 33-4). ASP's revocation was upheld and Plaintiff subsequently appealed ASP's Order to the Pulaski County Circuit Court. *Id.* The Circuit Court affirmed ASP's determination to revoke Plaintiff's CHCL. *Id.* In addition, the Circuit Court specifically addressed whether ASP Defendant Ziegenhorn violated Plaintiff's Fourth Amendment rights under the United States Constitution and Article 2, Section 15 of the Arkansas Constitution. (DE 33-4, pp. 7-8). The Court found that Plaintiff's rights were not violated because ASP Defendant Ziegenhorn had reasonable suspicion to stop and detain Plaintiff on November 29, 2014. *Id.* Thus, these claims and issues are precluded under the doctrines of *res judicata* and collateral estoppel because the claims and issues have previously been litigated in a state court that had competent jurisdiction.

Furthermore, Plaintiff's Second Amendment claim and remaining Fourth Amendment claim as well as the corresponding state law constitutional claims are precluded under *res judicata*. As stated above, *res judicata* bars relitigation of claims that were actually litigated as well as claims that could have been litigated. *See Cochran*, 366 Ark. at 178. Under Arkansas law, Plaintiff had an opportunity to raise these claims at the CHCL administrative hearing. *See McQuay v. Ark. State Bd. of Architects*, 337 Ark. 339, 989 S.W.2d 499 (1999) (the court concluded that even constitutional arguments would not be considered on appeal if not raised at the agency level). "A party may challenge an administrative decision in state circuit court by contending that the decision prejudiced his substantive rights or that 'the administrative findings, inferences, conclusions or decisions are: (1) In violation of constitutional or statutory provisions…'" *Prince v. Ark. Bd. of Examiners in Psychology*, 380 F.3d 337, 340 (2004) (quoting Ark. Code Ann. § 25-15-212(h)). The Arkansas Supreme Court has held that it is well settled that to preserve arguments for appeal, even constitutional ones, an individual must obtain

a ruling below. *Ark. Contractors Licensing Bd. v. Pegasus Renov. Co.*, 347 Ark. 320, 64 S.W.3d 241 (2001). Therefore, those claims are now precluded from relitigation under *res judicata* since Plaintiff had an opportunity to raise them at his CHCL administrative hearing and subsequently reviewed through the appeals process provided in Ark. Code Ann. § 25-15-212.

2. <u>Plaintiff failed to state a violation of his Fourth Amendment Rights.</u>

Plaintiff has not alleged facts establishing that ASP Defendant Ziegenhorn's alleged conduct violated Plaintiff's clearly established Fourth Amendment rights. Plaintiff specifically alleges that Ziegenhorn's actions on November 29, 2014, December 3, 2014, and January 17, 2015, violated Plaintiff's Fourth Amendment rights. Plaintiff's allegations in regard to the January 17, 2015, fail to state a claim against Ziegenhorn for which his Fourth Amendment rights were violated because, according the facts plead, Plaintiff was arrested by Searcy Police officers that were executing a search warrant. (DE 46, pp. 10-14).

The Fourth Amendment provides protection for unreasonable search and seizures, and "its protections extend to brief investigatory stops of person or vehicles that fall should of traditional arrest." *U.S. v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)); *see also U.S. v. Tovar-Valdivia*, 193 F.3d 1025, 1028 (8th Cir. 1999). Under the Fourth Amendment, officers may conduct a *Terry* stop or "a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *see also Terry*, 392 U.S. 1. "A *Terry* stop that is supported by reasonable suspicion at the outset may nonetheless violate the Fourth Amendment if it is excessively intrusive in its scope or manner of execution." *El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 457 (8th Cir. 2011) (quoting *United States v. Johnson*, 592 F.3d 442, 451 (3rd Cir. 2010). To determine whether reasonable suspicion exists, courts must "look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective

basis for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273 (internal quotations and citations omitted).

The Eighth Circuit has held that "officers may use handcuffs as a reasonable precaution to protect the officers' safety and maintain the status quo during the *Terry* stop." *Id.* (citing *United States v. Martinez*, 462 F.3d 903, 907 (8th Cir. 2006). In order for an officer to use handcuffs during a *Terry* stop, the officer must "demonstrate that the facts available to the officer would warrant a man of reasonable caution in the belief that the action taken was appropriate." *Id.* (quoting *Lundstrom v. Romero*, 616 F.3d 1108, 1122 (10th Cir. 2010) (internal quotation marks and citation omitted)). More specifically, "the Fourth Amendment requires some reasonable belief that the suspect is armed and dangerous or that the restraints are necessary for some other legitimate purpose" for an officer to use handcuffs. *Id.* (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 836 (6th Cir. 2005)). "[T]o conduct a protective frisk under *Terry*, officers must [likewise] have specific articulable facts, which, along with rational inferences, support a reasonable suspicion a suspect is potentially armed and dangerous." *Id.* (citing *United States v. Binion*, 570 F.3d 1034, 1039 (8th Cir. 2009)).

