IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

CENTRAL DIVISION

| | | |
|---|---|---|
| JAMES ANDREW TANNER | | PLAINTIFF |
| | v. 4:17-cv-780-DPM | |
| KURT ZIEGENHORN in his individual capacity; and BILL BRYANT, Colonel, in his official capacity as head of the Arkansas State Police | | DEFENDANTS |

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Tanner brings this Motion for Partial Summary Judgment under rule 56 of the FRCP. Tanner asserts that there are no genuine issues of material facts that would necessitate a trial on the issues for counts 1-14 (state and federal free speech rights violations) and counts 15 and 16 (right to be free from unreasonable searches and seizures violations).

1. Plaintiff Tanner had 6 comments deleted from the Arkansas State Police Facebook page by a state employee acting under color of law. Doc 60, PBSUMF, Exhibit 8.

2. Because of Tanner's comments, he was blocked from participating in the Arkansas State Police Facebook page, the interactive section of which was a type of public forum. Id.

3. Tanner seeks a declaratory judgment that his comments were illegally deleted and that he was illegally blocked. Doc. 61.  Tanner seeks injunctive relief in the form of the restoration of his comments and the unblocking of his participation in the ASP page. Id.

4. The State may not exclude speech where its distinction is not "reasonable in light of the purpose served by the forum… nor may it discriminate against speech on the basis of its viewpoint." Rosenberger v. Rector & Visitors of Univ. of Virginia, 515 U.S. 819, 829, 115 S. Ct. 2510, 2517, 132 L. Ed. 2d 700 (1995).  ASP deleted all of Tanner's comments because they claimed the comments contained abuse and/or profanity.  Exhibit 6, pg. 1, Number 9; PBSUMF 3; Exhibit 5, pg. 1, lines 5-10.

5.  In one comment, Tanner called out an officer for covering up the civil rights abuses of another officer. Exhibit 1, pg. 3.  In another comment, Tanner accused a police officer of the crime of filing a false police report. Exhibit 1, pg. 4.  In four other comments Tanner described Trooper Ziegenhorn. In order, Tanner used the words: douche, fascist pig, and douchebag. Exhibit 1, pg. 5-8.  Tanner used these different terms in different comments, only after the comment that previously used each term was deleted. Exhibit 1, pg. 5-8.

6.  These comments happened over a period of 6 months leading up to Tanner being blocked from the ASP Facebook page. Exhibit 8. None of these comments were abusive or profane.

7.  The following limits on constitutional government regulation of speech apply: "[t]he government may enforce a content-neutral time, place, and manner restriction only if the restriction is necessary to serve a significant government interest and is narrowly drawn to achieve that interest." Bowman v. White, 444 F.3d 967, 976 (8th Cir. 2006).

8.  The ASP rules allow for comments to be deleted that do not "enhance the respect" for the Arkansas State Police. Exhibit 1, pg. 10-11. That is viewpoint discrimination, which is unconstitutional.

9.  The ASP claims they will delete comments not topically related to a particular posting, but many off topic comments are left up. Exhibit 1, pg. 10 and Exhibit 1 pg. 8. However, the ASP Official Facebook page is rampant with racism, off topic posts, and other unsavory comments.  See: www.facebook.com/ArStatePolice . See generally Exhibit2; Exhibit 8.  The ASP claims that you may not post outside links or pictures, but there are hundreds of comments that post outside links and pictures. Exhibit 1, pg. 12 and Exhibit 8.

10. The rules generally disallow "insulting... racist... bigoted... language or content." <u>Exhibit 1, pg. 11.</u> However, they allow people to say racist and bigoted things to hispanics (telling them they should be deported), and they allow people to call each other "idiots." <u>Exhibit 2.</u>

11. Drew Tanner is seen exiting his vehicle at approximately 1:35:30pm in Clip 13, and walks toward the Searcy Wal-Mart. <u>Exhibit 9.</u>

12. Ziegenhorn's vehicle is seen driving in front of Wal-Mart at 1:35:57 and Ziegenhorn exits his vehicle at exactly 1:36:40. <u>Exhibit 4, Ziegenhorn Deposition, pg. 101, lines 7-15 and Exhibit 9, Video Clip 11.</u>

13. Ziegenhorn approaches the Wal-Mart entrance at approximately 1:37:04 pm. <u>Exhibit 9, Clip 12.</u>

14. At approximately 1:41:41 pm, Tanner is seen waiting by the customer service area in Walmart. <u>Exhibit 9, Clip 9</u>.

