IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JAMES ANDREW TANNER**  **PLAINTIFF**

V.   CASE NO. 4:17-CV-780-DPM

**KURT ZIEGENHORN, ET AL.**  **DEFENDANTS**

**RESPONSE TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

Comes now ASP Defendants Colonel Bryant and Kurt Ziegenhorn ("Ziegenhorn") and for their Reply to Plaintiff James Andrew Tanner's ("Tanner") Response to ASP Defendants' Motion for Summary Judgment, state the following:

## IV. ARGUMENT

A. <u>Ziegenhorn did not violate Tanner's Fourth Amendment rights on December 3, 2014, and therefore is entitled to qualified immunity</u>.

Ziegenhorn is entitled to qualified immunity because Tanner cannot establish that Ziegenhorn's conduct violated Tanner's Fourth Amendment rights on December, 3, 2014, when Ziegenhorn had probable cause to conduct a reasonable seizure and search. "A law enforcement officer has probable cause 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Gilmore v. City of Minneapolis*, 837 F.3d 827, 832 (8th Cir. 2016) (quoting *Borgman*, 646 F.3d at 523). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S.Ct. 588 (2004). "If an officer arrests a suspect under the mistaken belief that there is probable cause, arguable probable cause exists if the mistake is 'objectively

reasonable.'" *Gilmore*, 837 F.3d at 832 (quoting *Borgman*, 646 F.3d at 523). A reasonable belief "means more than bare suspicion, but less than evidence which would justify condemnation or conviction." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (quoting *Brinegar v. U.S.*, 338 U.S. 160, 175, 69 S.Ct. 1302 (1949) (internal quotations omitted)).

In the Complaint, Tanner alleges that on December 3, 2014, Ziegenhorn stalked him at the Searcy Wal-Mart when Ziegenhorn arrived at Wal-Mart moments after Tanner, approached him, and demanded whether Tanner was carrying a weapon. DE 61, p. 9, ¶¶ 49-50. However, Tanner's allegation rests purely on speculation. Ziegenhorn was at the Searcy Wal-Mart for one reason, to drop off his son's broken glasses so they could be repaired. DE 79-1, Ex. A, Ziegenhorn Depo., 114:24 – 115:6. Tanner claims that Wal-Mart's medical records "show Ziegenhorn actually arrived at the Wal-Mart Vision Center on December 6th, 2014 to turn in the glasses…"[1] DE 77, p. 19. This simply is not true. According to the manager of the Searcy Vision Center located in Wal-Mart, the medical records show that the order was placed on December 6, 2014, not that Ziegenhorn arrived at the Wal-Mart Vision Center on that day. DE 88-1, Ex. P, Runsick Depo., 34:13 – 35:12.

After entering the Searcy Wal-Mart on December 3, 2014, Ziegenhorn noticed Tanner in the customer service area while on his way to the vision center. DE 79-1, Ex. A, Ziegenhorn Depo., 64:19-22. After leaving the vision center, Ziegenhorn noticed Tanner was still in the customer service area. DE 79-1, Ex. A, Ziegenhorn Depo., 64:25-65:1. Ziegenhorn approached Tanner in the Searcy Wal-Mart to see if Tanner would voluntarily surrender his CHCL because the CHCL Division of ASP was in the revocation process due to the November 29, 2014, incident. Ziegenhorn

---

[1] On p. 27 of DE 76-3, Plaintiff included as an exhibit a medical record which contains the unredacted name of the minor son of ASP Defendant Ziegenhorn. Defendants request the Court place this page under seal to protect the disclosure of such information.

approached Tanner in the customer service area from the direction of the Vision Center. DE 79-1, Ex. A, Ziegenhorn Depo., 65:1-7. After approaching Tanner, Ziegenhorn asked Tanner if he was carrying a weapon. Tanner refused to answer his question multiple times and stated he did not have to answer any of Ziegenhorn's questions, but Tanner eventually stated that he was not carrying a weapon. DE 79-9, Ex. I, p. 4; DE 79-2, Ex. B, Tanner Depo., 48:14-20. Ziegenhorn then asked Tanner if he could see his identification. DE 79-2, Ex. B, Tanner Depo., 48:20-22. Tanner strongly opposed showing Ziegenhorn his identification. DE 79-7, Ex. G, p. 3.

