IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

CENTRAL DIVISION

JAMES ANDREW TANNER
PLAINTIFF

v. 4:17-cv-780-DPM

KURT ZIEGENHORN in his
individual capacity; and BILL
BRYANT, Colonel, in his official
capacity as head of the Arkansas
State Police

DEFENDANTS

### PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1. Reply to Facebook Section

Defendant ASP has come up with a litany of reasons why they could have deleted Tanner's comments. See Doc. 88, pg. 11 (off topic, links to outside websites, etc). Defendant ASP relies heavily on *Plowman*, in the 4th circuit unpublished decisions are not precedent. *Davison v. Plowman*, 715 Fed. Appx. 298 (4th Cir. 2018)(unpublished). Defendant ASP is limited to the reason for deletion they provided in response to interrogatories, which was "[a]busive comments and/or profanity in violation of the Arkansas State Police Facebook Terms and Conditions." Doc. 76, Exhibit 6, pg. 1, ROG. 9. Defendant ASP was asked "All of the reasons why" Drew Tanner's Facebook comments were deleted. Id. If the

Defendant wishes to reopen discovery on this issue, then they should make a motion to do so, and not try to change interrogatory answers after the close of discovery during the summary judgment phase. Had Plaintiff known this was the answer to that interrogatory, Plaintiff would have expanded discovery to interview people like Glenn Britland and Michael Williams, who Plaintiff's counsel knows personally and these individuals posted outside links to the ASP Facebook page. (these individuals told Plaintiff's Counsel that they did not get permission to post the outside links and Mr. Britland's comment with an outside link is available to this day). However, this tangent is irrelevant because that was not the official answer to the interrogatory.

A quick perusal of the ASP Facebook page would show several comments on their face are not topically related to posts by the ASP, including a comment inviting all public servants to a church on one of the very posts where Tanner's comments were deleted. Doc. 76, Exhibit 1, pg. 8. Another comment by a Glenn Britland is about Arkansas being a permitless carry state (and contains an outside link) on a "find the trooper Friday" post. See Plaintiff's Exhibit 1, pg. 1 attached to this filing. "Find the Trooper Fridays" posts appear to be a game where people try to guess where the trooper is based on a picture. See www.Facebook.com/ArStatePolice generally.

More troubling than that, is that racist comments totally unrelated to posts are allowed as long as they are against people complaining about the Arkansas State Police. Doc. 76, Plaintiff's Exhibit 2, pg. 2.

The rantings and ravings of an apparent schizophrenic have been repeatedly left unchecked for over a year now. See Doc. 76, Plaintiff's Exhibit 2, pg. 9. Also see Plaintiff's Exhibit 1, pg. 2 to 4 attached to this filing ("The people torchering me are fixing to meet god"..."STOP microwave radiation TORCHER"..."STOP V2K TORCHER BY GARLAND COUNTY SHERIFF'S OFFICE" etc.). Mr. Quinton Harvey has commented about twenty times, each comment found is nonsense. Id at 5.

The profanity filter the ASP uses on Facebook was not in place at the time Tanner made his original comments, or his comments would have been blocked from appearing at all, not deleted afterwards. See Plaintiff's Exhibit 1, pg. 6 attached to this filing.

https://www.facebook.com/facebookmedia/blog/moderating-your-facebook-page

Profanity appears to be allowed when it is in support of the State Police. See Plaintiff's Exhibit 1, pg. 7 ("asshat").

2. <u>Reply to Defendant's December 3rd Arrest Section</u>

Arkansas law does not permit a police officer to arrest a person for refusing to identify himself when he is not suspected of other criminal activity and his identification is not needed to protect officer safety or to resolve whatever reasonable suspicions prompted the officer to initiate a Terry stop. *Stufflebeam v. Harris*, 521 F.3d 884, 887 (8th Cir. 2008). Even if Tanner did all of the things Ziegenhorn claims, Tanner did not come close to committing Disorderly Conduct. See Doc. 88, pg. 15 (raised his voice loud enough to attract the attention of customers in that area, had a demeanor change "as if he was about to be" confrontational).

Ziegenhorn referred to Tanner by name. Doc. 76, Exhibit 4, Ziegenhorn Deposition, Pg. 65, lines 5-7, PBSUMF ¶47. Ziegenhorn asked Tanner if Tanner was armed, Tanner said he was not. Doc. 76, Exhibit 4, Ziegenhorn Deposition, pg. 65, line 25, and pg. 66 lines 1-4, PBSUMF ¶48. Ziegenhorn had emailed a report about Tanner just before this interaction to his superiors that showed that Tanner did not have any open warrants. Doc. 76, Plaintiff's Exhibit 3, pp. 9-10. In order to have a Concealed Handgun License in Arkansas, you must not be a felon or have domestic violence charges on your record.  In order to perform "Terry Stop" a police officer has to believe you are armed **<u>and</u>** dangerous. *Terry v. Ohio*, 392 U.S.

1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Tanner gave no indication that he was either. Even if Ziegenhorn thought Tanner was armed and dangerous, looking inside of Tanner's wallet was beyond the scope of a Terry Stop.

This interaction was obviously a seizure and therefore Ziegenhorn may not rely on Arkansas Rules of Criminal Procedure 2.2. See *Stewart v. State*, 964 S.W.2d 793, 795 (Ark. 1998) and *Dosia v. State*, 318 S.W.3d 583, 587 (Ark. App. 2009). This interaction was obviously not a community caretaking function either, so Ziegenhorn may not rely on that. *Dosia v. State*, 318 S.W.3d 583, 587 (Ark. App. 2009). The ONLY thing left is Arkansas Rule of Criminal Procedure 3.1, which Defendant Ziegenhorn may not rely on, because the subsection of Disorderly Conduct he uses to justify it is not "a felony or misdemeanor involving danger of injury or property damage." Compare *Dosia* with "Makes unreasonable or excessive noise" from Ark. Code Ann. § 5-71-207.

Respectfully Submitted,
W. WHITFIELD HYMAN
ABA# 2013-237
ATTORNEY FOR PLAINTIFF
King Law Group, PLLC
300 N. Sixth Street
Fort Smith, AR 72901
479-782-1125 Phone
479-316-2252 Fax
Hyman@ArkansasLawKing.com

**CERTIFICATE OF SERVICE**

I, W. Whitfield Hyman, hereby certify that a true and correct copy of the foregoing instrument was served upon counsel of record, specifically Reid Adkins and William Bird of the Arkansas Attorney General's Office ***via electronic filing*** (CM/ECF) and the video on this 14th day of July 2020.