IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JAMES ANDREW TANNER                                             PLAINTIFF

v.                          No. 4:17-cv-780-DPM

KURT ZIEGENHORN, in his individual
capacity, and BILL BRYANT, Colonel,
in his official capacity as head of the
Arkansas State Police                                           DEFENDANTS

ORDER

1. The Court must decide whether any of the remaining claims in this case involving police encounters at Wal-Mart, Facebook posts, and potential violations of federal rights and state law should go to trial. Tanner seeks partial summary judgment on his free speech claims against Arkansas State Police Colonel Bryant and unreasonable search and seizure claims against Trooper Ziegenhorn from their Wal-Mart run-in. Colonel Bryant and Trooper Ziegenhorn also seek summary judgment on these claims, plus Tanner's Fourth Amendment arrest warrant claim and state law malicious prosecution and perjury claims. The Court takes the material facts, where genuinely disputed, in the non-moving party's favor. *Oglesby v. Lesan*, 929 F.3d 526, 532 (8th Cir. 2019).

2. The First Amendment issues loom large, so the Court addresses them first. The defendants argue that the Arkansas State Police's Facebook page is shielded from First Amendment scrutiny as

government speech. The Court disagrees. *Doc. 60 at 2*. The interactive section of this Facebook page isn't government speech but is instead a designated public forum. *Knight First Amendment Institute at Columbia University v. Trump*, 302 F. Supp. 3d 541, 574 (S.D.N.Y. 2018), *aff'd*, 928 F.3d 226 (2d Cir. 2019). This means restrictions are permissible "only if they are narrowly drawn to achieve a compelling state interest." *International Society for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992). While the nature of the forum will be important at trial, it is less so now. Government actors commit unconstitutional viewpoint discrimination in any kind of public forum when they hamper speech because of "the specific motivating ideology or the opinion or perspective of the speaker." *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 829 (1995). But did deleting Tanner's comments and blocking him infringe Tanner's free speech rights? The answer depends on when and why these things happened.

The parties disagree, and offer conflicting evidence, about when the State Police created terms and conditions for its Facebook page and whether they were publicly available. If there weren't any such provisions when Tanner made his comments, those comments must've been removed for some other reason. If there were terms and conditions when Tanner made his comments, material facts about why Tanner's comments were deleted and why he was blocked remain disputed. Nor is it clear whether the State Police always deletes

-2-

comments that violate the terms and conditions or whether the State Police targets comments it dislikes, such as Tanner's. And the Court isn't sure the terms and conditions themselves are compatible with the Constitution. At a minimum, the State Police's automatic blocking of non-obscenities like "pig," "copper," and "jerk" suggests an unconstitutional allergy to certain viewpoints. *Doc. 79-14 & 79-15*. On this record, the Court can't rule out viewpoint discrimination, but the Court can't conclude as a matter of law that viewpoint discrimination happened, either. The disputed facts surrounding Tanner's free speech claims require a jury's decision.

**3.** Next, the Fourth Amendment claims. As to the December 2014 encounter, Tanner says Trooper Ziegenhorn arrested him without probable cause. The State Police defendants disagree, maintaining that the search and the seizure were reasonable. As to the arrest warrant, Tanner contends that Ziegenhorn's supporting affidavit contained misleading information and relied on misinformed beliefs. Defendants respond that Ziegenhorn's affidavit relied on undisputed facts and was properly submitted.

Trooper Ziegenhorn seeks qualified immunity here. This doctrine protects him from civil liability unless Tanner shows the violation of a constitutional right that was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). It's clearly established that police officers violate the Fourth Amendment

when they make warrantless arrests without probable cause. *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005). And it's clearly established that police officers violate the Fourth Amendment when they get arrest warrants based on a "deliberate falsehood" or a "reckless disregard for the truth." *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

The parties' evidentiary materials tell divergent and conflicting versions about what happened at Wal-Mart.

According to Trooper Ziegenhorn, he approached Tanner at the customer service area to see if Tanner would surrender his concealed carry license. He asked Tanner whether he was carrying a weapon and requested identification, and Tanner was less than cooperative. Trooper Ziegenhorn then asked to see Tanner's concealed carry license. At this point in the conversation, Ziegenhorn believed Tanner was becoming unruly in violation of Arkansas's disorderly conduct statute, including raising his voice to a level where he attracted people's attention, stiffening his posture, and bowing up like he might be confrontational. ARK. CODE ANN. §§ 5-71-207(a)(1), (2) & (7). They were in a group of people at the customer service area and Ziegenhorn couldn't see who was behind him. The trooper decided he needed to handcuff Tanner and move things outside to his patrol car. Once there, Ziegenhorn searched Tanner for identification, opened his wallet, and confiscated his concealed carry license.

According to Tanner, Trooper Ziegenhorn approached him at the customer service area, called him by name, asked for identification, and asked whether he was carrying a weapon. Tanner said he wasn't armed and he didn't have to show identification since Trooper Ziegenhorn called him by name. As they talked, Tanner stayed relatively still and wasn't loud or obnoxious. No crowd gathered, no one came to the area, and Trooper Ziegenhorn didn't have his back to anybody. Trooper Ziegenhorn cuffed him, took him outside, searched him for identification, and confiscated his concealed carry license.

This incident, the parties agree, lasted about thirty minutes. And on either version of these facts, the Court concludes that Trooper Ziegenhorn arrested and searched Tanner. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *Chimel v. California*, 395 U.S. 752, 762-63 (1969).

