### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**JAMES ANDREW TANNER**                                                                **PLAINTIFF**

**vs.**                                **CASE NO. 4:17-cv-780-DPM**

**Ziegenhorn, et al.**                                                                **DEFENDANTS**

---

### PLAINTIFFS' REPONSE TO DEFENDANTS' MOTION IN LIMINE AND INCORPORATED BRIEF

---

TO THE HONORABLE JUDGE D.P. MARSHALL, JR:

COMES NOW, James Andrew Tanner and files this **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE** and would respectfully show unto this Honorable Court the following:

**1. This Court Should Exclude Some but Not All Testimony And Evidence Relating To Claims No Longer At Issue Before The Court.**

The Plaintiff would agree that the fact Mr. Tanner sued any prior Defendant or that any claim dismissed against any current Defendant should be excluded from being discussed by counsel or testified to. <u>However, the defendant's request to prohibit all evidence relating to the dismissed claims is too broad because there is some overlap between the evidence of the excluded claims and the evidence of the claims still pending</u>. In order for the jury to understand Mr. Tanner and Ziegenhorn's second interaction, and Mr. Tanner's subsequent quest to complain about the Arkansas State Police on their Facebook page, a limited discussion on the facts should be allowed. For example, Mr. Tanner should be allowed to play video and audio that depict the first incident and put on the officers from the Searcy

Police Department to describe what they saw, heard, and said that day.  Some of the

reasons Ziegenhorn and Tanner acted the way he did during the second incident was based

on what happened during the first incident. Also, Ziegenhorn gave many statements about

the first incident that are objectively false when compared to the video. If the jury has to

rely on which recollection is more factually accurate, Mr. Tanner's or Trooper Ziegenhorn's,

this video and audio would be illustrative to the jury to show which person has the better

memory and which person is more truthful. Testimony regarding Plaintiff's FOIA request to

Bill Sadler show why Mr. Tanner was making the comments that he was and whether or

not there were Facebook policies in place when Mr. Tanner was making comments.


## 2. The Court Should Exclude Testimony of Witnesses That Do not Have Personal Knowledge About Facts of this case and Witnesses That Were Not Disclosed During the Course of Discovery

Richard Tanner will be testifying to mental stress and pain and suffering damages caused

by Ziegenhorn's arrest of Tanner. Richard should be allowed to testify. Plaintiff agrees that

none of Ziegenhorn's co-workers that were not mentioned by named in the witness lists

should be allowed to testify. Kayce Bell was listed as a witness because he was going to

present an audiovisual presentation to the jury, however his role was more of a court

technician and not a witness, unless required to testify about the process of the

audio-visual mashup should the Defense object. Al Brodbent has knowledge of how

Trooper Ziegenhorn has stalked others that have dared to complain about how Trooper

Ziegenhorn has used his authority in an incredibly similar circumstance.

**3. This Court Should Exclude Testimony of Any Court Staff of the White County District Court, Including the Clerk and the Judge, and Searcy Prosecutor.**

Plaintiff agrees, now that the court has dismissed the perjury claim against Ziegenhorn and other claims, their testimony would be irrelevant. Plaintiff plans on introducing the "not guilty" paperwork from the first arrest.

**4. This Court Should Not Exclude Testimony And Evidence Relating To Plaintiff's Allegation That Defendant Ziegenhorn Was Stalking Him.**

"Stalking" is an apt descriptor of how Ziegenhorn approached Tanner on both arrest dates. If the jury disagrees, they can look at the video of the first incident and decide for themselves. Whether or not Ziegenhorn was "stalking" Tanner is unknown by the Plaintiff, however, there is historical and circumstantial evidence that Ziegenhorn stalked Tanner.

1. Al Brodbent would testify that Ziegenhorn followed him after he made a complaint about Ziegenhorn.

2. Ziegenhorn was not assigned to patrol White County and nor was his Troop, however the only reason Ziegenhorn appears to be in that county that day was to fill out an affidavit of arrest of Mr. Tanner after he had discovered that the Searcy Police Department officers had decided not to charge Mr. Tanner with a crime.

3. Ziegenhorn cornered Mr. Tanner and yelled obscenities at him for not identifying himself to a person in plainclothes. This is not normal behavior.

4. Ziegenhorn's excuse is that he was there to drop off glasses. However, in one of his accounts, he claims he was there to pick up glasses. On the official Walmart medical

records, a date of December 6th is shown as the drop off date, not December 3rd. However,

an employee later testified at a deposition that the date on the record may not mean that

was the date Ziegenhorn dropped off the glasses.

