## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**JAMES ANDREW TANNER**                                        **PLAINTIFF**

     **vs.**                          **CASE NO. 4:17-cv-780-DPM**

**Ziegenhorn, et al.**                                        **DEFENDANT**

---

### PLAINTIFF'S RESPONSE TO DEFENDANTS' SECOND MOTION IN LIMINE

---

COMES NOW, James Andrew Tanner and files this Plaintiff's Response to Defendants' Second Motion in Limine, and would respectfully show unto this Honorable Court the following:

### A.  RESPONSE TO TONYA RUNSICK'S EMAIL

1. Contrary to Defendants' assertion, the document was listed in the pretrial disclosures (Doc. 100) , "(e) Plaintiff reserve [sic] the right to use any documents identified or produced by either party during discovery."

2. The email is an analysis of what the medical records mean by the custodian of records created years after the incident in response to Plaintiff's subpoena.

3. This document is also listed because Ms. Runsick is anticipated to testify in a way that is contrary to the contents of the email, and the Plaintiff is going to use it for impeachment purposes.

4. Plaintiff's counsel has researched the issue and cannot adequately find anything directly on point, and will leave the question of admissibility up to the court.

### B. RESPONSE TO FOIA REQUEST

1. Plaintiff has already agreed with the Defendant prior to this motion to redact this email or series of emails to the extent where the only focus is the Facebook information requested and Sadler's responses. The Defendants have yet to send an email or series of emails

redacted in a way that would be agreeable. Plaintiff will replace this exhibit with an appropriately redacted email.

2. Plaintiff should be allowed to inquire about the completeness of the FOIA response in regards to the Facebook requests, that is at the heart of what the fact finder would like to know about the existence of certain terms and conditions on the ASP Facebook page. If Mr. Tanner requested certain Facebook information, and Mr. Sadler said certain Facebook information did not exist, the fact finder will want to know why. As to questions about other FOIA request responses, Plaintiff is not interested in and does not plan on eliciting specific responses regarding their completeness.

### C. RESPONSE TO LINKS IN FACEBOOK MESSAGES

The jury is not here to decide the law, what Tanner believed the law to be is relevant in gauging his expressed speech. Tanner's reaction, comments, and conversation with the Facebook administrators of the ASP page are included in that speech. The messages should remain intact and unredacted as context is everything in this case. Tanner's responses and comments are a direct response to Tanner being fed up with law enforcement breaking the law. However, if the Court disagrees, the Plaintiff should order that no witness can talk about or present evidence of anything in the Facebook conversation between the administrator and Tanner after the link to the lawsuits is sent. That would include: "Stop being fascist authoritarians. I don't care if you like what I say ro not, I have the right to say it." and the Administrator's response, "You are welcome to post any opinion you want if you use profanity again I will ban you. There are lots of families and children that follow our site. You may not care about them, we do." "Go Fuck Yourself. Fascist Pig." and "My post now says 'douchebag' you lawless jackasses." Doc. 117-1, Defense Exhibit C, pg. 17 and 19.

Plaintiff agrees it may be appropriate to redact the monetary award mentioned in the headlines as that may confuse the jury as no monetary damages can be awarded from the jury in the free speech portion of the case.

### D. RESPONSE TO ARCHIVE.ORG SCREENSHOTS

Tanner's screenshots are actually the result of the "print to pdf" function that either did not capture the arrows or merely forced them off of the page of the document that the Plaintiff provided as an exhibit. Plaintiff has no objection to using the screenshot function so that the screenshot can accurately reflect the arrows shown in Defendant's exhibit. Plaintiff had intended on Tanner visiting the www.archive.org website in Court in real time during the trial and the interactive version of the site it would have been clear that many portions of the ASP Facebook page were "clickable" links, even if they did not have arrows. Plaintiff would even stipulate that the "about" is a link to a different page.

The other argument put forth by the Defense regarding this has already been dealt with, addressed, and denied by this court in the first orders on the motions in limine. The Plaintiff reasserts his prior legal arguments in response herein. If Tanner can adequately explain how Archive.org works and authenticate the screenshots as true and accurate based on his memory and recollection of the ASP Facebook page, then the screenshots should be allowed to come in.

### IV.     PRAYER

For these reasons, Plaintiffs ask the Court to deny in part and grant in part the Defendant's second request for motions in limine.

Respectfully submitted,

W. Whitfield Hyman
ATTORNEY FOR PLAINTIFF
Attorney for James Andrew Tanner

King Law Group, PLLC
300 N. Sixth Street
Fort Smith, AR 72901
901-413-2625 Phone; 479-316-2252 Fax
ABA# 2013-237
hyman@arkansaslawking.com

## CERTIFICATE OF SERVICE

I, W. Whitfield Hyman, hereby certify that a true and correct copy of the foregoing instrument was

served upon all counsel of record *via* ECF on this 9th day of November, 2020.