IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JAMES ANDREW TANNER                                          PLAINTIFF

v.                            No. 4:17-cv-780-DPM

KURT ZIEGENHORN, in his individual
capacity, and BILL BRYANT, Colonel,
in his official capacity as head of the
Arkansas State Police                                        DEFENDANTS

MEMORANDUM OPINION AND ORDER

1. The Court held a jury trial in this case in July 2021. At the end of that trial, in two special verdicts the jury answered some questions about key disputed facts. *Doc. 135 at 1–2.* Drew Tanner prevailed on his Fourth Amendment claims. After the Court denied Trooper Kurt Ziegenhorn's renewed motion for qualified immunity on those claims, the jury awarded Tanner $1 in nominal damages in a third verdict. *Doc. 135 at 3.* On the First Amendment claims, the jury answered several questions. It concluded that the State Police adopted the terms and conditions for its Facebook page, and made them publicly available, before Tanner's first comment was removed. The jury also decided that his comments weren't deleted because of the views he expressed in them. Last, the jury found that the State Police blocked Tanner from the page because of what he said to the agency in private

messages sent through the webpage, rather than because of his comments. The Court and the parties agreed that, given the somewhat unexpected proof about the Facebook filter used by the State Police and the special verdict on the Facebook issues, Tanner's First Amendment claims needed more ventilation.

The Court is, of course, bound by the jury's answers to the disputed fact questions. And the parties agreed that the Court, sitting as the fact finder, could resolve any remaining disputed questions of fact. The deep issue is whether the State Police's enforcement of the page's terms and conditions—including blocking Tanner and using a filter—is consistent with the First Amendment. Tanner seeks judgment as a matter of law. In response, the State Police asks that the First Amendment claim be dismissed. These are the Court's conclusions of law and, as necessary along the way, findings of fact.

**2.** Tanner's first comment is the only one the State Police itself deleted. Under a post discussing the promotion of Lieutenant Mike Foster and three other State Troopers, Tanner made disparaging remarks about Foster. His comment contained no profanity, and it was on topic with the substance of the post. Corporal Elizabeth Head created and handled the State Police's Facebook page as the front-line administrator. She deleted the comment, she said, because it was disrespectful and contained abusive language. She identified Tanner's remark about Lieutenant Foster—"this guy sucks"—as the offending

language. After Tanner complained, about nine hours later, the State Police (through Corporal Head) allowed him to repost the comment. Corporal Head also wrote a memo to her supervisor and fellow page administrator, Captain Kennedy, making two points: she had erred in making the deletion; and for the State Police's social media efforts to flourish, the agency had to accept criticism and somewhat irritating comments.

The jury has already concluded that Tanner's comment wasn't removed because of the views he expressed. *Doc. 135 at 1.* The Court is bound by that factual finding. The jury must have credited Corporal Head's testimony that her decision was based on how Tanner spoke, not on what he said. To the extent this rationale presents any profanity-based First Amendment issue, see below, it is resolved by what actually happened. The State Police's deletion of one comment would not, the Court finds, chill a person of ordinary firmness. *Scheffler v. Molin*, 743 F.3d 619, 622 (8th Cir. 2014). That person would post again or complain, as Tanner did. And the State Police corrected its action. Therefore, Tanner's First Amendment claim about the temporary deletion of his first comment fails.

**3.** Tanner's second comment came under a post about state traffic laws. He responded with a citation to Arkansas's law against filing false reports with law enforcement agencies, and said a State Trooper — he meant Trooper Ziegenhorn — committed that crime. This was an

oblique reference to Trooper Ziegenhorn's report about his first Wal-Mart encounter with Tanner, a report that prompted a state charge for disorderly conduct, which was dismissed. While not entirely on topic, this comment also abided by the page's terms and conditions. It was removed or hidden when the State Police blocked Tanner. The next issue is whether it was unconstitutional to block him.

The jury concluded that the State Police blocked Tanner because of the private messages he sent to page administrators, not because of the views he expressed in his comments on the page. *Doc. 135 at 1*. Tanner sent the offending messages out of frustration at his comments being removed—we now know that it was the filter, or Facebook's "community standards" function, that had done the removing. Here's what Tanner's messages said:



*Doc. 76-2 at 2*. Captain Kennedy is the one who responded to this message. Note the time. Kennedy was at home of an evening, monitoring the Facebook page from his cell phone. Kennedy blocked

Tanner from the page based on Tanner's profane reply. Kennedy testified that he hung up on Tanner, just as he would on someone who was cursing at him over the telephone.