"In the Fourth Amendment context, the Supreme Court has 'recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and [has] indicated that in such cases those officials…should not be held personally liable." *De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). "[E]ven if a court were to hold that the officer violated the Fourth Amendment by conducting a warrantless search, *Anderson* still operates to grant officers immunity for reasonable mistakes as to the legality of their actions." *Saucier v. Katz*, 533 U.S. 194, 206 (2001). The same analysis has been applied when "the Fourth

Amendment issue is whether an officer had reasonable suspicion justifying a warrantless investigative detention, rather than probable cause to arrest or search. *White*, 852 F.3d at 745.

Taken in light most favorable to the Plaintiff, the facts plead in the Complaint are not sufficient to show a violation of Plaintiff's Fourth Amendment rights. On November 29, 2014, Ziegenhorn had reasonable suspicion to conduct a *Terry* stop when he saw Plaintiff in public at the Searcy Wal-Mart openly carrying a pistol. Moreover, after Ziegenhorn identified himself as "State Police," Plaintiff panicked and fled from Ziegenhorn. (DE 46, pp. 11-12). Four days later, on December 3, 2014, Ziegenhorn again saw the same individual in the Searcy Wal-Mart. Based on the totality of the circumstances, it is reasonable to believe that the alleged actions taken by Ziegenhorn on December 3, 2014, as pled by the Plaintiff, were appropriate when he: placed Plaintiff in handcuffs for his own protection after Plaintiff initially refused to answer whether he was armed; requested Plaintiff for identification but Plaintiff refused to produce it; and escorted Plaintiff out of Wal-Mart to a patrol car.[1] (DE 2, p. 3). Furthermore, under the circumstances, it is reasonable to believe that Ziegenhorn thought he was obligated to confiscate Plaintiff's concealed handgun carry license. According to Code Ark. R. 130.00.8-8.1(a), "[a] law enforcement officer making an arrest of a licensee for a violation of Arkansas law and/or these Rules, or other statutory violation which could lead to revocation of a license to carry a concealed handgun, shall confiscate the license and forward it immediately to the Director." Accordingly, Plaintiff's Fourth Amendment claims against ASP Defendant Ziegenhorn should be dismissed with prejudice.

---

[1] In the Amended Complaint, Plaintiff contradicts his original statements regarding the December 3, 2014, incident, which appears to be an attempt to survive ASP Defendants' motion. Plaintiff now claims he politely answered Ziegenhorn's first request of whether Plaintiff was carrying a weapon. (DE 46, p. 13, ¶ 85).

3.   <u>Plaintiff Failed to State a Violation of His Second Amendment Rights</u>.

The Second Amendment of the United States Constitution states that "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II (Westlaw, current through P.L. 115-206). The Second Amendment protects an individual's right to possess a firearm for traditionally lawful purposes, such as self-defense within the home. *McDonald v. City of Chi.*, 561 U.S. 742, 744 (2010); *D.C. v. Heller*, 554 U.S. 570, 591 (2008) (holding that the Second Amendment elevates "the right of law-abiding, responsible citizens to use arms in defense of hearth and home."). The individual right to keep and bear arms is not unlimited; therefore, the Second Amendment does not protect the right of citizens to carry arms for any sort of confrontation. *Heller*, 554 U.S. at 595. Further, a limitation on an individual's ability to keep and bear arms is not an automatic violation of the Second Amendment. *See Id*.

Plaintiff has failed to plead sufficient facts to assert a plausible claim under the Second Amendment of the United States Constitution. Plaintiff makes a conclusory claim that his encounters with Trooper Ziegenhorn on November 29, 2014, and December 3, 2014, and being arrested by the Searcy Police on January 27, 2105, was in violation of his Second Amendment right to bear arms that caused a chilling effect. (DE 46, p. 10). While the chilling effect is a pervasive concept in First Amendment law, see e.g. *Laird v. Tatum*, 408 U.S. 1 (1972), the Second Amendment does not protect the right of citizens to carry arms for any sort of confrontation, just as the First Amendment does not protect the right of citizens to speak for any purpose. *Heller*, 554 U.S. at 595. In his Amended Complaint, Plaintiff has failed to claim or plead facts to show that Trooper Ziegenhorn's actions infringed on Plaintiff's Second Amendment right. Consequently, this Court should dismiss that claim with prejudice.