15. At 1:41:57 pm, Ziegenhorn is seen entering the customer service area where Tanner is waiting, less than five minutes from when he approached the Wal-Mart entrance. <u>Exhibit 9, Clip 9.</u>

16. Ziegenhorn then approached Tanner and asked Tanner for his ID, addressed Tanner by name, and asked if Tanner was carrying a weapon. <u>Exhibit 3, 2nd Ziegenhorn Memo, pg. 6 at lines 4-5, Exhibit 4 Ziegenhorn Deposition at 65, lines 5-7, 69, 70.</u>

17. Tanner responded that he was not carrying a weapon at the time. <u>Exhibit 4, at 69 and 70.</u> Tanner also contended that he did not have to show Ziegenhorn his identification. <u>Id at lines 5-6.</u>

18. Zeigenhorn did not ask Tanner to hand over his concealed carry license at this time. Exhibit 8. Rather, Ziegenhorn searched Mr. Tanner for an ID, found a wallet, opened it up, and inside was Tanner's Driver's License and CHCL permit inside of Tanner's wallet. Exhibit 4, p. 69-70.

19. Tanner had not yet become loud and obnoxious. "There is no doubt in my mine [sic] he *would have got* loud, obnoxious, I mean, at some point there and that's when I took immediate action, moved it outside, clear everybody else." Exhibit 3, pg. 26, *emphasis added.*

20. There was a video of the entire December 3rd, 2014 interaction between Tanner and Ziegenhorn. Exhibit 9, Clip 9. Ziegenhorn approaches Tanner at 1:42:02 p.m. and places Tanner in handcuffs by 1:42:40. Id. In the video, Tanner remains relatively still the entire time. See Exhibit 9, Clip 9 from 1:42:00-1:42:40.

21. A crowd did not gather and it does not appear that a single additional person came to the area. Id.

22. Ziegenhorn never demanded Tanner's Concealed Handgun License before Ziegenhorn arrested Tanner on December 3rd, 2014. Exhibit 3, pg. 6-7, and 24-25. Exhibit 8.

23. "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" Borgman v. Kedley, 646 F.3d 518, 522–23 (8th Cir. 2011).

24. Tanner exhibited no signs that would lead to arguable probable cause of Disorderly Conduct. Ark. Code Ann. § 5-71-207.

25. . In M.J. v. State, the Arkansas Court of Appeals held that 20 seconds of public shouting involving foul language did not establish disorderly conduct. 381 S.W.3d 880, 883–84 (Ark. Ct. App. 2011). The entire December interaction between Ziegenhorn and Tanner only lasted less than 38 seconds before Ziegenhorn placed Tanner in cuffs. Exhibit 9, Video Clip 9, 1:42:00 to 1:42:38.

26. The second arrest, detention, and search of Tanner by Ziegenhorn on December 3, 2014, was unconstitutional.

27. A brief in support of Plaintiff's Motion for Summary Judgment is filed contemporaneously herewith and is incorporated by reference as if set forth word for word in this motion.

28. Mr. Tanner offers his Statement of Undisputed Facts, which includes the following exhibits that are incorporated by reference in Plaintiff's Brief in Support of Plaintiff's Motion for Summary Judgment:  Exhibit 1:  Various Facebook Interactions; Exhibit 2:  Samples of ASP Facebook Comments; Exhibit 3:  Ziegenhorn Discovery; Exhibit 4:  Ziegenhorn Deposition; Exhibit 5:  Sadler Deposition; Exhibit 6:  ASP Interrogatory Responses; Exhibit 7:  Facebook Information; Exhibit 8:  Affidavit of Tanner; Exhibit 9:  USB of Video Clips and Facebook Index Data; and Exhibit 10, Police Facebook Pages.

Respectfully Submitted,
W. WHITFIELD HYMAN
ATTORNEY FOR PLAINTIFF
By: /s/ W. Whitfield Hyman
W. Whitfield Hyman ABA# 2013-237
Attorney for James Andrew Tanner
Hyman@ArkansasLawKing.com

King Law Group, PLLC
300 N. Sixth Street
Fort Smith, AR 72901
479-782-1125 Phone
479-316-2252 Fax

## CERTIFICATE OF SERVICE

I, W. Whitfield Hyman, hereby certify that a true and correct copy of the foregoing instrument was served upon counsel of record, specifically Reid Adkins and William Bird of the Arkansas Attorney General's Office ***via electronic filing*** (CM/ECF) and the video on this 8th day of June 2020.