Since Ziegenhorn's main purpose for approaching Tanner was to see if Tanner would voluntarily surrender his CHCL, Ziegenhorn asked Tanner if he could see his CHCL. DE 79-1, Ex. A, Ziegenhorn Depo., 70:22-71:8. Tanner claims he "stood there with his arms folded, and if the officer would have ended his questioning, Tanner would have likely stopped talking." DE 77, p. 28. However, the video footage from the Searcy Wal-Mart customer service area shows Tanner and Ziegenhorn from the waist down. Plaintiff's Ex. 9, Clip 9. At this point in the conversation, Ziegenhorn believed Tanner was starting to become disorderly in an area of Wal-Mart that contained a large number of people because he believed Tanner raised his voice loud enough to attract the attention of customer's in that area of the store and his demeanor changed as if he was about to be confrontational. DE 79-1, Ex. A, Ziegenhorn Depo., 65:18-21; DE 79-9, Ex. I, p. 7. Under Arkansas law, "[a] person commits the offense of disorderly conduct if, with the purpose to cause public inconvenience, annoyance, or alarm or recklessly creating a risk of public inconvenience, annoyance, or alarm, he or she: (1) Engages in fighting or in violent, threatening, or tumultuous behavior; (2) Makes unreasonable or excessive noise…(7) Creates a hazardous or physically offensive condition." Ark. Code Ann. § 5-71-207(a). Disorderly conduct is a class C misdemeanor. Ark. Code Ann. § 5-71-207(b).

On November 29, 2014, just five days prior, Ziegenhorn encountered Tanner for the first time where Tanner was openly carrying a weapon in Searcy Wal-Mart. DE 79-1, Ex. A, Ziegnehorn Depo., 13:18-14:8. At the time, the guidance provided by ASP to its officers was that open carry was illegal. DE 79-4, Ex. D, p. 10. During this encounter, Ziegenhorn experienced Tanner become defensive and agitated while carrying a weapon in Searcy Wal-Mart. DE 79-1, Ex. A, Ziegenhorn Depo., 18:14-20:24; DE 79-7, Ex. G, p. 1. Similarly, on December 3, 2014, Tanner's demeanor had shifted from Ziegenhorn's perspective. "Arkansas police officers may consider a person's demeanor in deciding whether to arrest under the disorderly statute. *Graham v. Cawthorn*, 2013 Ark. 160, *8, 427 S.W.3d 34 (citing *Watkins v. State*, 2010 Ark. App. 85, 2-6). In addition to raising his voice, it appeared Tanner stiffened and bowed up as if he was going to be confrontational. DE 79-9, Ex. I, pp. 5-7. Ziegenhorn also thought it was possible that Tanner had someone else spectating within close proximity based on previous discussions with the Searcy Police Department. DE 79-1, Ex. A, Ziegenhorn Depo., 65:11-15. So, at this time, Ziegenhorn believed it was further necessary to retrain Tanner for his and the public's safety and to move the situation outside before it escalated into something more. DE 79-1, Ex. A, Ziegenhorn Depo., 65:16-24.

While outside at Ziegenhorn's patrol car, Ziegenhorn went through the proper steps to identify Tanner. DE 79-1, Ex. A, Ziegenhorn Depo., 66:9-12. In the process of identifying Tanner, Ziegenhorn came across Tanner's CHCL in plain view. DE 79-1, Ex. A, Ziegenhorn Depo., 66:14-16. Because Ziegenhorn had probable cause to place Tanner in custody, the subsequent search of Tanner's person and confiscation of his CHCL also did not violate his Fourth Amendment rights. *See Gilmore*, 837 F.3d at 838; *see also Meehan v. Thompson*, 763 F.3d 936, 946 (8th Cir. 2014)

("[A] search incident to [an] arrest requires no additional justification." (second alteration in original) (quoting *U.S. v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467 (1973))).

For the above reasons, Ziegenhorn had probable cause to place Tanner in custody and confiscate his CHCL license. Thus, Ziegenhorn is entitled to qualified immunity and the claims against him should be dismissed.

B. <u>This Court should dismiss Tanner's perjury claim against Ziegenhorn because Ziegenhorn is entitled to statutory immunity and Tanner cannot establish Ziegenhorn knowingly made a false material statement under oath</u>.