Qualified immunity on this claim depends on whether Trooper Ziegenhorn had arguable probable cause to arrest Tanner. *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000). Arguable probable exists if an officer makes an objectively reasonable mistake in determining, in the fast moment, whether probable cause exists for an arrest. *Gilmore v. City of Minneapolis*, 837 F.3d 827, 832 (8th Cir. 2016). If a reasonable officer could conclude that Tanner was disorderly within the Arkansas's statute's meaning, then Trooper Ziegenhorn is entitled to qualified immunity.

But the Court can't say, as a matter of law, whether Ziegenhorn's conclusions that Tanner was becoming disorderly, and that safety mandated restraining Tanner, were or were not objectively reasonable on the current record. The trooper's contemporaneous recollections alternate between saying Tanner was disorderly and saying he thought Tanner might become disorderly, an important distinction. *Doc. 79-9*. The parties' conflicting accounts of their respective demeanors and actions leave room for debate, too. The soundless video clip of the encounter does the same. Because of the competing motions for summary judgment on this issue, the Court has considered the record in the light most favorable to each side. Because of the murkiness created by the genuinely disputed material facts, the Court is unable to decide, at this point, whether this encounter was an unreasonable search and seizure. A jury must decide the disputed factual issues about the run-in on special interrogatories, and then the Court will decide the immunity issue. *Lee v. Andersen*, 616 F.3d 803, 811 (8th Cir. 2010). The Court therefore denies Ziegenhorn qualified immunity on this claim without prejudice.

In his affidavit for the arrest warrant, Trooper Ziegenhorn recounted his first Wal-Mart encounter with Tanner, which had occurred the month before in November 2014. *Doc. 79-6*. Based on these facts, Ziegenhorn believed that Tanner broke state laws about obstructing governmental operations and carrying a weapon. ARK.

CODE ANN. §§ 5-54-102 & 5-73-120. The local prosecutor reviewed these facts with Ziegenhorn and approved his affidavit. *Doc. 79-1 at 15 & 81 at 4-5*. Ziegenhorn submitted the affidavit to the White County District Court, which issued an arrest warrant for Tanner in mid-January 2015. He was arrested two days later. Tanner says he didn't break any laws and that Ziegenhorn didn't have good reason to believe he did. But this Court doesn't see anything in the affidavit approaching "a deliberate falsehood" or "reckless disregard for the truth." *Franks*, 438 U.S. at 171. The warrant application contains "a truthful factual showing of probable cause" for the cited offenses. *Hunter v. Namanny*, 219 F.3d 825, 831 (8th Cir. 2000). No reasonable juror could conclude that Ziegenhorn's actions were objectively unreasonable, and Ziegenhorn is therefore entitled to qualified immunity on the related Fourth Amendment arrest warrant claim.

**4.** Finally, the state law claims. On malicious prosecution, Tanner alleges that Ziegenhorn lacked probable cause to recommend Tanner's state court prosecution and filled out a misleading arrest warrant to support it. On his felony tort claim for perjury, Tanner alleges that Ziegenhorn maliciously stretched the truth about what happened during the November 2014 encounter in state-level proceedings and official reports about the incident.

Tanner's malicious prosecution claim fails as a matter of law. First, Trooper Ziegenhorn's warrant application established probable

cause. Tanner's claim is therefore missing an essential element. *McMullen v. McHughes Law Firm*, 2015 Ark. 15, 15, 454 S.W.3d 200, 210 (2015). Plus, Tanner was found guilty of obstructing justice by the White County District Court, and "a judgment of conviction by a court of competent jurisdiction is conclusive evidence of the existence of probable cause, even though the judgment is later reversed." *Sundeen v. Kroger*, 355 Ark. 138, 143, 133 S.W.3d 393, 396 (2003). On this record, no reasonable juror could conclude that Ziegenhorn committed malicious prosecution.

Tanner's perjury-based claim also fails. Trooper Ziegenhorn committed perjury if he knowingly made "a false material statement under an oath required or authorized by law" in an official proceeding. ARK. CODE ANN. § 5-53-102(a)(1). A false material statement is one "which affects or could affect the course or outcome of an official proceeding or the action or decision of a public servant in the performance of any governmental function." ARK. CODE ANN. § 5-53-101(1)(A). Nothing in the record shows that Ziegenhorn knowingly made any material false statements. Ziegenhorn believed that Tanner dropped his hand toward his weapon during the November 2014 encounter and testified to that belief. *Doc. 79-1 at 4*. Though the video of the encounter seems at odds with this account, Ziegenhorn testified before he saw the tape. *Ibid. at 23*. He relied on his memos and his

memory. On this record, no reasonable juror could conclude that he perjured himself in doing so.

* * *

Tanner's motion for partial summary judgment, *Doc. 76*, is denied. Colonel Bryant and Trooper Ziegenhorn's motion for summary judgment, *Doc. 79*, is partly granted and partly denied. The Court grants summary judgment in Ziegenhorn's favor on Tanner's Fourth Amendment arrest warrant claims and state law claims about the November 2014 encounter. The Court denies summary judgment on Tanner's free speech claims and December 2014 unreasonable search and seizure claims. The overlapping federal and state claims on those issues are for trial. The Court will also revisit the qualified immunity defense after the jury answers factual questions about the second Wal-Mart encounter. This case is first out for trial on 2 November 2020.

So Ordered.

*WPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

22 September 2020