5. Ziegenhorn lived a considerable distance from Searcy at the time in the next county over.

6. It is highly unlikely that Ziegenhorn would arrive at the Walmart within moments of Mr.

Tanner arriving at the Walmart given the facts previously listed.

## 5. This Court Should Not Exclude the Medical Records of Defendant Ziegenhorn's Minor Son.

Plaintiff has no problem making redactions to the document, however, it is relevant to

show that Ziegenhorn may not have been at the Walmart for the reason he claimed to be.

## 6. This Court Should Not Exclude Evidence of "Other" Incidents, Complaints, Reports, or Internal Affairs Investigations and Comments to ASP's Facebook Page

Whether or not other comments were deleted and why on the Facebook page go directly to

viewpoint discrimination. There is a memo directly on point written by Elizabeth Chapman

that Plaintiff intends to introduce at trial.

## 7. This Court Should Exclude The Arkansas State Police Policies And Procedures Manual And Any Related Or Similar Documents As Wholly Irrelevant To Any Issue In Dispute In This Lawsuit.

Plaintiff agrees with the Defendant in this regard.

**8. This Court Should Exclude Evidence Of "Other" Disciplinary Actions or Alleged Prior Bad Acts Against Defendants Because It Is Irrelevant Evidence, Is Highly Prejudicial, And Relates To Other Acts.**

Plaintiff agrees, except for the testimony of Al Brodbent. Plaintiff has already sufficiently stated why Mr. Brodbent should be allowed to testify.  Plaintiff plans to introduce Defendant Ziegenhorn's complaint documents from the Tanner incident due to Ziegenhorn's prior inconsistent statements, the statements were against Ziegenhorn's interest,  and that he verified the testimony appeared accurate during his deposition, and was a business record of the ASP.

**9. This Court Should Not Exclude Evidence From the Wayback Machine**

The Third Circuit has already addressed exactly how a witness can authenticate screenshots from the Wayback Machine when they do not work for the company: "Bansal contends that these screenshots were not properly authenticated. We disagree. Rule 901(b)(1) requires that before evidence is admitted, its proponent must produce evidence "sufficient to support a finding that it is what it purports to be." Testimony of a witness with personal knowledge is sufficient. Id. In this case, the government obtained the screenshot images from a company called the Internet Archive, which runs a website called the Wayback Machine. The Wayback Machine seeks to catalogue all websites on the internet and currently has a database spanning more than a decade. To authenticate that the screen-shot was what it purported to be, the government called a witness to testify about how the Wayback Machine website works and how reliable its contents are. The witness also compared the screenshots with previously authenticated and admitted

images from Bansal's website and concluded, based upon her personal knowledge, that the screenshots were authentic. This was evidence "sufficient to support a finding" that the screenshots were "what they purport[ed] to be," rendering them admissible under Rule 901(b)(1). Accordingly, we will affirm the District Court." U.S. v. Bansal, 663 F.3d 634, 667–68 (3d Cir. 2011).

Mr. Tanner will be able to describe how the website works from personal knowledge, look at the screenshots and compare them to his memory of the website at the time, the way the website looks now, and other screenshots he has taken of the website in order to make the screenshots admissible.

## 10. This Court Should Exclude Any Evidence Not Produced During The Course Of Discovery.

Plaintiff agrees with Defendants that any evidence not produced should be excluded.

## 11. Suggestions or Allegations That Defendants Did Not Call Certain Witnesses To Testify For Any Reason Would be Misleading and Unfairly Prejudicial.

Plaintiff agrees and requests that the Defendants be held to the same standard.

Respectfully Submitted,
By:   /s/ W. Whitfield Hyman
W. WHITFIELD HYMAN
ABA# 2013237
Attorney for Plaintiff
King Law Group, PLLC
300 N. Sixth Street
Fort Smith, AR 72901
479-782-1125 Phone
479-316-2252 Fax

Hyman@ArkansasLawKing.com

## **CERTIFICATE OF SERVICE**

I, W. Whitfield Hyman, hereby certify that a true and correct copy of the foregoing instrument was served upon counsel of record, specifically Reid Adkins and William Bird of the Arkansas Attorney General's Office ***via electronic filing*** (CM/ECF) on this 5th day of October, 2020.