Profanity usually doesn't justify governmental action against speech in a public forum. *Cohen v. California*, 403 U.S. 15, 19–21 (1971). This Court held, early in the case, that the interactive comment section of the State Police's Facebook page is a designated public forum. *Doc. 60 at 2 & Doc. 97 at 2–3*. The State Police created a space for citizens to speak on its Facebook page, and they do so regularly. The Court declines the State Police's request to revisit that holding. The reasoning in *Knight First Amendment Institute at Columbia University v. Trump*, 302 F. Supp. 3d 541, 574 (S.D.N.Y. 2018), *affirmed*, 928 F.3d 226 (2d Cir. 2019) remains sound and instructive on this point, even though the Supreme Court later ordered the case dismissed as moot. *Biden v. Knight First Amendment Institute at Columbia University*, 141 S. Ct. 1220 (2021). This Court respectfully disagrees with Justice Thomas's thinking, as expressed in his concurring opinion, about the merits on the forum issue. 141 S. Ct. at 1221–22. But, while the comment section of the State Police's Facebook page is a designated public forum, the private messaging section is not. Though they're connected to one another — private messages to the State Police are sent to the administrators running the page — the government can handle the two

spaces differently. The State Police stumbled, though, in its handling of Tanner's messages.

As the jury concluded, the State Police did not discriminate against Tanner for his views. Some more facts need sorting nonetheless, and the record makes clear that the agency acted against him for speaking. Tanner profanely criticized the State Police for the deletion of his comments. That was protected speech, as "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston, Texas v. Hill*, 482 U.S. 451, 461 (1987). That protection extends to saying "fuck you" to a police officer in person, *Thuraraijah v. City of Fort Smith, Arkansas*, 925 F.3d 979, 985 (8th Cir. 2019), and the Court doesn't see a meaningful difference in the circumstances presented here. Plus, though profane, Tanner's private messages also criticized the actions the State Police took in response to his Facebook comments. The Court finds that the agency's decision to block Tanner was an adverse action that would chill a person of ordinary firmness from continuing in the activity. *Garcia v. City of Trenton*, 348 F.3d 726, 728–29 (8th Cir. 2003). Indeed, he was barred from continuing with his critical private messages and public comments. As the jury found, the State Police acted against him because of these private messages.

The State Police notes that it had no obligation to listen to Tanner. *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463,

465 (1979) (*per curiam*).  That's true.  The page administrators can, as Kennedy put it, hang up on Tanner's private messages.  They can ignore them. They can delete them.  The State Police may not, however, block Tanner from participating in its designated public forum based on his profane private messages.  If the State Police had designated an area outside its headquarters as a place for citizens to stand and speak, the agency could not bar Tanner from doing so simply because he had cursed at a Trooper on the telephone.

The situation would be different if the messages fell under any of the well-known exceptions to First Amendment protection, but they do not. The messages don't contain obscenity; there's nothing erotic about what Tanner said.  *Cohen*, 403 U.S. at 20.  And the messages don't contain fighting words.  They didn't inflict injury by themselves, plus there was no risk Tanner's words could have incited a breach of the peace because his messages went solely to the page's administrators. *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572 (1942).  The State Police's blocking Tanner on account of profanely critical private messages offended the First Amendment.  *Garcia*, 348 F.3d at 728–29.

**4.** Tanner's third, fourth, fifth, and sixth comments were screened out by the page's profanity filter or Facebook's community standards function.  Facebook page administrators have four options for an automatic profanity filter: off, weak, medium, or strong.  *Doc. 141 at 3*. Corporal Head tried hard to figure out what words would be filtered

by Facebook's various settings, but could not do so. She set the State Police's filter to strong because of the page's audience, which ranges from teenagers to senior citizens. Captain Kennedy said he wasn't comfortable allowing profanity because children and families frequented the page. Corporal Head was clear about the other option: the filter can be turned off. Facebook also has a community standards aspect, which acts as a basic screener and cannot be turned off. Corporal Head said that Facebook updates its community standards regularly based on users' complaints about particular words.

In addition to selecting a profanity filter setting, Facebook page administrators can also add specific words to a filter list. Corporal Head added the following words: "jackass", "pig", "pigs", "n*gga", "n*gger", "ass", "copper", and "jerk". *Doc. 70-14 at ¶ 15*. It remains unclear whether some of these words duplicated words forbidden under Facebook's strong filter setting or under the community standards function.

Tanner's final four comments used the word "douche", "douchebag", or "pig". Tanner posted these comments, and he was able to see, edit, and take screenshots of them. *Doc. 76-1 at 5–8*. But, according to Corporal Head, the filter hid the comments from the public so that other users would not see them on the Facebook page. As best the Court can discern, "douche" and "douchebag" were screened by Facebook's community standards or its strong filter

-8-

setting, while "pig" was screened solely because it was on the State Police's list of bad words. Tanner argues that the filter is an unconstitutional prior restraint on speech. The State Police disagrees, pressing that, because the jury found that no viewpoint-based blocking occurred, the First Amendment claim fails.