C.  **Plaintiff Failed to State a Conspiracy to Interfere with his Civil Rights Under 42 U.S. § 1985.**

Plaintiff failed to plead sufficient facts to state a claim of conspiracy to interfere with his civil rights under 42 U.S. § 1985. Plaintiff, in general, alleges ASP Defendant Sadler violated Plaintiff's constitutional rights by conspiring to interfere with his civil rights under 42 U.S. § 1985. (DE 46, pp. 14-15). Plaintiff, however, fails to specifically identify which section of § 1985 Sadler allegedly violated. It appears Plaintiff attempts to bring a claim under 42 U.S. § 1985(3).

"In order to prove the existence of a civil rights conspiracy under § 1985(3), the [plaintiff] must prove: (1) that the defendants did conspire; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the law; (3) that one or more of the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy; and (4) that another person was injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States." *Larson by Larson v. Miller*, 76 F.3d 1446, 1454 (1996). "Plaintiff must 'allege with particularity and specifically demonstrate with material facts that defendants reached an agreement;' they can satisfy this burden by pointing to some facts that would suggest Defendants 'reached an understanding to violate [their] rights.'" *Id.* Further, "[t]he 'purpose' element of the conspiracy requires that the plaintiff prove a class-based 'invidiously discriminatory animus.'" *Id.* (quoting *City of Omaha Employees Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989)).

Assuming Plaintiff has asserted sufficient facts to show ASP Defendant Sadler conspired, Sadler cannot be held liable under § 1985(3) unless he acted outside the scope of his employment. "According to the intracorporate conspiracy doctrine, a corporation cannot conspire

with itself through its agents when the acts of the agents are within the scope of their employment." *Bankhead v. Ark. Dept. of Human Servs.*, 264 F.Supp.2d 805, 827 (8th Cir. 2003) (rev'd on other grounds) (citing *Runs After v. U.S.*, 766 F.2d 347, 354 (8th Cir. 1985)). "The Eight Circuit has found that the intracorporate conspiracy doctrine is available to governmental entities." *Bankhead*, 264 F.Supp.2d at 827.

Separate from the speculative and conclusory allegations, Plaintiff has failed to allege that Sadler conspired with anyone, much less prove the existence of a civil rights conspiracy under § 1985(3). Additionally, Plaintiff's claim is barred by the intracorporate conspiracy doctrine because he has failed to plead sufficient facts to prove Sadler operated outside the scope of his employment. Thus, Plaintiff's alleged conspiracy claim against Sadler fails as a matter of law and should be dismissed.

**D. Plaintiff failed to state a cognizable claim under § 1983 for the denial of his FOIA requests.**

In Plaintiff's Amended Complaint, he frivolously claims he has a property and liberty interest in the documents requested through the FOIA. There is no generalized constitutional right to disclosure of government records. *Houchins v. KOED, Inc.*, 438 U.S. 1, 15 (1978) ("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control."). Moreover, an alleged violation of state law generally does not state a claim of constitutional dimension. *Missouri ex rel. Gore v. Whochner*, 620 F.2d 183, 185 (8th Cir. 1980). In general, a claim that state officials wrongfully denied requests for documents under a state's statutes is not cognizable under § 1983. *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1105 (8th Cir. 1992) (even a "bad faith violation of state law remains only a violation of state law").

Accordingly, Plaintiff has failed to state a cognizable claim regarding the FOIA, under section §

1983, against any ASP Defendant.

## III.   THE STATE-LAW CLAIMS REFERENCED IN THE COMPLAINT ARE BARRED BY STATUTORY IMMUNITY.

In addition to the federal constitutional claims, the complaint further asserts allegations

that ASP Defendants violated Plaintiff's state constitutional rights as well as other state law

claims. To the extent Plaintiff asserts any state-law claim against ASP Defendants, this Court

should reframe from exercising supplemental jurisdiction over those claims because Plaintiff has

failed to state a federal claim. Additionally, the state law claims are barred by statutory immunity

under Ark. Code Ann. § 19-10-305(a) and should be dismissed with prejudice.