Ziegenhorn is entitled to statutory immunity because Tanner has failed to establish Ziegenhorn's alleged actions were out of malice and Ziegenhorn knowingly made a false material statement. The Arkansas Supreme Court has defined malice as "an intent and disposition to do a wrongful act greatly injurious to another[,]" and "the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent… A conscious violation of the law…which operates to the prejudice of another person. A condition of the mind showing a heart…fatally bent on mischief." *E.g., Fuqua v. Flowers*, 341 Ark. 901, 905-06 (2000) (citations and internal quotation marks omitted); *see also Simons v. Marshall*, 369 Ark. 447, 452-53 (2007). "[A] bare allegation of willful and wanton conduct will not suffice to prove malice." *Id*. at 453 (citation omitted).

First, other than the conclusory factual allegation in Tanner's Complaint that Ziegenhorn maliciously lied under oath, Tanner has not presented any evidence in the record before this Court to establish Ziegenhorn acted maliciously. Furthermore, Tanner has not established Ziegenhorn knowingly made a false material statement under oath. Ziegenhorn believed Tanner's hand dropped down towards his weapon on the night of November 29, 2014, in Searcy Wal-Mart. DE 79-1, Ex. A, Ziegenhorn Depo., 15:1-3. Tanner claims the security video footage proves this is a

false statement. DE 92, p. 30. However, Ziegenhorn had not watched the security video footage prior to testifying at Tanner's criminal case in the White County District Court or his Concealed Carry Handgun License revocation hearing. DE 79-1, Ex. A, Ziegenhorn Depo., 92:11-12. Additionally, when Ziegenhorn watched the video footage at his deposition, he was unable to tell whether Tanner dropped his hand down because of the angle of the footage. DE 79-1, Ex. A, Ziegenhorn Depo., 95:17-19. Nevertheless, Ziegenhorn believed Tanner's hand dropped towards his weapon on November 29, 2014, so Ziegenhorn temporarily grabbed Tanner's right arm to prevent him from having access to his weapon. DE 79-1, Ex. A, Ziegenhorn Depo., 15:3-7. Consequently, Tanner cannot establish Ziegenhorn maliciously and knowingly made a false material statement because Ziegenhorn believed Tanner's arm dropped down towards his weapon and believed it was necessary to temporarily prevent Tanner access to his weapon.

Lastly, Tanner claims Ziegenhorn "immediately grabbed Tanner after Tanner stated that he was not with any law enforcement agency, before stating that his name was Kurt Ziegenhorn, before stating 'state police identify yourself,' and before Tanner refused to identify himself." DE 92, p. 29. However, in Tanner's criminal case before the White County Circuit Court, Tanner stipulated to the following facts:

> 1. On the 29th of November, 2014, Trooper Ziegenhorn was off duty and shopping with his family at the Wal-Mart in Searcy Arkansas. 2. [Ziegenhorn] was wearing a pair of jeans, a shirt, a pistol and was wearing his badge on his jeans…4. [Ziegenhorn] approached Mr. Tanner and asked what department he was with and Mr. Tanner said he was not with anybody. 5. Trooper Ziegenhorn identified himself and asked for ID and Mr. Tanner stated that he did not have to show the trooper anything. 6. Trooper Ziegenhorn grabbed Mr. Tanner's right arm and shortly thereafter released Mr. Tanner…

DE 79-11, Ex. K, p. 20.

For the above reasons, Ziegenhorn is entitled to statutory immunity because he did not act maliciously and knowingly make false material statements when testifying under oath.

## V. CONCLUSION

For these reasons, ASP Defendants respectfully request that their Motion for Summary Judgment be granted and any other relief for which they are entitled.

Respectfully submitted,

LESLIE RUTLEDGE,
Attorney General

By: <u>Reid P. Adkins</u>
Arkansas Bar # 2015216
Assistant Attorney General
Attorney for ADC Defendant
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Telephone: (501) 682-1080
Fax: (501) 682-2591
reid.adkins@arkansasag.gov

William C. Bird III
Ark. Bar # 2005149
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Telephone: (501) 682-1317
Fax: (501) 682-2591
William.bird@arkansasag.gov

## CERTIFICATE OF SERVICE

I, Reid P. Adkins, hereby certify that on July 14, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of the filing to any participants.

By: <u>Reid P. Adkins</u>