The Court adds a word here about the speech-related issues presented for decision. As noted at trial, the proof about filtering was unexpected, at least to the Court and apparently to Tanner. His fifth amended complaint speaks in broad terms. The Court stands by its ruling at the end of trial that his pleading encompasses a filtering-based First Amendment theory. The Court reaches a similar conclusion on the profanity-based-blocking issue. The State Police defended by arguing, supported by their witnesses' unequivocal testimony, that Tanner was blocked based on his profane private messages, not based on the substance of the views he expressed in his public comments. The jury agreed with the State Police.

In his post-trial motion, Tanner argued that he remains entitled to judgment because police officers must, in general, tolerate a large dose of profanity and may not take adverse action against someone simply because he is profane or disrespectful. The State Police has responded to that argument. All material things considered, if Tanner's profanity-based theory is not embraced by his broad pleading, then it was tried by implied consent, and the Court construes Tanner's post-trial brief on

this issue as a motion to amend, which is granted, and the pleadings are hereby conformed to the proof. FED. R. CIV. P. 15(b)(2); *Karlen v. Ray E. Friedman & Co. Commodities*, 688 F.2d 1193, 1197 n.3 (8th Cir. 1982).

Now back to the merits. This isn't a typical prior restraint case. *Freedman v. State of Maryland*, 380 U.S. 51, 56 (1965). There's no statute or ordinance prohibiting Tanner from speaking. He isn't being denied a license or permit. Instead, there's a profanity filter blocking from public view some of what he would like to say on the State Police's Facebook page. With limited exceptions, profanity is generally protected by the First Amendment. *Thurairajah*, 925 F.3d at 985. There are, however, instances where the government may regulate indecent or profane speech. *Sable Communications of California, Inc. v. F.C.C.*, 492 U.S. 115, 126–31 (1989); *F.C.C. v. Pacifica Foundation*, 438 U.S. 726, 738 (1978). Given the constant presence of children in the State Police's Facebook audience, as well as the family-friendly aim of the page, the agency's desire to filter out obscenities is both reasonable and compelling. Tanner is correct: minors on the Internet likely encounter on a daily basis language worse than what he posted. But the abundance of four-letter words in other cyberspaces doesn't mean the State Police has to welcome them on its page.

That said, the Court has two concerns about the State Police's filter choice. First, the choice is overbroad. The State Police doesn't

know what words it is actually blocking. This information is apparently unavailable. Insofar as the testimony disclosed, Facebook's community standards might filter out some words even if the State Police turned the page's profanity filter off. The Court understands that Facebook has its own baseline community standards and changes them regularly. The State Police can't do anything about that. Facebook's control of which words it alone will and will not tolerate, though, doesn't free the State Police from complying with the First Amendment in the filtering decisions the agency can make. In these circumstances, if further study yields no additional information, then the State Police must consider turning the profanity filter off, or selecting a weak or medium setting, supplemented with a narrowly tailored list of obscenities that it wants to block. The Court leaves the specifics to the agency. The Court holds only that the State Police's current filter choice is not narrow enough for this designated public forum. *International Society for Krisna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992).

Second, there is no plausible explanation for the words "pig", "pigs", "copper", and "jerk" being on the State Police's list of additional bad words other than impermissible viewpoint discrimination. *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 829 (1995). The jury concluded that the State Police didn't delete any of Tanner's comments due to the views he expressed. Yes, but that's not the whole story. The Court finds that the additional words chosen by

the State Police when it set up the page stopped some of his comments from being posted publicly due to their anti-police connotations. There was really no dispute about this fact. The slang terms "pig", "pigs", and "copper" can have an anti-police bent, but people are free to say those words. The First Amendment protects disrespectful language. And "jerk" has no place on any prohibited-words list, given the context of this page, the agency's justification for having a filter, and the harmlessness of that word. Though some amount of filtering is fine in these circumstances, the State Police's current list of specific words violates the First Amendment.

* * *

Tanner's motion for judgment as a matter of law, *Doc. 140*, is partly granted and partly denied. There was no viewpoint discrimination in deleting Tanner's first comment. And any profanity-based constitutional problem evaporated when Tanner complained and was allowed to re-post the comment promptly. The State Police acted against Tanner in violation of the First Amendment when it blocked him. The agency's use of Facebook's strong filter setting is unconstitutionally broad. And its inclusion of "pig", "pigs", "copper", and "jerk" on the additional filter list is viewpoint discrimination. This Court has spoken in this Order in terms of the First Amendment to the U.S. Constitution. The same reasoning applies to Tanner's echoing speech claims under the Arkansas Constitution. Judgment will issue.

So Ordered.

*DPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

30 September 2021