A district court may decline to exercise supplemental jurisdiction over a state law claim

when the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §

1367(c)(3). The Eighth Circuit has found that a district court had not erred in declining to

exercise supplemental jurisdiction over state law claims after it granted summary judgment on

the plaintiff's federal claims. *Thomas v. Dickel*, 213 F.3d 1023, 1026 (8th Cir. 2000). "As we

pointed out…federal courts should 'exercise judicial restraint and avoid state law issues

whenever possible.'" *Id.* (quoting *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir.

1990)).

Should this Court exercise jurisdiction over Plaintiff's state law claims, the Arkansas

General Assembly has determined that "[o]fficers and employees of the State of Arkansas are

immune from liability and from suit…for damages for acts or omissions, other than malicious

acts or omissions, occurring within the course and scope of their employment." Ark. Code Ann.

§ 19-10-305(a). The Arkansas Supreme Court has consistently held that "the immunity provided

by section 19-10-305 is similar to that provided by the Supreme Court for federal civil-rights

claims." *Simons v. Marshall*, 369 Ark. 447, 452-53 (2007); *see also Smith v. BRT*, 363 Ark. 126, 130-31 (2005); *Fegans v. Norris*, 351 Ark. 200 (2002). Accordingly, a state official has statutory immunity from state-law claims "if his actions did not violate clearly established principles of law for which a reasonable person would have knowledge." *Id*. at 452.

"More specifically, section 19-10-305(a) provides state employees with statutory immunity from civil liability for non-malicious acts occurring within the course of their employment." *Id*. For a Plaintiff to overcome an assertion of statutory immunity by a state employee, she must allege sufficient facts in her complaint to support a claim of malicious conduct. *E.g., Fuqua v. Flowers*, 341 Ark. 901, 905 (2000). The Arkansas Supreme Court has defined malice as "an intent and disposition to do a wrongful act greatly injurious to another[,]" and "the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent… A conscious violation of the law…which operates to the prejudice of another person. A condition of the mind showing a heart…fatally bent on mischief." *Id*. at 905-06 (citations and internal quotation marks omitted); *see also Simons*, 369 Ark. 447, 452-53 (2007). "[A] bare allegation of willful and wanton conduct will not suffice to prove malice." *Simons*, 369 Ark. at 453 (citation omitted).

In *Simons*, the plaintiff alleged that her rights were violated by an ASP trooper's use of excessive force, excessive groping, and assault and battery. *Id*. In pleading facts to support her claim, the plaintiff alleged that the defendant "grabbed and groped on" her breast and genitals in a sexual manner and then said "Don't you know I'm a man with a gun" when she retaliated and requested that he stop groping her. *Id*. at 454. The Supreme Court affirmed the dismissal of the complaint because "the conclusory facts" set forth did not "demonstrate either malice or a conscious violation of the law." *Id*. at 454.

This Court should follow *Simons* and dismiss any state-law claims in the Amended Complaint with prejudice. Plaintiff fails to allege facts sufficient to demonstrate Sadler and Ziegenhorn consciously violated the law or acted with malice towards him. Additionally, the allegations contain nothing but Plaintiff's speculations and conclusions about Sadler and Ziegenhorn's alleged conduct. Because the Amended Complaint failed to state facts indicating that ASP Defendants consciously violated the law and acted with malice, they are immune from any state-law claims asserted in Plaintiff's Amended Complaint.

## CONCLUSION

Plaintiff's claims against ASP Defendants Colonel Bryant, William Sadler, and Kurt Ziegenhorn are barred by sovereign, qualified, and statutory immunity. The Court should dismiss the Amended Complaint as asserted against ASP Defendants in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully Submitted,

LESLIE RUTLEDGE
Attorney General

By: *Reid P. Adkins*
    Reid P. Adkins (2015216)
    Assistant Attorney General
    323 Center Street, Suite 200
    Little Rock, Arkansas  72201
    Tel:  (501) 682-1080
    Fax: (501) 682-2591
    reid.adkins@ArkansasAG.gov

    William C. Bird III (2005149)
    Assistant Attorney General
    323 Center Street, Suite 200
    Little Rock, Arkansas  72201
    Tel:  (501) 682-1317
    Fax: (501) 682-2591
    william.bird@ArkansasAG.gov

*Attorneys for ASP Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I, Reid P. Adkins, hereby certify that on March 26, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of the filing to any participants.

*Reid P. Adkins*
Reid P. Adkins
